# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.)<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.:  04-10411 (PBS) |

## ANSWER

Defendant Dexia Bank Belgium ("Dexia"), for its answer to the Complaint filed March 1, 2004, states as follows:

1.    Dexia denies the allegations in paragraph 1, except admits that the Complaint purports to be related to the Dammekens Action; admits that the complaint in the Dammekens Action identifies various defendants and refers to that document for its contents; and admits that L&H has filed for bankruptcy and is going through liquidation.

2.    Dexia denies the allegations in paragraph 2, except admits that Dexia issued a press release on June 24, 2003, and refers to that document for its contents.

3. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3, except admits that L&H issued restated financial statements for 1998, 1999, and the first two quarters of 2000, and refers to these documents for their contents.

4. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4.

5. Dexia denies the allegations in paragraph 5, except admits that Artesia provided loans to certain entities doing business with L&H; admits that Artesia provided loans to certain principals of L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's business practices.

6. Dexia denies the allegations in paragraph 6, except admits that a preliminary report was drafted at the request of the Belgian Examining Magistrate, and refers to the May 28, 2001, preliminary report referenced in this paragraph for its contents.

7. Dexia denies the allegations in paragraph 7, except admits that Artesia sought personal guarantees from Hauspie, Lernout and Willaert for certain loans, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

8. Dexia denies the allegations in paragraph 8, except admits that Artesia provided loans to certain entities doing business with L&H and admits that Artesia entered into credit default swaps in relation to two of these loans.

9. Dexia denies the allegations in paragraph 9, except refers to the preliminary report referenced in this paragraph for its contents.

10. Dexia denies the allegations in paragraph 10, except admits that Artesia provided loans to certain entities doing business with L&H, and admits that Artesia charged interest and fees in connections with those loans.

11. Dexia denies the allegations in paragraph 11, except admits that Artesia provided loans to certain entities doing business with L&H, and admits that some of those loans were repaid.

12. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12, except refers to *The Wall Street Journal* for its contents.

13. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13, except admits that L&H has issued restated financial statements for 1998, 1999, and the first two quarters of 2000, and refers to those documents for their contents.

14. Dexia denies the allegations in paragraph 14, except admits that Lernout, Hauspie, and Willaert were arrested by criminal authorities in Belgium.

15. Dexia denies the allegations in paragraph 15, except admits that the Belgian Examining Magistrate seized records from Artesia in February 2001; admits that Artesia made certain loans in 1998 and 1999; and refers to the June 24, 2003, press release and the June 25, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for their contents.

16. Dexia denies the allegations in paragraph 16, except admits that this action purports to arise under § 10(b) of the 1934 Act and the rules and regulations promulgated thereunder, and state law.

17. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17, except admits that Plaintiffs purport to base jurisdiction on § 27 of the 1934 Act and 28 U.S.C. §§ 1331, 1337, 1367 and 1332.

18. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18, except admits that Plaintiffs purport that venue is proper in this District under § 27 of the 1934 Act and 28 U.S.C. § 1391(b).

19. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20, except refers to the Merger Agreement referenced in this paragraph for its contents.

21. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21, except refers to the Merger Agreement referenced in this paragraph for its contents.

22. Dexia denies the allegations in paragraph 22, except admits that Dexia S.A. is a financial institution based in Belgium and that it has a total balance of approximately €350 billion.

23. Dexia denies the allegations in paragraph 23, except admits that Dexia S.A. has certain direct and indirect subsidiaries in the United States, including Dexia Credit Local, Financial Security Assurance, Artesia Mortgage Capital Corp., and Dexia Securities U.S.A.

24. Dexia admits the allegations in paragraph 24.

25. Dexia denies the allegations in paragraph 25, except refers to Dexia S.A.'s March 31, 2001, press release for its contents.

26. Dexia denies the allegations in paragraph 26, except admits that, prior to its acquisition by Dexia, Artesia had various subsidiaries in the United States, including Artesia Mortgage Capital Corporation, located at 1180 NW Maple St., Suite 202, Issaqua, Washington

98027, Artesia North America, and Artesia Securities, a fifty-percent owned joint venture headquartered in New York; admits that Artesia Mortgage continues to conduct business under the same name although it is now owned by Dexia; and admits that Artesia was a member of a lending syndicate that loaned $430 million as part of L&H's acquisition of Dictaphone.

27. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27, except admits that L&H was based in Belgium and had United States offices in Burlington, Massachusetts; admits that L&H was listed on NASDAQ; and admits L&H has filed for bankruptcy and is going through liquidation.

28. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28, except admits that Lernout was a co-founder of L&H.

29. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29, except admits that Hauspie was a co-founder of L&H.

30. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30, except admits that Bastiaens was named as a defendant in *Stonington, et. al v. Bastiaens.*

31. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, except admits that Dammekens was named as a defendant in the Dammekens Action.

32. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.

34. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34, except admits that Mercator is an insurance company and admits that Mercator was named as a defendant in the Dammekens Action.

35. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35, except admits that FLV Fund was named as a defendant in the Dammekens Action.

36. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36, except admits that S.A.I.L. Trust was named as a defendant in the Dammekens Action.

37. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37, except admits that KPMG Belgium is a Belgian public accounting firm and that KPMG Belgium was named as a defendant in the Dammekens Action.

38. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38, except admits that KPMG LLP is a public accounting firm based in the United States and that KPMG U.S. was named as a defendant in the Dammekens Action.

39. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39, except admits that in 1995, L&H completed its initial public offering and commenced trading on the NASDAQ.

40. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40, except admits that L&H was considered an international success story.

41. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43.

44. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44.

45. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.

46. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48.

49. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.

50. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

52. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52, except refers to L&H's February 9, 2000, press release for its contents.

53. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53.

54. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.

55. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56. Dexia denies the allegations in paragraph 56, except admits that an article concerning Artesia was published in the Belgian press on June 25, 2003, and refers to that document for its contents.

57. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57.

58. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58, except refers to the Merger Agreements referenced in this paragraph for their contents.

59. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59, except refers to the Merger Agreements referenced in this paragraph for their contents.

60. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60, except refers to the Merger Agreements referenced in the paragraph for their contents.

61. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61, except refers to the Merger Agreements referenced in this paragraph for their contents.

62. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62.

63. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

64. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64, except refers to L&H's June 30, 2000, Form 10-Q referenced in this paragraph for its contents.

65. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65, except refers to L&H's June 30, 2000, Form 10-Q and the August 8, 2000, edition of *The Wall Street Journal* referenced in this paragraph for their contents.

66. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66, except refers to the August 15, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

67. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.

68. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68, except refers to the September 22, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

69. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69, except refers to the September 22 and 26, 2000, editions of *The Wall Street Journal* referenced in this paragraph for their contents.

70. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70, except refers to the September 26, 2000, edition of *The Wall Street*

*Journal* referenced in this paragraph for its contents and refers to *Bloomberg News* for its contents.

71. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71, except refers to the October 18, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

72. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72, except refers to L&H's November 9, 2000, press release referenced in this paragraph for its contents.

73. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73, except refers to the Statement of Auditing Standards No. 53 referenced in this paragraph for its contents.

74. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

75. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75, except refers to the November 17, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

76. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76, except admits that L&H released a report prepared for its Audit Committee and refers to that document for its contents.

77. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77, except refers to the November 21, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

78. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78, except admits that L&H filed for bankruptcy and refers to the November 30, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

79. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79, except refers to the December 14, 2000, edition of *The Wall Street Journal* referenced in this paragraph for its contents.

80. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80, except refers to the January 5, 2001, Associated Press report referenced in this paragraph for its contents.

81. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81.

82. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82.

83. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83, except admits that Lernout, Hauspie, and Willaert were arrested by criminal authorities in Belgium and admits that Bastiaens was arrested by United States officials.

84. Dexia denies the allegations in paragraph 84, except admits that Artesia provided loans to certain entities doing business with L&H.

85. Dexia denies the allegations in paragraph 85, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's relationship with the LDCs and CLDCs or L&H's accounting practices.

86. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86.

87. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87.

88. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88.

89. Dexia denies the allegations in paragraph 89, except admits that Artesia made a loan to BTG; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the formation of BTG; and refers to the December 7, 2000, edition of *The Wall Street Journal* for its contents.

90. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90.

91. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91.

92. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92.

93. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93, except admits that Artesia organized and managed a private placement of Vasco stock which raised $11.5 million; admits that Artesia wired $11.5 million to Vasco's account in the US; admits that LHIC invested $5 million in Vasco through this private placement; and admits that Mercator invested approximately $1 million in Vasco through this private placement.

94. Dexia denies the allegations in paragraph 94, except refers to *The Wall Street Journal* article referenced in this paragraph for its contents.

95. Dexia denies the allegations in paragraph 95, except admits that Artesia loaned approximately $6 million to Radial on September 29, 1998; admits that Radial transferred the funds to the Slavic Development Company N.V., the Farsi Development Company N.V., and the Bahassa Development Company N.V.; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning use of the funds by the LDCs or L&H's accounting practices.

96. Dexia denies the allegations in paragraph 96, except refers to the preliminary report referenced in this paragraph for their contents.

97. Dexia admits that there is a September 21, 1999, e-mail referenced in this paragraph and refers to that document for its contents.

98. Dexia denies the allegations in paragraph 98, except refers to the preliminary report referenced in this paragraph for its contents.

99. Dexia admits that there is a September 21, 1999, e-mail referenced in this paragraph and refers to that document for its contents.

100.    Dexia denies the allegations in paragraph 100, except refers to internal Artesia memoranda referenced in this paragraph for their contents.

101.    Dexia denies the allegations in paragraph 101, except refers to the June 15, 1999, e-mail referenced in this paragraph for its contents and refers to the preliminary report referenced in this paragraph for its contents.

102.    Dexia denies the allegations in paragraph 102, except refers to the September 21, 1999, e-mail referenced in this paragraph for its contents.

103.    Dexia denies the allegations in paragraph 103, except refers to the June 25, 2003, edition of *De Financieël Economische Tijd* referenced in this paragraph for its contents.

104.    Dexia denies the allegations in paragraph 104, except admits that on December 22, 1998, Artesia made a loan to LIC for approximately $6 million; admits that LIC transferred the funds to development companies for the Greek, Hungarian, Polish, and Czech languages; admits that these development companies transferred the funds to L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

105.    Dexia denies the allegations in paragraph 105, except admits that Artesia entered into credit default swaps relating to its loan to LIC and refers to the memorandum referenced in the paragraph for its contents.

106.    Dexia denies the allegations in paragraph 106, except refers to the June 25, 2003, edition of *De Financieël Economische Tijd* for its contents.

107.    Dexia denies the allegations in paragraph 107, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the formation of LDF, the funding from Mercator & Noordstar, or L&H's accounting practices.

108.    Dexia denies the allegations in paragraph 108, except refers to the March 1999 fax referenced in this paragraph for its contents.

109.    Dexia denies the allegations in paragraph 109, except refers to the June 21, 1999, e-mail referenced in this paragraph for its contents.

110.    Dexia denies the allegations in paragraph 110, except admits that on June 25, 1999, Artesia granted a personal $20 million line of credit to Lernout, Hauspie and Willaert; admits that 650,000 shares of L&H were to be pledged as collateral; states that it lacks

knowledge or information sufficient to form a belief as to the truth of the allegations concerning use of the funds by Lernout, Hauspie and Willaert, or L&H's accounting practices; and refers to L&H's Form 10-Q for the quarter ended June 30, 1999, and Form 10-K for the year ended December 31, 1999, for their contents.

111.    Dexia denies the allegations in paragraph 110, except admits that Artesia's loans to Radial and LIC were due June 30, 1999; admits that Artesia's personal loan to Lernout, Hauspie and Willaert was due in October 1999; admits that Artesia extended the loans to December 15, 1999; admits that Artesia had discussions with L&H regarding the potential for investors in the LDCs; and refers to the September 7, 1999, memorandum referenced in this paragraph for its contents.

112.    Dexia denies the allegations in paragraph 112, except refers to the December 27, 1999, e-mail referenced in this paragraph for its contents.

113.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113, except admits that Artesia's loans to LIC, Lernout, Hauspie and Willaert were repaid from a Singapore bank account of Velstra.

114.    Dexia denies the allegations in paragraph 114, except refers to the preliminary report referenced in this paragraph for its contents.

115.    Dexia denies the allegations in paragraph 115, except refers to the November 24, 2000, letter from Artesia for its contents; refers to the report prepared for L&H's Audit Committee for its contents; and refers to *The Wall Street Journal* articles referenced in this paragraph for their contents.

116.    Dexia admits that L&H issued a press release on April 28, 1998, and refers to that document for its contents.

117.    Dexia admits that L&H filed a Form 6-K with the SEC on or about May 1, 1998, and refers to that document for its contents.

118.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118, except refers to L&H's restated financial statements for their contents.

119.    Dexia admits that L&H issued a press release on July 28, 1998, and refers to that document for its contents.

120.    Dexia admits that L&H filed a Form 6-K with the SEC on or about August 7, 1998, and refers to that document for its contents.

121.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121, except refers to L&H's restated financial statements for their contents.

122.    Dexia admits that L&H issued a press release on October 27, 1998, and refers to that document for its contents.

123.    Dexia admits that L&H filed a Form 6-K with the SEC on or about October 29, 1998, and refers to that document for its contents.

124.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124, except refers to L&H's restated financial statements for their contents.

125.    Dexia admits that L&H issued a press release on April 7, 1999, and refers to that document for its contents.

126.    Dexia admits that L&H filed a Form 6-K with the SEC on or about April 19, 1999, and refers to that document for its contents.

127.    Dexia admits that L&H filed a Form 20-F with the SEC on or about June 30, 1999, and refers to that document for its contents.

128.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128, except refers to the L&H's restated financial statements for their contents.

129.    Dexia admits that L&H issued a press release on May 18, 1999, and refers to that document for its contents.

130.    Dexia admits that L&H filed a Form 6-K with the SEC on or about June 1, 1999, and refers to that document for its contents.

131.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131, except refers to L&H's restated financial statements for their contents.

132.    Dexia admits that L&H issued a press release on June 28, 1999, and refers to that document for its contents.

133.    Dexia admits that L&H filed a Form 6-K with the SEC on or about August 6, 1999, and refers to that document for its contents.

134.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 134, except refers to L&H's restated financial statements for their contents.

135.    Dexia admits that L&H issued a press release on October 27, 1999, and refers to that document for its contents.

136.    Dexia admits that L&H filed a Form 6-K with the SEC on or about November 4, 1999, and refers to that document for its contents.

137.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137, except refers to L&H's restated financial statements for their contents.

138.    Dexia admits that L&H issued a press release on February 9, 2000, and refers to that document for its contents.

139.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139, except refers to L&H's restated financial statements for their contents.

140.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 140.

141.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141.

142.    Dexia denies the allegations in paragraph 142.

143.    Dexia denies the allegations in paragraph 143, except incorporates the responses set forth above.

144.    Dexia denies the allegations in paragraph 144, except admits that Plaintiff purports to bring this action for violations § 10(b) of the 1934 Act, and Rule 10b-5.

145.    Dexia denies the allegations in paragraph 145.

146.    Dexia denies the allegations in paragraph 146.

147.    Dexia denies the allegations in paragraph 147.

148.    Dexia denies the allegations in paragraph 148.

149.    Dexia denies the allegations in paragraph 149.

150.    Dexia denies the allegations in paragraph 150.

151.   Dexia denies the allegations in paragraph 151, except incorporates the responses set forth above.

152.   Dexia denies the allegations in paragraph 152.

153.   Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 153, except refers to the L&H financial statements referenced in this paragraph for their contents.

154.   Dexia denies the allegations in paragraph 154.

155.   Dexia denies the allegations in paragraph 155, except admits that on September 29, 1998, Artesia loaned $6 million to Radial; admits that Artesia entered into credit default swaps with Lernout, Hauspie, and Willaert in relation to the Radial loan; admits that on December 22, 1998, Artesia loaned $6 million to LIC; admits that Artesia entered into credit default swaps with Lernout and Hauspie in relation to the LIC loan; admits that on June 25, 1999, Artesia granted a $20 million line of credit to Lernout, Hauspie and Willaert; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the use of funds by L&H, Lernout, Hauspie or Willaert, or L&H's accounting practices.

156.   Dexia denies the allegations in paragraph 156.

157.   Dexia denies the allegations in paragraph 157.

158.   Dexia denies the allegations in paragraph 158, except incorporates the responses set forth above.

159.   Dexia denies the allegations in paragraph 159.

160.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 160, except refers to the L&H financial statements referenced in this paragraph for their contents.

161.    Dexia denies the allegations in paragraph 161, except admits that on September 29, 1998, Artesia loaned $6 million to Radial; admits that Artesia entered into credit default swaps with Lernout, Hauspie, and Willaert in relation to the Radial loan; admits that on December 22, 1998, Artesia loaned $6 million to LIC; admits that Artesia entered into credit default swaps with Lernout and Hauspie in relation to the LIC loan; admits that on June 25, 1999, Artesia granted a $20 million line of credit to Lernout, Hauspie and Willaert; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the use of funds by L&H, Lernout, Hauspie or Willaert, or L&H's accounting practices.

162.    Dexia denies the allegations in paragraph 162.

163.    Dexia denies the allegations in paragraph 163.

## ADDITIONAL DEFENSES

1.  Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

2.  The Plaintiffs lack standing to maintain some or all of their claims.

3.  Plaintiffs' claims are barred in whole or in part for lack of personal jurisdiction over Dexia.

4.  Plaintiffs' claims are barred in whole or in part because Plaintiffs failed to make reasonable efforts to mitigate their injuries or damages.

5.  Plaintiffs' claims are barred in whole or in part because the decline in the market price of the L&H securities purchased by Plaintiffs resulted in whole or in part from factors other than the alleged conduct of Dexia.

6.  Plaintiffs' claims are barred in whole or in part because the alleged damages were not proximately caused by Dexia.

7.  Plaintiffs' claims are barred in whole or in part because the liability of all defendants and other responsible parties, named or unnamed, should be apportioned according to their relative degrees of fault.

8.  Any recovery for damages allegedly incurred by Plaintiffs is subject to offset in the amount of any tax benefits or other benefits actually received through their investments.

9.  Plaintiffs' claims are barred in whole or in part because Plaintiffs were expressly advised about the material facts and risks concerning their investments through meaningful cautionary statements contained in public filings of L&H.

Dated:  March 24, 2005

<div style="margin-left:40%">

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO

By:    /s/  Breton Leone-Quick
        Peter M. Saparoff (BBO#441740)
        Breton Leone-Quick (BBO#655571)

One Financial Center
Boston, MA 02111
Tel:    (617) 542-6000
Fax:    (617) 542-2241

</div>

CLIFFORD CHANCE US LLP
   James B. Weidner
31 West 52nd Street
New York, NY 10019-6131
Tel:    (212) 878-8000
Fax:    (212) 878-8375

*Counsel for Dexia Bank Belgium*