# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>DEXIA S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>　　Defendants. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>　　Defendant. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>　　Defendants. | No.: 04-CV-10477 (PBS) |

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | No.: 04-CV-10501 (PBS) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' COUNSEL'S MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(c), Plaintiffs' Counsel and their investigators submit this memorandum of law in support of their motion for a protective order precluding Dexia Bank Belgium ("Dexia") from taking Rule 30 depositions of Plaintiffs' Counsel and their investigators ("Plaintiffs' Counsel").[1]

### I. PRELIMINARY STATEMENT

In response to Dexia's document requests and prior Orders of this Court, Plaintiffs in the above-captioned actions have produced over 1.8 million pages of documents to Dexia, and have responded to 34 interrogatories concerning Plaintiffs' investigation of the L&H fraud.[2] In fact, Plaintiffs, via their counsel, have detailed who was involved in their investigations, what

---

[1] "Plaintiffs' Counsel" as used herein means the following entities and persons: Gregory P. Joseph, Bernstein Litowitz Berger & Grossmann LLP, Boies Schiller & Flexner LLP, Cauley Bowman Carney & Williams PLLC, Berman DeValerio Pease Tabacco Burt & Pucillo, Shalov Stone & Bonner LLP, and James Mintz Group Inc. The James Mintz Group Inc. served as an investigator at the direction of the counsel for the class plaintiffs. The remaining Plaintiffs' Counsel are the principal counsel for the plaintiffs in these actions. Copies of the Notices of Depositions directed at these entities are attached as Exhibit D to the accompanying Declaration of Patrick T. Egan ("Egan Decl.").

[2] Copies of relevant portions of Plaintiffs' Interrogatory responses have been submitted for the Court's convenience as Exhibits G-O to the Egan Declaration. These exhibits, however, are subject to the accompanying motion to file under seal because the Interrogatories contain descriptions of Plaintiffs' investigation, which have been designated confidential under the May 31, 2005 Protective Order.

2

witnesses were interviewed and when, and when Plaintiffs learned certain facts. Indeed, in correspondence, Dexia's counsel has taken the position that Dexia supposedly already has all the information it needs to "prove" that Plaintiffs failed to conduct an adequate investigation of their claims. *See* Egan Decl. at Ex. F. While Plaintiffs strongly disagree, the point is that Dexia knows full well that it has had extensive discovery as to Plaintiffs' Counsel's investigation. Indeed, in our discussions, Dexia has been unable to point to any new or additional information it could discover from these proposed depositions. Nevertheless, unsatisfied with this broad discovery, Dexia now seeks to further intrude upon Plaintiffs' investigatory efforts by conducting unfettered examinations of Plaintiffs' Counsel via oral deposition pursuant to Fed. R. Civ. P. 30.

To protect client confidences and the thought processes of counsel, courts permit depositions of trial counsel only in extraordinary circumstances and, even then, only within limited parameters. The depositions Dexia proposes to take far exceed the permissible scope of discovery of trial counsel. Indeed, Dexia's proposed areas of examination blatantly exceed the scope of the Court's December 22, 2005 Order On Dexia Bank Belgium's Motion To Compel Documents and Interrogatory Reponses From Class Plaintiffs ("December 22 Order"). *See* Egan Decl., Ex. A. As a result, the broad-ranging depositions Dexia advocates present a distinct possibility of creating the type of unnecessarily harassing and contentious examinations courts have endeavored to prevent by placing strict limitations upon the type of deposition discovery parties may obtain from opposing counsel.

Plaintiffs seek to avoid that possibility and to safeguard the legitimate work product protections already ruled on by the Court in the December 22 Order, while allowing Dexia to learn any additional discoverable information not revealed by Plaintiffs' massive document

3

production and thorough interrogatory responses. In furtherance of that objective, Plaintiffs have suggested that, to the extent Dexia has any actual need to discover additional information, it conduct the proposed depositions by written examination. That process has been adopted by a number of courts in an attempt to balance litigants' desire for additional discovery and the important institutional interests of protecting client confidences and counsel's work product.

Dexia has suggested no reason why that even-handed approach to obtaining deposition discovery from trial counsel would in any way be inadequate here. In fact, Dexia has failed to specify any matter about which it requires additional discovery. To say the least, Plaintiffs' disclosure has been extremely forthcoming. They have provided Dexia with the fruits of millions of dollars in attorney time and have completely answered the numerous interrogatories posed by Dexia. They have also outlined their positions regarding the statute of limitations issues about which Dexia purportedly seeks to obtain discovery in a massive complaint and numerous briefs submitted to the Court. Thus, in advocating for unfettered deposition discovery of Plaintiffs' Counsel, Dexia has advanced no compelling need for additional discovery that could justify disregarding Plaintiffs' legitimate interest in protecting their confidences and their counsel's work product.

As a result, there is no reason here to depart from the default rule prohibiting Dexia from deposing its adversary's counsel. *A fortiori,* the compromise Plaintiffs have suggested to Dexia – permitting the depositions of Plaintiffs' Counsel by written questions – is more than fair in these circumstances.

Dexia has also failed to advance any reason why the depositions of Plaintiffs' Counsel should relate to a time frame broader than the period ordered by the Court in the December 22 Order. In that Order, the Court recognized that only information regarding the steps Plaintiffs'

4

Counsel undertook to investigate Plaintiffs' claims prior to August 19, 2001 could conceivably be relevant to Dexia's purported statute of limitations defense. Nevertheless, Dexia's deposition notices attempt to circumvent the December 22 Order by seeking deposition testimony through June 23, 2005, thereby extending discovery far beyond the August 19, 2001 cut-off imposed by the Court. In light of Dexia's failure to comply with the Court's unambiguous ruling, Plaintiffs seek a protective order limiting any deposition discovery to the parameters set by the Court in its December 22 Order.

Plaintiffs are also entitled to an order preventing Dexia from deposing each of the three appointed lead counsel for the Class and their investigator, and thereby imposing unnecessary expense upon Class Plaintiffs. As is typical in securities class actions, Class Plaintiffs have been represented by multiple firms, all of whom conducted a single, coordinated investigation of the L&H fraud. In light of the highly protected status of the information Dexia seeks, there is no reason for it to be permitted to conduct three redundant depositions of the Class Plaintiffs' Counsel regarding a single investigation. Class Plaintiffs' research has not uncovered any case in which a party was permitted to depose multiple representatives of a single class or single group of parties, and Dexia has cited no such decision to Plaintiffs. Accordingly, to avoid unnecessary burden and duplication, as well as to limit the risks inherent in trial counsel serving as witnesses, any deposition discovery conducted by Dexia should be limited to one deposition by written examination directed at Lead Counsel. This would provide Dexia with all of the discovery to which it is entitled, without imposing upon the Class Plaintiffs the burden of costly, repetitive and invasive examinations concerning the thought processes of the Class's counsel.[3]

---

[3] The parties have met and conferred concerning this issue but were unable to resolve their disputes. Copies of correspondence reflecting this process are attached to the Egan Decl. at Exs. B-C, and E.

5

## II. ARGUMENT

Fed. R. Civ. P. 26(c) authorizes this Court to issue a protective order to prevent discovery that may expose a party to "annoyance, embarrassment, oppression, or undue burden or expense."[4]  Moreover, this Court can limit disclosure if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(i).[5]  Here, Plaintiffs easily demonstrate the good cause necessary to issue a protective order, as the proposed depositions of Plaintiffs' Counsel would expose Plaintiffs to the undue burden of having their counsel subjected to an unfettered oral examination and would circumvent this Court's December 22 Order.

### A. DEPOSITIONS OF PLAINTIFFS' COUNSEL SHOULD BE CONDUCTED, IF AT ALL, BY WRITTEN EXAMINATION, NOT OPEN-ENDED ORAL EXAMINATIONS

Courts have long disfavored the practice of forcing trial counsel to testify as witnesses.[6]  In fact, as the district court noted in *Dunkin' Donuts,* 181 F.R.D. at 208, "The mere request to

---

[4] *See* Fed. R. Civ. P. 26(c) ("Upon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").

[5] *E.g.*, *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) ("district court has broad discretion to decide when a protective order is appropriate and what degree of protection is required") (quotation and citation omitted); *Santiago v. Fenton*, 891 F.2d 373, 379 (1st Cir. 1989) ("Rule 26(c) . . . confers broad powers on the courts to regulate or prevent discovery"); *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990) ("26(c) 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required'") (quoting *Seattle Times v. Rhinehart*, 467 U.S. 20, 36 (1984)).

[6] *See Hickman v. Taylor*, 329 U.S. 495, 513 (1947); *Saldana-Sanchez v. Lopez-Gerena*, 256 F.3d 1, 5 n.9 (1st Cir. 2001) (noting protective order granted "solely on the ground that the proposed deponent was [an] attorney"); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (the deposition of opposing attorney is a "negative development in the area of litigation . . . that should be employed only in limited circumstances"); *Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 209-110 (D.P.R. 1998) (noting that taking an attorney's deposition "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation") (citation omitted).

depose an opposing counsel constitutes 'good cause' for obtaining a protective order, 'unless the party seeking the deposition can show both the propriety and need for the deposition.'" *Id.* at 210 (citation omitted).

Generally, courts permit the deposition of opposing counsel only in extraordinary circumstances where the party seeking the deposition can demonstrate: (i) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.[7] Other courts have employed a more flexible approach. For example, in *In re Subpoena Issued To Dennis Friedman, Esq.*, 350 F.3d 65 (2d Cir. 2003), the Second Circuit rejected the strict application of this three-prong test in favor of:

> [A] flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. These factors may, in some circumstances, be especially appropriate to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition.

*Id.* at 72. Under either analysis, the burden is squarely upon the party seeking to take the attorney deposition to demonstrate the need for the testimony and the unavailability of other, less intrusive means for obtaining the requested disclosure. *See Resqnet.Com Inc. v. Lansa Inc.*, No. 01-CV-3578, 2004 WL 1627170, at *3-4 (S.D.N.Y. July 21, 2004); *Dunkin' Donuts*, 181 F.R.D. at 210.

Dexia has not met its burden of demonstrating its need for far-flung, free-flowing oral examinations of Plaintiffs' Counsel. Dexia has contended, for example, that Plaintiffs have

---

[7] *See, e.g., Shelton*, 805 F.2d at 1327; *Dunkin' Donuts*, 181 F.R.D. at 210-11; *Boughton v. Cotter Corp.*, 65 F.3d 823, 829 (10th Cir. 1995).

7

waived any and all opinion work product protection with respect to any testimony that may be elicited at the proposed depositions. That contention has already been rejected by this Court in the December 22 Order.

Dexia also cannot demonstrate that the discovery it seeks is unavailable by other, less intrusive means.[8] Indeed, Dexia has already had extraordinary access to Plaintiffs' discovery efforts through the massive document production made by Plaintiffs and the detailed interrogatory responses Plaintiffs provided. In light of that broad discovery, it is unsurprising that Dexia has been unable to articulate any topics about which it requires additional discovery from Plaintiffs' Counsel.

Because Dexia already has all of the discovery ordered by the Court and cannot identify any specific issue on which it is entitled to additional information, serious questions exist with respect to whether Dexia is entitled to any deposition testimony at all from Plaintiffs' Counsel. As the courts have repeatedly recognized, depositions of trial counsel are highly disfavored

---

[8] In this respect it is important to note that the alleged "scope" of topics listed by Dexia is entirely duplicative of discovery already conducted. For example, Dexia seeks deposition testimony concerning "who was involved in the investigation," when Plaintiffs' Counsel have already provided a detailed list of all such persons in responses to interrogatories. Similarly, Dexia seeks testimony concerning "what information prompted the investigation," when the details of what prompted the allegations against Dexia are laid out in each of the complaints Plaintiffs have filed. Further, Plaintiffs' Counsel are at a loss to understand why Dexia purportedly needs to obtain testimony concerning the "identification of documents created in connection with the investigation." All relevant, non-opinion work product documents falling under the scope of the December 22 Order have been produced, and Dexia is not entitled to anything more. To the extent Dexia has specific questions about a particular document, interrogatories would be a more appropriate means of obtaining such information, rather than through an unrestrained oral examination of trial counsel. *See e.g., Stalling v. Union Pacific Railroad Co.*, No. 01-CV-1056, 2004 WL 783056, at *2 (N.D. Ill. Jan. 23, 2004) ("[O]ther methods, such as written interrogatories, requests for production, or requests for admission, which do not involve the same dangers as an oral deposition of opposing counsel, should be employed.") (quotation and citation omitted); *Curiale v. Tiber Holding Corp.*, No. 95-5284, 1997 WL 786446, at *1 (E.D. Pa. Dec. 2, 1997) (granting protective order barring attorney depositions and noting: "While the discovery sought is relevant to a significant issue in the case, *i.e.*, the statute of limitations defense, I cannot find that the defendant has 'no other means' to establish plaintiff's knowledge of the fraudulent conveyances two years prior to the filing of the claims."); *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 594 (N.D.N.Y. 1989) (attorney depositions not permitted where party failed to seek information by other means).

because they threaten to intrude upon the thought processes of counsel. *E.g. Shelton*, 805 F.2d at 1327; *In re Subpoena*, 350 F.3d at 70. Moreover, courts have discouraged the use of such depositions because they often produce little more than a chorus of objections and battles on the record. *See Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1423 (11th Cir. 1994); *Slater v. Liberty Mut. Ins. Co.*, No. 98-CV-1711, 1999 WL 46580, at *1 (E.D. Pa. Jan. 14, 1999). Under the present circumstances, and given the competing equities, Dexia has not demonstrated that it is entitled to take duplicative, cumulative and harassing depositions.[9]

Despite the fact that Dexia already has all of the information to which it is entitled, over a month ago, Plaintiffs offered to submit to examination by written question as a compromise of this dispute. *See* Egan Decl, Ex. C. As Plaintiffs informed Dexia, examination by written question is less fraught with the danger of jeopardizing the attorney-client privilege and other immunities than an open-ended oral examination. *Id.* Dexia refused this compromise.

The reasonable nature of the compromise Plaintiffs proposed is demonstrated by the fact that courts have frequently limited depositions of opposing counsel in a similar manner. In fact, *American Standard, Inc. v. Bendix Corp.*, 80 F.R.D. 706 (W.D. Mo. 1978), the very case that Dexia has principally relied upon in its motions to compel Plaintiffs' Counsel's attorney work product, fully supports this proposed compromise. In *American Standard*, the defendants contended that the plaintiff's claims were time barred, and sought discovery from the plaintiff's counsel concerning when he first discovered the alleged fraudulent misrepresentations. *Id.* at 708. The court then held that, under Missouri law, the defendant was entitled to discovery of opinion work product where the trigger of the limitations period depended entirely upon the plaintiff's subjective knowledge and the plaintiff, in contrast to this case, had failed to provide

---

[9] Of course, as with any other party or counsel, Plaintiffs and their Counsel are free to submit affidavits marshaling the facts that they have disclosed or responding to issues about which Dexia did not formulate discovery.

the defendant with any meaningful discovery.  *Id.* at 709.

Even in those circumstances, however, the *American* Standard court refused to permit the defendant to conduct an unfettered oral examination of the plaintiff's counsel.  Significantly, the *American Standard* court only ordered the plaintiffs' counsel to answer written questions pursuant to Rule 31, noting:

> To reveal any problems of privilege or other immunity to discovery that would arise if the deposition of [Plaintiff's Counsel] were taken on oral questions, defendant . . . was ordered to take the deposition of [Plaintiff's Counsel] initially on written questions.

*Id.* at 708.

The reasoning in *American Standard* was later adopted by the Court in *In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 429 (E.D. Pa. 1981).  In *Arthur Treacher's*, the plaintiffs sought to depose defense counsel concerning discussions at a meeting that he attended.  *Id.* at 438.  Defense counsel, in turn, filed a motion for a protective order.  The Court then denied the motion to quash the depositions in full, but converted the Rule 30 deposition to a Rule 31 deposition to avoid the risks and problems inherent in an opened-ended oral examination of trial counsel.  *See id.* at 439-40.  The *Arthur Treacher's* court expressly relied upon the above-quoted language in *American Standard*, and then concluded that, "[i]n addition to the advantage noted by the [*American Standard Inc. v.*] *Bendix* court . . . this method hopefully will serve to avoid the potential flare-up of tempers . . . which would probably result from a direct oral confrontation of these advocates in this unusual setting."  *Id.*

The Fifth Circuit approved a similar approach in *Conkling v. Turner*, 883 F.2d 431 (5th Cir. 1989).  *Conkling* involved a RICO action, where the defendants contended that the claims were barred by the statute of limitations, and sought discovery from the plaintiffs' current and former counsel concerning when they first discovered the alleged fraudulent misrepresentations

10

and advised the plaintiffs of a possible cause of action. *Id.* at 432-34. The district court ordered that the attorneys submit to limited questioning based on thirty-three specific, court-approved questions. *Id.* at 433. The plaintiffs appealed, but the Fifth Circuit affirmed, approving the limited, "cabined inquiry" approach applied by the district court. *Id.* at 435.[10]

Here, the same considerations and equities that motivated the restricted inquiries permitted by the *American Standard, Arthur Treacher's* and *Conkling* courts counsel in favor of permitting Dexia, at most, to conduct a similar examination of Plaintiffs' Counsel. Only by limiting Dexia's examination to written questions will this Court be able to avoid a harassing deposition, fraught with privilege issues. In fact, Dexia's overbroad Notices of Deposition serve as compelling proof that the limited examinations of Plaintiffs' Counsel that Plaintiffs advocate are warranted and necessary. As demonstrated in detail below, Dexia's Notices of Deposition blatantly exceed the scope of the December 22 Order. Moreover, several of the proposed topics of testimony are duplicative of discovery Dexia has already obtained from Plaintiffs.

Thus, the depositions Dexia proposes raise numerous and significant privilege and work product issues, will unduly burden Plaintiffs with duplicative discovery and will undoubtedly promote unnecessary conflicts between counsel. In those circumstances, the sensible compromise adopted by the *American Standard*, *Arthur Treacher's* and *Conkling* courts provides an excellent balance between protecting Plaintiffs' confidences and work product while permitting Dexia to discover any information that it has not already obtained from its previous

---

[10] *See also Cox*, 17 F.3d at 1423 (affirming district court's order that depositions of attorneys could only be conducted by written questions where district court was "convinced that these depositions, in the absence of firm control by the court, will almost certainly be attended by continuing disputes and may require that they be supervised by a judicial officer"); *Foley v. Juron Associates*, No. 82-0519, 1986 WL 3754, at *3 (E.D. Pa. Mar. 26, 1986) (noting, in case involving a statute of limitations defense to a federal securities action, that court had previously granted a protective order limiting examination of plaintiffs' counsel to a deposition by written questions pursuant to Fed. R. Civ. P. 31, as an alternative to an oral examination pursuant to Rule 30).

11

detailed requests. At most, therefore, Dexia should be permitted to conduct written depositions of Plaintiffs' Counsel pursuant to Rule 31 so that its examinations do not unnecessarily burden Plaintiffs by intruding upon their work product.[11]

### B. DEXIA'S DEPOSITION NOTICES IMPROPERLY EXCEED THE DISCOVERY LIMITATIONS IMPOSED BY THIS COURT

The December 22 Order defined the parameters of the discovery that Dexia was entitled to concerning Plaintiffs' Counsel's investigation of the claims underlying this action. In that Order, this Court held that Dexia was only entitled to discovery of Plaintiffs' non-opinion attorney work product related to their investigation prior to August 19, 2001, and a log of any withheld opinion work product prior to that date. Importantly, this Court ruled that Dexia was not entitled to the production of: (a) Plaintiffs' opinion work product; or (b) post-August 2001 documents. *See* December 22, 2005 Order at 1-3. To the contrary, the Court characterized Dexia's request for those documents as "vastly overbroad." *Id.* at 2.

Now, Dexia attempts to circumvent the Court's December 22 Order by compelling unfettered oral depositions of Plaintiffs' Counsel concerning their investigation over a 3 ½ year period beginning on January 1, 2000 and ending on June 23, 2003.[12] This blatantly violates the December 22 Order's August 19, 2001 cut-off. Simply, any deposition examination must be subject to the parameters established in the December 22 Order. Otherwise, it would render that

---

[11] *E.g., Slater*, 1999 WL 46580, at *1 (noting that a deposition of opposing counsel "provides a unique opportunity for harassment, it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness") (quotation omitted); *Serody v. Serody*, 474 N.E.2d 1171, 1173 (1985) ("Commentators and the cases have remarked on the adverse effect upon the judicial process in the public mind of having lawyers leave counsel table for the witness chair.").

[12] The Schedule A attached to the Notices of Deposition are all identical, except that the Notice directed at Gregory P. Joseph individually contains no Schedule A or proposed topics. Plaintiffs' Counsel, however, have no reason to doubt that the intended scope of Mr. Joseph's deposition mirrors the scope proposed in the other Notices.

Order meaningless, as Dexia could simply obtain prohibited discovery through a back-door deposition.[13]

### C. DEXIA SHOULD BE LIMITED TO ONE DEPOSITION PER LITIGATION

Dexia has noticed four 30(b)(6) depositions of Class Plaintiffs' Counsel and their investigator. This is not only unduly burdensome, but entirely unnecessary. Lead Counsel, and investigators acting at lead counsel's direction, performed a single, integrated investigation.[14] As such, only one representative from Class Counsel would be necessary to provide any Court ordered testimony. Indeed, conducting four depositions of Class Counsel and their investigator

---

[13] While Dexia has filed a second motion to compel seeking opinion work product and documents created after August 19, 2001, this is nothing more than Dexia's attempt to re-argue previously considered and rejected arguments. For the reasons stated in Plaintiffs' March 22, 2006 Opposition, which is hereby incorporated by reference, Dexia's belated attempt to reconsider the December 22 Order is baseless. Dexia is not entitled to an examination of Plaintiffs' Counsel concerning their opinion work product or events occurring less than two years before the filing of the initial complaint. The steps Plaintiffs took after August 19, 2001 have no bearing on whether their investigation prior to that date was objectively reasonable or whether an objectively reasonable investigation would have yielded the facts that provided the basis for Plaintiffs' claims.

[14] Class Plaintiffs' Counsel and their investigator should be treated the same for purposes of this motion. It is well settled that the work of a party's investigator is privileged work-product and trial preparation material, and is therefore entitled to protection as such. Fed. R. Civ. P. 26(b)(3); *Fairbanks v. American Can Co.*, 110 F. R. D. 685, 687 (D. Mass. 1986) (noting that work product encompasses documents prepared by or for a party, or for its representative); *Bondy v. Brophy*, 124 F.R.D. 517, 517 (D. Mass. 1989) (finding work product immunity with regard to discovery "seek[ing] information obtained by an investigator hired by the plaintiff, including identities of persons investigated, identities of persons contacted and copies of any and all written reports"); *see also In re Grand Jury Subpoena Dated October 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002) ("It is helpful to remember that the work product privilege applies to preparation not only by lawyers but also by other types of party representatives including, for example, investigators seeking factual information."). Here, all work performed by the James Mintz Group was done at the direction of Class Plaintiffs' Counsel in anticipation of litigation, and is protected work product. As such, the parameters of any discovery from the James Mintz Group must mirror the scope of discovery from Plaintiffs and Plaintiffs' Counsel. Further, in response to interrogatories, Class Plaintiffs have already provided to Dexia the names of all witnesses interviewed (or that Plaintiffs attempted to interview) during the relevant period as part of Plaintiffs' investigation, including the date of the interviews. Plaintiffs have also stated, in response to Interrogatories concerning interviews conducted by the James Mintz Group, that they do not recall whether questions were asked specifically about the conduct of Dexia's predecessor entities during any of the interviews conducted during the relevant period, and acknowledged that there are no records reflecting any questions or answers concerning Dexia's predecessors during that time. Given these detailed responses, Plaintiffs are at a loss regarding what areas of legitimate inquiry remain concerning the investigation performed by the James Mintz Group.

13

makes no more sense than authorizing a party to conduct four depositions of its adversary's counsel in any other litigation. Yet, as established above, courts have permitted only limited inquiry of parties' counsel and have endeavored to curtail those examinations so that they are no more intrusive and burdensome than absolutely necessary under the circumstances. Needless to say, Dexia cannot cite any case in which a court permitted a party to take multiple depositions of its adversary, let alone four separate examinations.

Restricting Dexia's discovery in this manner is particularly advisable in light of the possibility that Dexia will strategically seek to introduce the testimony of particular Class Plaintiffs' counsel at trial for the purpose of arguing that those counsel should be disqualified from representing the Class. Admittedly, Plaintiffs' Counsel view the possibility that Dexia will seek to introduce their testimony at trial as remote. That is true because: (a) Plaintiffs' Counsel have nothing harmful to say; and (b) Dexia's purported defense that Plaintiffs should have discovered Dexia's fraudulent conduct before they did is, to say the least, unlikely to be unveiled before the jury weighing whether Dexia committed fraud.

Nevertheless, the possibility that Dexia will engage in strategic conduct designed to delay the trial and impose additional costs and burden upon the Class Plaintiffs weighs heavily in favor of limiting Dexia's examination of the Class's counsel to a single deposition. Limiting Dexia's discovery in that manner will provide Dexia with access to all the discovery to which it is entitled without burdening the Class Plaintiffs with needlessly repetitive examinations that Dexia may seek to exploit for improper strategic advantage.

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully request that this Court grant their motion for a protective order:

(a) quashing the Notices of Deposition severed on Plaintiffs' Counsel as unduly burdensome, cumulative, harassing and duplicative or, in the alternative, limiting Dexia's examination of Plaintiffs' Counsel to depositions by written question;

(b) limiting the scope of any deposition of Plaintiffs' Counsel to the parameters already established in the Court's December 22, 2005 Order; and

(c) limiting Dexia's examination of Class Counsel and its investigator to only one representative, testifying on behalf of all lead counsel for the class plaintiffs.

Dated: May 19, 2006

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

    /s/ Patrick T. Egan
Glen DeValerio, BBO # 122010
Patrick T. Egan, BBO # 637477
One Liberty Square
Boston, MA 02109
Telephone:  (617) 542-8300

**SHALOV STONE & BONNER LLP**
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone:  (212) 239-4340

**CAULEY BOWMAN CARNEY & WILLIAMS PLLC**
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone:  (501) 312-8500

*Co-lead Counsel to Lead Class Plaintiffs Hans A. Quaak, Karl Leibinger and Attilio Po*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**


/s/ Avi Josefson
Max W. Berger
Steven B. Singer
Avi Josefson
(avi@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 554-1400

**LOONEY & GROSSMAN LLP**
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2800

*Counsel to Plaintiffs Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund L.P. and Stonington Holdings L.L.C.*

**GREGORY P. JOSEPH LAW OFFICES LLC**


          /s/ Susan M. Davies
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
Third Avenue, 31st Floor
New York, NY  10022
Telephone:  (212) 407-1200

**KOTIN, CRABTREE & STRONG**
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone:  (617) 227-7031

*Counsel to Plaintiffs Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rrights Trust*

**PARTRIDGE, ANKNER & HORSTMAN LLP**

      /s/ Terrence K. Ankner
Terrence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone:  (617) 859-9999

**BOIES SCHILLER & FLEXNER**
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida  32801
Telephone:  (407) 425-7118

**REED SMITH LLP**
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone:  (215) 851-8100

*Counsel to Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBbaker LLC.*