**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>     Defendants. | Civil Action No.: 03-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>     Plaintiffs,<br><br>     v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>     Defendants. | Civil Action No.: 04-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>     Plaintiffs,<br><br>     v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>     Defendants. | Civil Action No.: 04-10477 (PBS) |

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.: 04-10501 (PBS) |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER PREVENTING DEPOSITIONS OF COUNSEL

Peter M. Saparoff (BBO#441740)
Breton Leone-Quick (BBO#655571)
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO
One Financial Center
Boston, MA 02111
Tel:   (617) 542-6000
Fax:   (617) 542-2241

James B. Weidner
Jeff E. Butler
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019-6131
Tel:   (212) 878-8000
Fax:   (212) 878-8375

*Counsel for Dexia Bank Belgium*

Table of Contents

Preliminary Statement ........................................................................................................................1

Background .......................................................................................................................................2

    A.    Dexia's Motion to Dismiss the Second Amended Complaint ................................2

    B.    Discovery Concerning Plaintiffs' Alleged Investigation .........................................3

        1.    Document Requests ...................................................................................3

        2.    Interrogatories ............................................................................................5

        3.    Depositions ................................................................................................7

Argument ..........................................................................................................................................8

I.    LIMITED DEPOSITIONS CONCERNING THE ALLEGED INVESTIGATION OF CLAIMS AGAINST DEXIA SHOULD BE PERMITTED ..........................................8

Conclusion ......................................................................................................................................14

Table of Authorities

Cases

*Carey v. Textron, Inc.*,
    224 F.R.D. 530 (D. Mass. 2004)......................................................................................9

*Greenberg v. Safe Lighting, Inc.*,
    24 F.R.D. 410 (S.D.N.Y. 1959) .....................................................................................11

*Harding v. Dana Transp., Inc.*,
    914 F. Supp. 1084 (D.N.J. 1996) ..................................................................................10

*Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*,
    130 F.R.D. 348 (D.N.J. 1990)........................................................................................9

*Kaiser v. Mut. Life Ins. Co.*,
    161 F.R.D. 378 (S.D. Ind. 1994).....................................................................................9

*In re Lincoln N. Assocs., Ltd. P'ship*,
    163 B.R. 403 (D. Mass. 1993) .....................................................................................10

*Mill-Run Tours, Inc. v. Khashoggi*,
    124 F.R.D. 547 (S.D.N.Y. 1989) ..................................................................................11

*Quaak v. Dexia S.A.*,
    357 F. Supp. 2d 330 (D. Mass. 2005) .....................................................................2, 3, 8

*Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am.*,
    120 F.R.D. 8 (D. Mass. 1988)................................................................................. 9-10

*Savoy v. Richard A. Carrier Trucking, Inc.*,
    178 F.R.D. 346 (D. Mass. 1998).....................................................................................9

*Shelton v. Am. Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) .......................................................................................9

*In re Subpoena Issued to Dennis Friedman*,
    350 F.3d 65 (2d Cir. 2003).............................................................................................9

*Titan Corp. v. M/A-Com, Inc.*,
    No. 93-CV-335, 1994 WL 16001739 (S.D. Cal. June 22, 1994)..............................10

*Young v. Lepone*,
    305 F.3d 1 (1st Cir. 2002)...............................................................................................8

Defendant Dexia Bank Belgium ("Dexia") submits this memorandum in opposition to Plaintiffs' Motion for Protective Order preventing depositions of counsel relating to Plaintiffs' alleged investigation of potential claims against Dexia. Dexia also submits the Declaration of Jeff E. Butler dated May 30, 2006 ("Butler Decl.") in opposition to this motion.

## Preliminary Statement

The Court has repeatedly recognized that Dexia is entitled to conduct discovery concerning the alleged investigation of potential claims against Dexia and its predecessor, Artesia Banking Corporation ("Artesia"), which was conducted by counsel for Plaintiffs. Plaintiffs have resisted Dexia's discovery efforts at every turn, apparently seeking to conceal for as long as possible that no investigation directed at Artesia or Dexia ever took place. To resolve this factual issue once and for all, Dexia has noticed limited depositions pursuant to Rule 30(b)(6) of the law firms that were primarily responsible for the alleged investigation. Despite the clear indications from the Court that this information is directly relevant to Dexia's defense, Plaintiffs are continuing to stonewall Dexia's legitimate discovery efforts.

By noticing the depositions of Plaintiffs' counsel, Dexia is seeking relevant information from the only witnesses available to testify about the alleged investigation. Plaintiffs have repeatedly indicated that their alleged investigation was conducted "by and through" their counsel, not by the Plaintiffs themselves. Thus, Dexia has no choice but to seek testimony about the alleged investigation from opposing counsel identified by Plaintiffs as having been involved. Under similar circumstances, courts have repeatedly found oral depositions of opposing counsel to be justified. Moreover, Dexia has made every effort to reduce the burden of such depositions on counsel for Plaintiffs, including identifying the deposition topics in advance and allowing Plaintiffs to select the particular representative who will testify for each firm.

Plaintiffs object to depositions of their counsel on a number of different grounds, and also argue for placing limits on the depositions above and beyond those already proposed by Dexia. As set forth below, none of Plaintiffs' arguments has any merit. Accordingly, this Motion for Protective Order should be denied, and the Court should direct Plaintiffs to schedule the requested depositions immediately.

## Background

**A.    Dexia's Motion to Dismiss the Second Amended Complaint**

Two years ago, Dexia moved to dismiss Plaintiffs' Second Amended Complaint arguing, among other things, that Plaintiffs were on inquiry notice of potential claims against Dexia in early 2001 and their claims were barred by the applicable statute of limitations. In opposition, Plaintiffs argued that they were not on inquiry notice in 2001, and that counsel for Plaintiffs conducted a diligent investigation of their claims, but did not discover Dexia's alleged role in the L&H fraud until June 2003. (*See* Butler Decl. Ex. A, at 12-14; *see also* Second Am. Compl. ¶ 21.)

In its decision on Dexia's motion to dismiss, the Court agreed that Plaintiffs were on inquiry notice of potential claims against Dexia by the spring of 2001 at the latest, and observed that "the critical inquiry is whether plaintiffs were reasonably diligent in investigating potential claims against this defendant once those storm warnings appeared." *Quaak v. Dexia, S.A.*, 357 F. Supp. 2d 330, 340 (D. Mass. 2005). The Court nevertheless denied Dexia's motion to dismiss, based on allegations that counsel for Plaintiffs conducted a diligent investigation of potential claims against Dexia. The Court stated:

> Drawing all inferences in plaintiffs' favor, it cannot be said as a matter of law, on the current record, that plaintiffs failed to exercise reasonable diligence in pursuing their claim against Dexia. Thus, the Court denies the motion to dismiss *until a more ample record is developed*.

2

*Id.* at 341 (emphasis supplied).  Thus, the Court has expressly recognized that Dexia should be permitted to conduct discovery on the subject of whether, in response to storm warnings in early 2000, Plaintiffs conducted a reasonably diligent investigation of potential claims against Dexia.

**B.     Discovery Concerning Plaintiffs' Alleged Investigation**

Dexia has attempted to conduct discovery relating to Plaintiffs' alleged investigation, as the Court plainly contemplated, but such discovery has been actively resisted by Plaintiffs.

**1.     Document Requests**

Dexia served a document request on April 22, 2005, seeking all documents concerning any investigation of Artesia or Dexia by Plaintiffs.  In response, Plaintiffs refused to produce the requested documents, and commenced a protracted negotiation to narrow the request in an unreasonable manner (without producing *any* documents in the meantime).  Finally, after more than four months of negotiations, Dexia moved to compel production of the requested documents on September 9, 2005.

Following the filing of Dexia's motion, the Court ordered Plaintiffs to produce the documents they stated they were willing to produce.  In response to this order, Plaintiffs produced approximately 22,500 pages of document in mid-October 2005.  These documents mainly consisted of press articles, analyst reports, SEC filings, and other public documents relating to L&H.  None of the documents indicated that Plaintiffs had conducted an investigation directed at Artesia or Dexia.  Plaintiffs also redacted certain documents on the basis of privilege, but refused to describe those documents on a privilege log.

The Court heard argument on Dexia's motion to compel on October 20, 2005, and issued an Order on December 22, 2005 (the "12/22/05 Order").  The Court ordered Plaintiffs to produce:

3

        all documents in the following categories within its custody, possession, and/or control which were dated, created, sent or received before August 19, 2001:

    (1)    Documents concerning any investigation by plaintiffs which were directed in any way to the activities of Dexia or Artesia specifically;

    (2)    Documents concerning any investigation by plaintiffs which were directed in any way to the activities of a bank, banks, banking corporation(s) or banking institution(s) in connecti[on] with the L&H fraud;

    (3)    Documents concerning any investigation by plaintiff[s] which mention Dexia or Artesia or which refer to Dexia or Artesia either by specific name or otherwise;

    (4)    Documents upon which plaintiffs intend to rely to demonstrate Plaintiffs' counsel exercised reasonable diligence in investigating potential claims against Dexia or Artesia.

(Egan Decl. Ex. A, at 2.) The Court also ruled that Plaintiffs could not withhold responsive documents "which otherwise would be protected as non-opinion work product" and that Plaintiffs would have to prepare a privilege log for any documents "which the plaintiffs contend are protected as opinion work product." (*Id.* at 3.)

        On January 31, 2006, Plaintiffs produced to Dexia an additional 114 pages of documents and a privilege log listing 27 documents withheld as "opinion" work product. These documents, like those previously produced by Plaintiffs, do not provide any indication of an investigation directed at Artesia or Dexia.

        Because there is no evidence that Plaintiffs conducted any investigation of potential claims against Artesia or Dexia *before* August 19, 2001, Dexia filed a second motion to compel on March 8, 2005, seeking the production of additional documents created, sent or received between August 19, 2001, and June 23, 2003, when Plaintiffs claim they were first on notice of potential claims against Dexia. The motion also seeks *in camera* review of the 27 documents withheld by Plaintiffs as "opinion" work product. That second motion to compel is currently *sub*

4

*judice*. Thus, after more than a year—and two motions to compel—Plaintiffs still have not produced all documents relevant to their alleged investigation.

### 2. Interrogatories

Dexia has served interrogatories on the Class Plaintiffs and each of the Transactional Plaintiffs relating to the alleged investigation of potential claims against Artesia or Dexia.[1] In each case, Plaintiffs initially refused to provide complete information to Dexia, and provided additional information only after subsequent negotiations with Dexia, under the threat of a motion to compel.[2] For example, Dexia served Interrogatory No. 6 on May 1, 2005, seeking the names of persons allegedly interviewed by counsel for Plaintiffs in connection with their alleged investigation. Plaintiffs served a response on June 1, 2005, which contained objections, but no substantive response. (Butler Decl. Ex. B, at 6-7.) After a meet and confer, Plaintiffs served an amended response on June 24, 2005, which still failed to provide any substantive response to this interrogatory. (Egan Decl. Ex. G.) Further negotiations ensued, and Plaintiffs finally provided some substantive information in response to this interrogatory on November 1, 2005—more than *five months* after the interrogatory was served. (*Id.* Ex. H.)

In response to Dexia's interrogatories, Plaintiffs have not provided any information indicating that Plaintiffs or their counsel conducted an investigation directed at Artesia or Dexia. For example, Dexia has asked each of the Transactional Plaintiffs to describe all actions taken to

---

[1] Plaintiffs assert that Dexia has served "34 interrogatories" concerning the alleged investigation. (Pls.' Br. at 2.) That is incorrect. Dexia has served nine interrogatories on this subject on Class Plaintiffs (Interrogatory Nos. 5-8 & 12-16) and three interrogatories on each of the Transactional Plaintiffs (Interrogatory Nos. 4-6). Thus, Dexia has served no more than nine interrogatories on any Plaintiff on this subject, and many of these interrogatories were extremely narrow, or merely followed up on earlier interrogatories.

[2] Tellingly, Plaintiffs omit many of their initial responses to Dexia's interrogatories from the Declaration of Patrick Egan submitted in connection with this motion, preferring instead that the Court should see only the "amended" and "supplemental" responses that were provided only after Dexia threatened to file a motion to compel. (*See* Egan Decl. Exs. G-O.)

investigate potential claims against Artesia. (*See, e.g., id.* Ex. K, Interrogatory No. 4.) Each of the Transactional Plaintiffs has responded by describing document reviews and other efforts that were plainly directed at potential claims against other entities, including L&H itself, the officers and directors of L&H, KPMG and certain Korean banks. (*See, e.g.*, *id.* Ex. K, at 10-16.) There is nothing in these responses to suggest an investigation directed at Artesia or Dexia in response to the storm warnings that existed in early 2001.

To the extent any investigation was done, Plaintiffs' interrogatory responses clearly indicate that it was done by counsel for Plaintiffs, or by investigators retained by counsel for Plaintiffs. Dexia has asked both the Class Plaintiffs (Interrogatory No. 12) and each of the Transactional Plaintiffs (Interrogatory No. 5) to identify the persons involved in the investigation leading to the allegations in the complaint against Dexia. In response, Plaintiffs have not identified anyone other than persons affiliated with the law firms representing the Plaintiffs, or consultants retained by those law firms. For example, Class Plaintiffs' response to this interrogatory indicates that the following persons participated in the alleged investigation of potential claims against Dexia:

- 10 persons affiliated with Berman DeValerio Pease Tabacco Burt & Pucillo, including Glen DeValerio and Jeffrey Block;

- 8 persons affiliated with Shalov Stone & Bonner LLP, including Lee Shalov, Ralph Stone and James Bonner;

- 21 persons affiliated with Cauley Bowman Carney & Williams, including Gene Cauley, Curtis Bowman and Allen Carney;

- 3 persons from the James Mintz Group, an investigative firm retained by Class Plaintiffs; and

- 4 other persons affiliated with a Belgian law firm and two consulting firms.

6

(*See id.* Ex. H, at 12-18.)  Based on these interrogatory responses, there does not appear to be anyone who could possibly testify concerning Plaintiffs' alleged investigation other than counsel for Plaintiffs and investigators retained by counsel for Plaintiffs.

   **3.    Depositions**

In order to determine whether any of Plaintiffs' investigative efforts were directed at Artesia or Dexia, Dexia has served Rule 30(b)(6) deposition notices on five law firms representing the Class Plaintiffs and the Transactional Plaintiffs, as well as on the James Mintz Group, which conducted investigation on behalf of the Class Plaintiffs.[3]  The Rule 30(b)(6) notices seek testimony concerning three narrow topics:

1. Any investigation by Plaintiffs which was directed in any way to the activities of Dexia or Artesia specifically.

2. Any investigation by Plaintiffs which was directed in any way to the activities of a bank, banks, banking corporations, or banking institutions in connection with the L&H fraud.

3. Any other investigation upon which Plaintiffs intend to rely on to demonstrate that they exercised reasonable diligence in investigating potential claims against Dexia or Artesia.

(*See, e.g.*, Egan Decl. Ex. D-5.)  These topics track the language used by the Court in the 12/22/05 Order.  (*See id.* Ex. A.)  The relevant time period for each request is limited to events before June 2003, when Plaintiffs allege they first learned of potential claims against Dexia.

Plaintiffs have refused to schedule dates for the depositions noticed by Dexia, and instead have filed the instant motion for a protective order seeking to prevent the depositions.

---

[3] Dexia also served a Rule 30(b)(1) deposition notice on Gregory P. Joseph.  Mr. Joseph was a partner at Fried, Frank, Harris, Shriver and Jacobson LLP when the alleged investigation began, and then he left that firm to create his own firm, Gregory P. Joseph Law Offices LLC, in 2001.  Because his involvement in the alleged investigation began in 2000 (*see* Egan Decl. Ex. M, at 13), a Rule 30(b)(6) deposition of his law firm would not be sufficient to explore the early stages of the alleged investigation.

7

**Argument**

**I. LIMITED DEPOSITIONS CONCERNING THE ALLEGED INVESTIGATION OF CLAIMS AGAINST DEXIA SHOULD BE PERMITTED.**

Dexia has noticed the depositions of representatives from Plaintiffs' law firms because they are the only witnesses with knowledge of Plaintiffs' alleged investigation, and are therefore the only persons who could explain what portion, if any, of the alleged investigation was directed at Artesia or Dexia. This information is critical for Dexia's statute of limitations defense. The Court has already ruled that Plaintiffs were on inquiry notice of potential claims against Dexia by no later than the spring of 2001, and that Plaintiffs have the burden of establishing that they conducted a reasonably diligent investigation of potential claims against Dexia. *See Quaak*, 357 F. Supp. 2d at 339-40. Moreover, the Court has expressly recognized the need for discovery on the issue of whether Plaintiffs conducted such an investigation. *Id.* at 341. Accordingly, Dexia has every right to conduct depositions of persons with knowledge of the alleged investigation for purposes of demonstrating that Plaintiffs have failed to meet their burden in this case.[4]

Plaintiffs advance a number of arguments against the depositions proposed by Dexia, none of which has any merit. *First*, Plaintiffs complain that Dexia is seeking "unfettered" discovery of Plaintiffs' counsel.[5] There is no basis for that complaint. Although Plaintiffs have identified dozens of individuals from their respective law firms who were involved in the alleged investigation of potential claims against Artesia or Dexia (*see, e.g.*, Egan Decl. Ex. H, at 12-18), Dexia seeks to depose only *one* representative, *selected by Plaintiffs*, from each of the main law

---

[4] Under controlling First Circuit authority, if a defendant establishes that "storm warnings" placed the public on inquiry notice of potential claims against a particular defendant, the plaintiff has the burden of proving that it conducted a reasonably diligent investigation of potential claims against that defendant. *Young v. Lepone*, 305 F.3d 1, 8-9 (1st Cir. 2002).

[5] Plaintiffs use the word "unfettered" to describe the proposed depositions no fewer than five times in their brief. (*See* Pls.' Br. at 3, 4, 6, 10, 12.) They also describe the proposed depositions as "broad ranging," "open-ended" and "far flung, free flowing." (*Id.* at 3, 6, 7.)

firms identified as having been involved. In addition, the Rule 30(b)(6) notices served by Dexia expressly limit the depositions to certain specific, narrow topics that the Court has already held are relevant to Dexia's statute of limitations defense. Thus, Dexia has already limited its discovery on this subject to a great extent.

*Second*, Plaintiffs contend that depositions of opposing counsel are highly disfavored by courts, and may be permitted only if specific conditions are met. (Pls.' Br. at 6-7.) In making this argument, Plaintiffs rely on an Eighth Circuit case called *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), which sets forth a three-part test for taking the deposition of an opposing lawyer. The Eighth Circuit approach, however, has never been adopted by the First Circuit, and has been rejected by a number of courts. *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting the *Shelton* standard for depositions of opposing counsel, and adopting a "flexible approach" to such depositions); *Kaiser v. Mut. Life Ins. Co.*, 161 F.R.D. 378, 382 (S.D. Ind. 1994) (rejecting the *Shelton* approach because "we do not believe that depositions of counsel are so rarely justified or so great a phenomenon as to warrant imposing a stricter standard for their allowance."); *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990) ("In cases where the attorney's conduct itself is the basis of a claim or defense, there is little doubt that the attorney may be examined as any other witness." (citations omitted)).

In fact, courts in this District and elsewhere have not hesitated to allow oral depositions of opposing counsel under appropriate circumstances. *See Carey v. Textron, Inc.*, 224 F.R.D. 530, 531-32 (D. Mass. 2004) (allowing deposition of former opposing counsel for purposes of spoliation defense); *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346, 347 (D. Mass. 1998) (ordering opposing counsel to resume deposition relating to bad faith claim); *Refuse &*

9

*Envtl. Sys., Inc. v. Indus. Servs. of Am.*, 120 F.R.D. 8, 8-10 (D. Mass. 1988) (allowing deposition of opposing counsel regarding advice of counsel defense); *In re Lincoln N. Assocs., Ltd. P'ship*, 163 B.R. 403, 406 (D. Mass. 1993) (sanctioning opposing counsel for failing to appear at deposition); *see also Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1089 n.4, 1103 (D.N.J. 1996) (allowing deposition of opposing counsel regarding investigation of sexual harassment claim); *Titan Corp. v. M/A-Com, Inc.*, No. 93-CV-335, 1994 WL 16001739, at *3 (S.D. Cal. June 22, 1994) (allowing deposition of opposing counsel regarding alleged diligent investigation). Thus, disfavored or not, depositions of opposing counsel are certainly permitted when the circumstances call for them.

One of the main reasons for disfavoring depositions of opposing counsel is the risk that work product protection or attorney-client privilege will be invaded. There is little risk of that here, because the proposed depositions are limited to factual information concerning the alleged investigation conducted by counsel and the Court has already determined that Plaintiffs have waived any claim of non-opinion work product protection concerning their investigation.[6] In any event, Plaintiffs will have the opportunity to object and refuse to respond to questions that would invade any legitimate claim of privilege. Accordingly, there is no reason to believe that a deposition of counsel for Plaintiffs will give Dexia improper access to privileged information.[7]

*Third*, Plaintiffs note that Dexia has already served document requests and interrogatories regarding the alleged investigation, including document discovery and interrogatories, and assert

---

[6] Dexia believes that Plaintiffs have also waived protection over opinion work product, and has asked the Court to conduct an *in camera* review of documents withheld by Plaintiffs as opinion work product.

[7] Plaintiffs suggest that oral depositions will lead to "little more than a chorus of objections and battles on the record." (Pls.' Br. at 9.) Plaintiffs have no reason to believe that counsel for Dexia will depart from their usual standards of courtesy and professionalism during the proposed depositions. Of course, Dexia cannot prevent counsel for Plaintiffs from raising a "chorus of objections" should they choose to do so.

that Plaintiffs' responses have been "extremely forthcoming." (Pls.' Br. at 4.) We respectfully disagree with this assertion. Plaintiffs have opposed discovery on this subject in almost every way possible. With respect to document requests, Dexia waited nearly *six months* to receive the first documents concerning Plaintiffs' alleged investigation, and this production occurred only in response to a Court order. Moreover, the documents provided by Plaintiffs consisted mainly of publicly-available "chaff," apparently provided to obscure the fact that Plaintiffs have no evidence of an investigation directed at Artesia or Dexia. With respect to interrogatories, Dexia has been forced to engage in protracted negotiations to obtain even limited amounts of relevant information. Against this background delay and obstruction by Plaintiffs, the oral depositions requested by Dexia can be seen as particularly important to Dexia's statute of limitations defense.

*Fourth*, Plaintiffs propose that depositions, if allowed, should be conducted by written questions under Rule 31, and not by oral examination under Rule 30. The reason for this proposal is obvious: written questions would give Plaintiffs more opportunity to obfuscate using carefully qualified responses, and to avoid admitting outright that no investigation directed at Artesia or Dexia was undertaken in response to the storm warnings in early 2001. Courts have repeatedly recognized the limitations of depositions by written questions. *See Greenberg v. Safe Lighting, Inc.*, 24 F.R.D. 410, 411 (S.D.N.Y. 1959) ("Experience has made it abundantly clear that the advantages of oral examination far outweigh the advantages of written interrogatories in carrying out the deposition procedures . . ."); *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549-50 (S.D.N.Y. 1989) (itemizing the advantages of oral depositions, and noting that "written questions provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes."). Because of

11

Plaintiffs' well-documented reluctance to provide prompt and straightforward responses to other discovery requests on this subject, Dexia has no reason to believe that depositions by written questions would be a productive alternative to oral examination.

*Fifth*, Plaintiffs argue that Dexia's deposition topics are overly broad because they would permit examination concerning events after August 19, 2001, which is the cutoff date used in the 12/22/05 Order. (Pls.' Br. at 12-13.) This argument has no merit and should be rejected. The 12/22/05 Order, by its plain terms, does not purport to restrict *all discovery* concerning Plaintiffs' alleged investigation into events taking place before August 19, 2001. (*See* Egan Decl. Ex. A.) That is merely an interpretation of the Order that Plaintiffs have found convenient for purposes of avoiding discovery requested by Dexia.[8] In any event, Dexia has filed a motion to modify the 12/22/05 Order to compel production of documents created after August 19, 2001, but before June 23, 2003 (the same cutoff date used in the deposition notices). This motion was necessary because there is no evidence of an investigation directed at Artesia or Dexia before August 19, 2001, and Plaintiffs have indicated that they may rely on events after August 19, 2001, for purposes of establishing the existence of a diligent investigation at trial. For the same reasons set forth in Dexia's motion papers, Dexia should be permitted to inquire into what efforts, if any, were made by Plaintiffs to investigate potential claims against Artesia or Dexia between August 19, 2001, and June 23, 2003, when Plaintiffs say they finally learned of those claims.

*Finally*, Class Plaintiffs argue that taking depositions of each of the three law firms representing Class Plaintiffs would be unduly burdensome, and that only one such deposition should be necessary. (Pls.' Br. at 13-14.) Plaintiffs did not raise this issue with counsel for

---

[8] For example, since the 12/22/05 Order, Plaintiffs have refused to provide interrogatory responses concerning events after August 19, 2001, even though Plaintiffs made no objection to providing such information before the 12/22/05 Order. Plaintiffs have thus expanded the application of the August 19, 2001, cutoff date well beyond the context of the document production at issue in the 12/22/05 Order.

Dexia before filing their motion. In fact, Dexia would not oppose taking the deposition of one representative of all three law firms, provided the designated representative is knowledgeable about the investigative efforts of all three law firms, and provided all three law firms agree to be bound by the testimony of that representative. Dexia could not agree, of course, to a single deposition if the effect would be to avoid disclosing the investigative efforts (or lack thereof) of the other two firms, or to permit Plaintiffs to present evidence at trial that contradicts the deposition testimony provided.

Regardless of how the depositions of Class Plaintiffs' law firms are handled, Dexia should be permitted to take a separate Rule 30(b)(6) deposition of the James Mintz Group, which served as private investigators for Class Plaintiffs. Plaintiffs have indicated that substantial portions of the alleged investigation were conducted by the James Mintz Group, including the review of press articles in Belgium and interviews of a number of potential witnesses. In addition, the James Mintz Group has separately produced documents to Dexia, which were obtained only in response to a subpoena (*i.e.*, Plaintiffs did not produce these documents in response to Dexia's Rule 34 requests). Given the central role that the James Mintz Group played in the alleged investigation, Dexia should have the opportunity to question a representative of this firm about the investigation separately from any depositions of counsel for the Class Plaintiffs.

In sum, the depositions noticed by Dexia seek information that is critical to Dexia's statute of limitations defense, and the scope of these depositions has already been carefully limited by Dexia. Plaintiffs' various arguments for avoiding or further limiting the scope of these depositions are meritless, and their continued efforts to stonewall this discovery should be

rejected. Accordingly, the Court should direct Plaintiffs to schedule the requested depositions immediately.

## Conclusion

For all the foregoing reasons, Plaintiffs' Motion for Protective Order preventing the depositions of counsel concerning the alleged investigation of Artesia or Dexia should be denied.

Dated: May 30, 2006

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO

By:   /s/ Breton Leone-Quick
      Peter M. Saparoff (BBO#441740)
      Breton Leone-Quick (BBO#655571)

One Financial Center
Boston, MA 02111
Tel:   (617) 542-6000
Fax:   (617) 542-2241

James B. Weidner
Jeff E. Butler
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019-6131
Tel:   (212) 878-8000
Fax:   (212) 878-8375

*Counsel for Dexia Bank Belgium*

## Certificate of Service

I, Breton Leone-Quick, hereby certify that this document, along with the accompanying Declaration with exhibits filed herewith, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 30, 2006.

  /s/ Breton Leone-Quick                          Dated: May 30, 2006