# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.) <br><br> Defendants. | Civil Action No.: 04-10501 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust, <br><br> Plaintiffs, <br><br> v. <br><br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.) <br><br> Defendants. | Civil Action No.: 04-10477 (PBS) |

| | |
|---|---|
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.)<br><br>　　　　　　Defendants. | Civil Action No.: 04-10411 (PBS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
DEXIA BANK BELGIUM'S MOTION FOR JUDGMENT ON THE PLEADINGS**

CLIFFORD CHANCE US LLP

James B. Weidner
Thomas Teige Carroll
31 West 52nd Street
New York, NY 10019
(212) 878-8000
(212) 878-8375 fax

MINTZ LEVIN COHN FERRIS GLOVSKY
& POPEO

Peter M. Saparoff (BBO#441740)
Breton Leone-Quick (BBO#655571)
One Financial Center
Boston, Ma 02111
(617) 542-6000
(617) 542-2241 fax

*Counsel for Dexia Bank Belgium, S.A.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 1

      A.     L&H's Collapse and the Initial Litigation ............................................. 1

      B.     Actions Against Dexia ........................................................................... 3

ARGUMENT .............................................................................................................. 6

I.      LEGAL STANDARD ...................................................................................... 6

II.     PLAINTIFFS' COMMON LAW CLAIMS SHOULD BE DISMISSED ................... 6

      A.     The Baker Plaintiffs Cannot Maintain A Direct Fraud Claim Against Dexia Because Dexia Made No Representations To Them .................................. 6

      B.     The Baker And Filler Plaintiffs Are Collaterally Estopped From Bringing Their Aiding And Abetting Fraud Claims Against Dexia ..................................... 7

      C.     Dexia Did Not Aid And Abet L&H's Fraud Upon Plaintiffs As A Matter Of Law .......................................................................................................... 10

      D.     Dexia Did Not Conspire To Defraud Plaintiffs Because It Knew Nothing Of L&H's Goal Of Acquiring Dictaphone Or Dragon ........................................ 13

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Bamberg v. SG Cowen,*
    236 F. Supp. 2d 79 (D. Mass. 2002) ..........................................................................11

*Batchelder v. N. Fire Lites, Inc.,*
    630 F. Supp. 1115 (D.N.H. 1986)................................................................................12

*Buckley v. Goldman, Sachs & Co.,*
    No. Civ. A. 02-CV-11497 RGS,
    2005 WL 1206865 (D. Mass. May 20, 2005)..............................................................11

*Employees Own Fed. Credit Union v. City of Defiance,*
    752 F.2d 243 (6th Cir. 1985) ......................................................................................10

*Filler v. Hanvit Bank,*
    156 F. App'x 413 (2d Cir. 2005) ............................................................................3, 10

*Filler v. Hanvit Bank,*
    247 F. Supp. 2d 425 (S.D.N.Y. 2003).............................................................3, 6, 11, 12

*Filler v. Hanvit Bank,*
    339 F. Supp. 2d 553 (S.D.N.Y. 2004)
    *aff'd,* 156 F. App'x 413 (2d Cir. 2005).............................................................. *passim*

*Filler v. Hanvit Bank,*
    Nos. 01 Civ. 9510 (MGC), 02 Civ. 8251 (MGC),
    2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003)........................................................3, 6

*Johnson v. SCA Disposal Servs., Inc.,*
    931 F.2d 970 (1st Cir. 1991).........................................................................................7

*In re Lernout & Hauspie Sec. Litig.,*
    230 F. Supp. 2d 152 (D. Mass. 2002) ...........................................................................6

*Monarch Life Ins. Co. v. Ropes & Gray,*
    65 F.3d 973 (1st Cir. 1995)...........................................................................................8

*Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.),*
    340 B.R. 1 (Bankr. E.D.N.Y. 2006)......................................................................13, 14

*Parklane Hosiery Co. v. Shore,*
    439 U.S. 322 (1979).................................................................................................7, 8

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Pasdon v. City of Peabody*,
   417 F.3d 225 (1st Cir. 2005) ............................................................................6

*Payton v. Abbott Labs*,
   512 F. Supp. 1031 (D. Mass. 1981) ...............................................................13

*Primavera Familienstifung v. Askin*,
   130 F. Supp. 2d 450 (S.D.N.Y. 2001) ...........................................................11

*Stonington Partners, Inc. v. Hanvit Bank*,
   02 Civ. 8213 (MGC), 2003 WL 21505308 (S.D.N.Y. June 30, 2003) .........................2

## STATE CASES

*CPC Int'l Inc. v. McKesson Corp.*,
   507 N.Y.S.2d 984 (N.Y. App. Div. 1986) ......................................................11

*CPC Int'l Inc. v. McKesson Corp.*,
   514 N.E.2d 116 (N.Y. 1987) ..........................................................................11

## FEDERAL STATUTES

Fed. R. Civ. P. 12(c) ............................................................................................6

## PRELIMINARY STATEMENT

By this motion Dexia Bank Belgium ("Dexia") seeks judgment on the pleadings in its favor dismissing the common law claims filed against it by Janet and James Baker ("Baker Plaintiffs"), Gary Filler and Lawrence Perlman ("Filler Plaintiffs") and Stonington Partners ("Stonington Plaintiffs") (all collectively "Plaintiffs"). The basis for this motion is as follows:

- The Baker Plaintiffs' common law fraud claims should be dismissed because they fail to allege any misrepresentation made to them by Dexia;

- The Baker and Filler Plaintiffs are collaterally estopped from bringing their common law aiding and abetting claims because their nearly identical claims involving Korean banks and the L&H scheme were dismissed. *E.g.*, *Filler v. Hanvit Bank*, 339 F. Supp. 2d 553, 555 (S.D.N.Y. 2004), *aff'd*, 156 F. App'x 413 (2d Cir. 2005) (Carroll Decl. Ex. C); and

- Even if Plaintiffs were not collaterally estopped from re-litigating their aiding and abetting claims, those claims, as well as their conspiracy claims, are insufficient as a matter of law.

For these reasons, the common law claims should be dismissed in their entirety.

## BACKGROUND

### A.    L&H's Collapse and the Initial Litigation

As the Court is aware, this case arises from the widely-publicized collapse of Lernout & Hauspie Speech Products, N.V. ("L&H"). Plaintiffs are (1) entities and individuals that sold a software company, Dragon Systems ("Dragon"), to L&H in exchange for L&H stock in June 2000, and (2) entities that sold the speech technology company Dictaphone to L&H in return for L&H stock in May 2000.[1] When L&H collapsed, these Plaintiffs began suing to recover the loss in value of the L&H stock they received in exchange for their companies. Actions were brought

---

[1]    As the Court is aware, other plaintiffs have also filed actions pertaining to L&H's collapse. In particular, NASDAQ market investors in L&H stock brought class actions against L&H and later against Dexia.

against defendants that included not only L&H and its principals, but also auditors, lawyers and

investment bankers.

In particular, in 2001 and 2002 the Filler and Baker Plaintiffs sued three Korean banks,

Hanvit Bank, Shinhan Bank, and Chohung Bank, in the Southern District of New York.  *See,*

*e.g., Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004) ("*Hanvit*") (Carroll Decl. Ex.

E).  In those actions, the Filler and Baker plaintiffs alleged that the Korean Banks fraudulently

engaged in transactions with L&H and its affiliates that allowed L&H to inflate its stock price.[2]

(Compl. ¶ 58-66, 84-93, *Filler v. Hanvit Bank*, No. 01-CV-9510 (S.D.N.Y Oct. 29, 2001)

(Carroll Decl. Ex. A).

> Specifically,
>
> [t]he complaints allege[d] that [L&H Korea] began executing enormous contracts
> to license software to Asian companies.  These companies, plaintiffs contend[ed],
> were either start-up corporations or entities which were too small to be able to pay
> what they would owe to L&H Korea under the contracts.  The complaints
> allege[d] that Hanvit, Shinhan, and Chohung were aware that these contracts were
> essentially shams.  Nevertheless, Hanvit and Shinhan contracted with L&H Korea
> to purchase, or "factor," L&H Korea's accounts receivable—the money owed to
> L&H Korea by its licensees under these contracts.  These factoring agreements
> stated that defendants agreed to purchase the accounts receivable "without
> recourse"—that is, Hanvit and Shinhan agreed to assume the full risk of collecting
> the money owed to L&H Korea.  However, according to the complaints, L&H
> Korea and defendants executed side agreements which changed the terms of the
> factoring agreements so that the banks' purchase of the accounts receivable would
> actually be "with recourse," meaning that L&H Korea would retain the risk of
> collection.  To this end, Hanvit and Shinhan retained in restricted accounts the
> money which they "paid" L&H Korea for its accounts receivable. . . . .  *All of these
> transactions, according to plaintiffs, enabled L&H Korea to report nonexistent
> revenue in its financial statements, which were incorporated into L&H Belgium's
> financial statements.*

---

[2]    The Stonington Plaintiffs also sued these banks, alleging identical claims but their action was dismissed
*inter alia* for lack of diversity jurisdiction.  *Stonington Partners, Inc. v. Hanvit Bank*, 02 Civ. 8213 (MGC),
2003 WL 21505308 (S.D.N.Y. June 30, 2003).

*Hanvit*, 339 F. Supp. 2d at 556 (emphasis added) (Carroll Decl. Ex. E).  Plaintiffs asserted claims against the banks *inter alia* under Section 10(b) of the Exchange Act, for common law fraud, aiding and abetting fraud, and conspiracy.  *Id.* at 556-57.

The District Court in *Hanvit* dismissed these claims, not once but repeatedly.  The Filler complaint was amended and dismissed a total of three times, *id.* at 556-557, and the Baker complaint twice.  *Filler v. Hanvit Bank*, 247 F. Supp. 2d 425, 430 (S.D.N.Y. 2003) (Carroll Decl. Ex. C).  The securities law claims failed because plaintiffs had not identified any statement by any defendant on which Plaintiffs relied in accepting L&H stock, and had not alleged that defendants made any statements that proximately caused plaintiffs' injuries as required by Section 10(b) of the Exchange Act.  *Id.* at 430.

Similarly, the common law fraud claims failed because the complaints did not allege that any defendant bank actually made a representation to any plaintiff or that a representation was made to any plaintiff and attributed to a defendant.  *Filler v. Hanvit Bank*, Nos. 01 Civ. 9510 (MGC), 02 Civ. 8251 (MGC), 2003 WL 22110773, at *2 (S.D.N.Y. Sept. 12, 2003) (Carroll Decl. Ex. D).  Claims for aiding and abetting common law fraud and conspiracy were dismissed because, under Rule 9(b)'s stringent pleading requirements, Plaintiffs had failed to specify how their injuries were the "reasonably foreseeable" result of defendant banks' conduct.  *Filler v. Hanvit Bank*, 247 F. Supp. 2d at 431 (Carroll Decl. Ex. C).  The Baker and Filler Plaintiffs appealed their third dismissal, which was affirmed.  *Filler v. Hanvit Bank*, 156 F. App'x 413 (2d Cir. 2005).  They did not elect to amend yet again, and took no further action after the Second Circuit's decision.

### B.    Actions Against Dexia

Dexia is the most recent of the defendants named by Plaintiffs.  In March 2004, approximately one year after the last of the *Hanvit* complaints was filed, the Baker, Filler and

Stonington Plaintiffs filed new actions, this time against Dexia, S.A. and Dexia Bank Belgium.

As they did in the *Hanvit* cases, Plaintiffs allege that a bank (this time Dexia predecessor Artesia

Banking Corporation), participated in a scheme to defraud L&H shareholders through misleading

financial statements.[3]  (*See* Compl. ¶ 1-6, *Filler v. Dexia, S.A.*, No. 04-10477 PBS (D. Mass.

Mar. 9, 2004) (hereinafter "FC"); Compl. ¶ 1-6, *Baker v. Dexia, S.A.*, No. 04-10501 PBS (D.

Mass. Mar. 11, 2004) (hereinafter "BC"); Compl. ¶ 1-7, *Stonington v. Dexia, S.A.*, No. 04-10411

PBS (D. Mass. Mar. 1, 2004) (hereinafter "SC").)

More specifically, Plaintiffs allege that Dexia engaged in several loan and other

transactions between 1997 and 1999 with L&H that were part of the scheme to defraud them.

These include the extension of a $22.9 million loan to Brussels Translation Group N.V. ("BTG")

in 1997 (BC  ¶¶ 61-63; FC ¶ 124; SC ¶ 89-91); the organization and management of a private

placement of stock for Vasco Data Securities ("Vasco") in 1999 (BC ¶¶ 64-65; FC ¶¶ 122-23;

SC ¶¶ 92-93); the extension of a $6 million loan to a company known as Radial N.V. in the third

quarter of 1998, which Radial used to fund three language development companies ("LDCs")

(BC ¶ 67; FC ¶ 126; SC ¶ 95); the extension of a $6 million loan to a company known as

Language Investment Company ("LIC") in the last quarter of 1998, which was used to fund four

additional LDCs (BC ¶ 76; FC ¶ 135; SC ¶ 104); and the extension of a $20 million line of credit

to Jo Lernout, Paul Hauspie and Nico Willaert in July 1999.  (BC ¶¶ 82; FC ¶142; SC ¶ 110.)

In December 1999, approximately six months after the last of these transactions,

negotiations between Dragon and L&H occurred, (FC ¶ 71), and Dragon agreed to merge with

L&H on March 27, 2000.  (BC ¶ 1; FC ¶ 40.)  When the merger closed on June 7, 2000, the

---

[3]        For ease of reference, we use only the name "Dexia" herein.

Bakers and Fillers received shares of L&H stock as consideration for their interests in Dragon. *There are no allegations that Dexia played any role in this acquisition, or that the Baker and Filler Plaintiffs ever spoke with anyone from Dexia prior to the closing.* In late 2000, L&H's stock price began to decline after the disclosure of accounting irregularities, and ultimately became worthless when the company declared bankruptcy. (BC ¶¶ 12-14; FC ¶¶ 3, 84; SC ¶ 62.) The Stonington Plaintiffs allege similar facts, with a sale of Dictaphone to L&H in May 2000. (*E.g.*, SC ¶ 62.) While Dexia participated in a syndicate of banks that provided financing for this acquisition, as in the Dragon deal there are no allegations that Dexia played any other role in this acquisition or that the Stonington Plaintiffs ever spoke with anyone from Dexia prior to the closing.

Based on the above allegations, the Complaints assert causes of action for violations of Section 10(b) and Rule 10b-5 (*see* BC ¶¶ 132-42; FC ¶¶ 150-58; SC ¶¶ 143-50), conspiracy to commit common law fraud (*see* BC ¶¶ 154-61; FC ¶¶ 159-65; SC ¶¶ 151-57) and aiding and abetting common law fraud. (*See* BC ¶¶ 143-47; FC ¶¶ 166-71; SC ¶¶ 158-63.) Additionally, the Baker Complaint asserts a claim for common law fraud. (*See* BC ¶¶ 148-53.)

**ARGUMENT**

## I.    LEGAL STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party

may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The standard for evaluating a

Rule 12(c) motion . . . is essentially the same as that for deciding a Rule 12(b)(6) motion."

*Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir. 2005) (citing *Rivera-Gomez v. De*

*Castro*, 843 F.2d 631, 635 (1st Cir. 1998)).

## II.    PLAINTIFFS' COMMON LAW CLAIMS SHOULD BE DISMISSED

### A.    The Baker Plaintiffs Cannot Maintain A Direct Fraud Claim Against Dexia Because Dexia Made No Representations To Them

The Baker Complaint asserts a direct claim for common law fraud.  (BC ¶¶ 148-53.)  It is

fundamental to any fraud claim that defendant must have, in fact, made a statement or

representation.  To state a claim for fraud, "plaintiff must allege that the defendant's statement

was knowingly false, material to the plaintiffs' decision, and made with the intent to deceive; and

that the plaintiffs reasonably relied on the statement and were injured as a result of that reliance."

*In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 176 (D. Mass. 2002) (citing *Doyle v.*

*Hasbro, Inc.*, 103 F.3d 186, 193 (1st Cir. 1996)); *see also Filler v. Hanvit Bank*, 247 F. Supp. 2d

at 430 (Carroll Decl. Ex. C).

The *Hanvit* court dismissed the Filler Plaintiffs' second amended complaint and the

Baker Plaintiffs' first complaint because "the complaints [did] not allege that any defendant bank

made a representation to any plaintiff or that a representation was made to any plaintiff and

attributed to any defendant."  *Filler v. Hanvit Bank*, 2003 WL 22110773, at *2 (Carroll Decl. Ex.

D).  The same is true here.  Nowhere in the Complaints do the Baker Plaintiffs allege that Dexia

was involved in the Dragon acquisition.  Nowhere in the Complaints do the Baker Plaintiffs

6

allege that they spoke or communicated with anyone at Dexia about the acquisition, or even about L&H generally. And nowhere in the Complaints do the Baker Plaintiffs allege that Dexia made any written representation or statement to them. Thus the most important element of a fraud claim is lacking in this case: Dexia is not alleged to have made any statement or representation, let alone a *mis*representation, to the Baker Plaintiffs.[4] This fraud claim should therefore be dismissed.

### B. The Baker And Filler Plaintiffs Are Collaterally Estopped From Bringing Their Aiding And Abetting Fraud Claims Against Dexia

In *Hanvit*, the Baker and Filler Plaintiffs litigated and lost the question of whether a third-party bank that allegedly helped L&H issue false financial statements can be liable for aiding and abetting L&H's fraud. They are therefore collaterally estopped from re-litigating the issue here.[5] Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).[6] "Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.'" *Id.* at

---

[4]    Because all of the other elements (materiality, intent to deceive, reliance and injury) follow from the existence of a statement or representation, none of them is fulfilled either.

[5]    The Stonington Plaintiffs also asserted aiding and abetting claims in the *Hanvit* case. Like the Baker and Filler aiding and abetting claims, these claims were dismissed. *See* n.2, *supra*. The court, however, did not have to address the deficiencies in Stonington's aiding and abetting claims because all of their claims against the banks were dismissed *inter alia* for lack of diversity jurisdiction. *Id.*

[6]    The federal law of collateral estoppel applies. *See, e.g., Johnson v. SCA Disposal Servs., Inc.,* 931 F.2d 970, 974 (1st Cir. 1991) ("[W]e now adopt the rule that, in diversity cases, federal law governs the preclusive effect of prior federal judgments.").

328 (quoting *Blonder-Tongue Labs. v. Univ. of Illinois*, 402 U.S. 313, 329 (1971) (internal quotations omitted). Therefore, a defendant may use collateral estoppel defensively against a plaintiff who "litigated the same claim in the prior suit." *Parklane*, 439 U.S. at 328 (quoting *Blonder-Tongue*, 402 U.S. at 329).

A plaintiff is collaterally estopped from advancing a claim where (1) the proceedings involved the same issue of law or fact; (2) the parties actually litigated the issue; (3) the judgment was final and binding; and (4) its resolution of that issue of law or fact was essential to its judgment. *See Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978 (1st Cir. 1995). It is unnecessary for both parties to be identical or in privity with both of the prior parties so long as the litigant to be bound was a prior party or in privity with one. *Parklane*, 439 U.S. at 327.

The present claims against Dexia are part of the same alleged scheme—to help L&H misrepresent its financial condition—as that alleged in the *Hanvit* actions. As in the present Complaints, those actions claimed that the banks "assisted L&H Belgium in a scheme to defraud [L&H] investors," including non-market sellers of their companies to L&H for stock. *Hanvit*, 339 F. Supp. 2d at 556 (Carroll Decl. Ex. E); Second Am. Compl., ¶ 14-15, *Filler v. Hanvit Bank*, 01-CV-9510 (MGC) (S.D.N.Y. Mar. 31, 2003) (Carroll Decl. Ex. B). As alleged in *Hanvit*, the Korean banks played a strikingly similar role to Dexia's in L&H's scheme to defraud investors. As the court put it, several transactions with the Korean banks, "according to plaintiffs, enabled L&H Korea to report nonexistent revenue in its financial statements, which were incorporated into L&H Belgium's financial statements." *Hanvit*, 339 F. Supp. 2d at 556 (Carroll Decl. Ex. E). Similarly, Plaintiffs here alleged that loans by Dexia to LIC and Radial enabled L&H Belgium to report non-existent revenues in its financial statements. (BC ¶¶ 66-67, 76; FC ¶¶ 125-26, 135.) In *Hanvit*, the Korean banks allegedly enabled L&H to recognize

revenue by helping L&H to conceal liabilities associated with third party software licensee companies. *Id*. at 559. In this case, Dexia is alleged to have concealed guarantees, the disclosure of which would assertedly have prevented L&H from recognizing as revenue the money paid to it by the LDCs, also third-party software licensees. (BC ¶¶ 7-8; FC ¶¶ 7-8.) There is thus no material difference in the roles the Korean banks and Dexia are alleged to have played in the L&H's scheme.

These roles are not enough to amount to aiding and abetting or conspiracy to commit fraud as a matter of law. As the *Hanvit* court put it,

> Plaintiffs were not purchasers of L & H Belgium shares on the open market. Rather, they received their shares through a negotiated transaction, the Dragon merger. In consummating the merger, the complaints allege that plaintiffs relied on the public documents described above, the integrity of the market price of L & H Belgium stock, and specific oral and written representations by L & H Belgium and by KPMG. *Plaintiffs do not allege that defendants were actually aware of the representations made to plaintiffs by L & H Belgium and KPMG.* While the Baker plaintiffs allege that defendants were aware of the Dragon merger and "knew or recklessly disregarded" the fact that these plaintiffs would be relying on L & H Belgium's false information, these allegations state constructive, not actual knowledge.

339 F. Supp. 2d at 559-60 (emphasis added) (Carroll Decl. Ex. E). Here, in none of the Complaints do Plaintiffs allege that Dexia was aware of the Dragon or Dictaphone acquisitions at the time it engaged in the transactions complained of, or that Dexia was aware of the misrepresentations being made to Plaintiffs by L&H or its advisors in connection with those deals.

The *Hanvit* court pointed out that without awareness of the acquisitions, the banks could not have aided and abetted L&H in defrauding the Baker and Filler Plaintiffs in the course of the Dragon acquisition:

> In other words, the underlying fraud of which defendants were allegedly aware and which they assisted is not the defrauding of these plaintiffs during the merger,

but the defrauding of any investor who would have relied on L & H Belgium's financial statements. *Such a broad definition of the underlying fraud is inconsistent with the other requirements of establishing aiding and abetting liability, which seek to ensure that entities already one step removed from the alleged wrongful acts are not subject to suit for unforeseeable harms in which they had no active role and from which they received no benefit.* Without any allegation in the complaints which supports an inference that defendants knew that their actions would affect a non-market transaction, there is no justification for holding defendants liable for plaintiffs' injuries.

*Id.* at 560 (emphasis added).

These conclusions bind the Baker and Filler Plaintiffs in this action. As shown above, the issue is the same. The specific legal question is whether the conduct alleged, taken as true, states a claim for aiding and abetting or conspiracy to defraud the sellers of Dragon to L&H for stock in a non-market transaction. The answer, as the *Hanvit* court held, is no. *Id.*[7]

## C. Dexia Did Not Aid And Abet L&H's Fraud Upon Plaintiffs As A Matter Of Law

Even if collateral estoppel were not applicable to bind the Baker and Filler Plaintiffs, their aiding and abetting claims fail as a matter of law in any case, as does that of the Stonington Plaintiffs. In the *Hanvit* cases, described *supra*, the court stated that "[i]n order to plead the elements of aiding and abetting fraud under New York law, plaintiffs must allege with particularity facts showing (1) the existence of a fraud; (2) defendants' knowledge of the fraud;

---

[7]    The other elements necessary for application of collateral estoppel are also met. Both the Filler and Baker Plaintiffs had repeated opportunities to amend and then defend their complaints in the *Hanvit* case, so the issue was fully litigated. *Hanvit*, 339 F. Supp. 2d at 556-57; *see also, e.g., Employees Own Fed. Credit Union v. City of Defiance*, 752 F.2d 243, 245 (6th Cir. 1985) (finding issue fully litigated where plaintiffs voluntarily dismissed complaint after the trial court indicated it would dismiss with leave to amend). All of their efforts were unsuccessful, and the final result was a dismissal from which the Baker and Filler Plaintiffs took an unsuccessful appeal. *Hanvit*, 339 F. Supp. 2d. at 561, *aff'd*, 156 F. App'x 413 (2d Cir. 2005). Lastly, the question of whether the banks' conduct rose to the level of aiding and abetting or conspiracy to defraud was the central issue on which the judgment was based. *Id.* at 557-58. Accordingly, the Baker and Filler Plaintiffs are collaterally estopped from re-litigating their common law aiding and abetting claims, which should therefore be dismissed.

and (3) that the defendant provided substantial assistance to advance the fraud's commission."
*Filler v. Hanvit Bank*, 247 F. Supp. 2d 425, 431 (S.D.N.Y. 2003) (Carroll Decl. Ex. C); *see also Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 90-91 (D. Mass. 2002) (Saris, J.).  Like other fraud claims, "[a] claim of aiding and abetting fraud must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Bamberg*, 236 F. Supp. 2d at 91 (citing *ABF Capital Management v. Askin Capital Management*, 957 F. Supp. 1308, 1328 (S.D.N.Y. 1997)); *see also Hanvit*, 339 F. Supp. 2d at 557 ("Claims of aiding and abetting common-law fraud are subject to Fed. R. Civ. P. 9(b).") (Carroll Decl. Ex. E).

As to knowledge, a plaintiff must allege facts which show that the defendant had actual knowledge of the underlying fraud.  *Buckley v. Goldman, Sachs & Co.*, No. Civ. A. 02-CV-11497 RGS, 2005 WL 1206865, at *8 n.21 (D. Mass. May 20, 2005); *see also Hanvit*, 339 F. Supp. 2d at 557 ("Constructive knowledge of the primary fraud—the possession of information which would cause a person exercising reasonable care and diligence to become aware of the fraud—is not sufficient to support an aiding and abetting claim.") (Carroll Decl. Ex. E).  Put another way, aiders and abettors cannot be held liable "when the fraud committed is different from the one they may have believed they were participating in."  *CPC Int'l Inc. v. McKesson Corp.*, 507 N.Y.S.2d 984, 989 (N.Y. App. Div. 1986), rev'd on other grounds by *CPC Int'l Inc. v. McKesson Corp.*, 514 N.E.2d 116, (N.Y. 1987).  Moreover, allegations of scienter must be pled in more detail for aiders and abettors than for primary tortfeasors.  *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 507-08 (S.D.N.Y. 2001) ("[the] scienter requirement scales upward when activity is more remote.").

In addition to alleging actual knowledge regarding the fraud (here, L&H's alleged scheme to acquire Dragon and Dictaphone using false financial statements), Plaintiffs must show

11

that their losses were the reasonably foreseeable result of Dexia's actions. As the *Hanvit* court stated,

> 'the complaint must allege that the acts of the aider and abettor proximately caused the harm to the [plaintiff] on which the primary liability is predicated.' 'Allegations of a 'but for' causal relationship are insufficient.' Aider and abettor liability will not attach where the injury was not a direct or reasonably foreseeable result of the defendant's conduct.

*Filler v. Hanvit Bank*, 247 F. Supp. 2d at 431 (quoting *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985)) (citations omitted) (Carroll Decl. Ex. C); *cf. Batchelder v. N. Fire Lites, Inc.*, 630 F. Supp. 1115, 1119 (D.N.H. 1986) (requiring that the actions of an aider and abettor be the proximate cause of the plaintiff's loss).

Here, details sufficient under Rule 9(b) to tie Dexia to L&H's fraud with respect to the Plaintiffs simply have not been pled. The transactions involving Dexia all occurred long before L&H's acquisitions of Dragon and Dictaphone. There is no allegation (nor could there be) that Dexia *knew* at the time of these transactions that L&H was even planning to acquire these companies, almost six months later, let alone through stock-for-stock purchases. Nor is there any allegation that Dexia made any misrepresentations in connection with the deals. As the *Hanvit* court put it, the fraud Plaintiffs allege is not, as a matter of law, sufficiently connected with Dexia's conduct. 339 F. Supp. 2d at 560 ("Without any allegation in the complaints which supports an inference that defendants knew that their actions would affect a non-market transaction, there is no justification for holding defendants liable for plaintiffs' injuries.") (Carroll Decl. Ex. E).

Taking Plaintiffs' allegations as true, Dexia may have aided and abetted L&H's fraud upon market investors through transactions that L&H used to inflate its financial statements. But the transactions could not foreseeably cause loss to parties engaged with L&H in non-market

transactions, for which negotiations had not even begun, companies had not been identified, and for which the form of consideration to be paid was not yet determined.

Accordingly, the Complaints do not sufficiently allege either Dexia's actual knowledge of L&H's plan to defraud Plaintiffs, or that Plaintiffs' injuries were a direct and foreseeable result of Dexia's actions.  For these reasons, the common law aiding and abetting claims should be dismissed.

### D.    Dexia Did Not Conspire To Defraud Plaintiffs Because It Knew Nothing Of L&H's Goal Of Acquiring Dictaphone Or Dragon

For the same reasons that Dexia did not aid and abet L&H's fraudulent acquisitions of Dictaphone and Dragon, it cannot have conspired to defraud Plaintiffs.  For conspiracy, a plaintiff must allege that "the defendant and the other have an agreement to perform the act or achieve the particular result" and "that the defendant's own conduct must be tortious."  *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981); *Hanvit*, 339 F. Supp. 2d at 560 ("Conspiracy to commit fraud requires: '(1) an agreement among two or more parties, (2) a common objective, (3) acts in furtherance of the objective and (4) knowledge.'") (quoting *Diamond State Ins. Co. v. Worldwide Weather Trading LLC*, 02 Civ. 2900, 2002 WL 31819217, at *4 (S.D.N.Y. Dec. 16, 2002)) (Carroll Decl. Ex. E).

A defendant can only be part of, and liable for, a conspiracy where he or she knows the objective.  *See Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 340 B.R. 1, 65 (Bankr. E.D.N.Y. 2006) (dismissing claim of conspiracy to commit fraud for failure to demonstrate actual knowledge of fraudulent scheme).  There are no allegations Dexia knew *anything* about a potential acquisition of Dictaphone or Dragon at the time it engaged in the loan transactions, which took place long before the acquisitions.  The Complaints do not allege that Dexia knew in advance that these particular companies would be purchased, and for stock, or that Dexia was

13

aware of any misrepresentations being made by L&H or its advisors during the deals.  It is therefore impossible (but in any event not alleged, let alone with the specificity required by Rule 9(b)) that Dexia had a "conscious agreement" with L&H—when it made the loans in 1998 and 1999—to defraud Plaintiffs.  *Hanvit*, 339 F. Supp. 2d at 560 (Carroll Decl. Ex. E).  The conspiracy claims of all the Plaintiffs should therefore be dismissed.  *See, e.g.*, *In re Monahan Ford Corp.*, 340 B.R. at 65.

## CONCLUSION

For each and all of the foregoing reasons, the Baker, Filler and Stonington common law claims should be dismissed with prejudice.

Dated: Boston, Massachusetts
      June 22, 2006

Respectfully submitted,

  /s/  Breton Leone-Quick
  Peter M. Saparoff (BBO#441740)
  Breton Leone-Quick (BBO#655571)

MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO
One Financial Center
Boston, MA 02111
Tel:  (617) 542-6000
Fax:  (617) 542-2241

CLIFFORD CHANCE US LLP
  James B. Weidner
  Thomas Teige Carroll
31 West 52nd Street
New York, NY 10019
Tel:     (212) 878-8000
Fax:     (212) 878-8375

*Counsel for Dexia Bank Belgium, S.A.*

### Certificate of Service

I, Breton Leone-Quick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 22, 2006.

    /s/  Breton Leone-Quick                          Dated:  June 22, 2006