# EXHIBIT A

Case 1:04-cv-10411-PBS   Document 137-2   Filed 07/14/2006   Page 1 of 15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>Defendants. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>Defendants. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>Plaintiffs,<br><br>v. | No.: 04-CV-10477 (PBS) |

| | |
|---|---|
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>Defendants. | |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>Defendants. | No.: 04-CV-10501 (PBS) |

**PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS
AND SUPPLEMENTAL INTERROGATORIES TO
<u>DEFENDANT DEXIA BANK BELGIUM</u>**

Pursuant to Fed. R. Civ. P. 26, 33 and 36, the Local Rules of the District of Massachusetts, Plaintiffs in the above-captioned cases ("Plaintiffs") hereby request that Defendant Dexia Bank Belgium respond to these Requests for Admissions and Supplemental Interrogatories within thirty (30) days after service of these requests.

1. **Instructions**:

    A.    <u>Answers</u>: In responding to these requests, Defendant shall comply with the requirements of Fed. R. Civ. P. 36. In denying any matter set forth in these Requests, Defendant shall fairly meet the substance of the requested admission. If Defendant is required to qualify an answer or deny only part of a matter for which an admission is requested, Defendant shall specify

so much of the matter as is true and qualify or deny the remainder. Defendant shall not give lack of information or knowledge as a reason for failing to admit or deny any matter set forth in these Requests unless Defendant states that it has made a reasonable inquiry and that the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny the matter.

    B. <u>Expenses for Failure to Admit</u>: Defendant is hereby notified that if it denies any matter stated in these Requests and Plaintiffs subsequently prove the truth of such matter, Plaintiffs will request that the Court enter an order pursuant to Fed. R. Civ. P. 37(c) requiring Defendant to pay the reasonable expenses, including attorney's fees, incurred by Plaintiffs in making such proof.

    C. <u>Supplementation of Answers</u>: In the event that Defendant obtains information that renders the answers to these Requests incomplete or inaccurate, Defendant shall promptly supplement and amend its answers.

  2. **Definitions**: The following definitions apply to the discovery requests set forth herein:

> **"Class Period"** means the Class Period defined in the Third Amended Class Action Complaint in this action, August 19, 1998 through November 8, 2000.
>
> **"Dexia"** means Dexia Bank Belgium S.A. (formerly known as Artesia Banking Corporation, S.A.), including any predecessors (including Artesia Banking Corporation, S.A., Bacob Bank C.V. and Banque Paribas Belgium), successors, branches, divisions, subsidiaries, officers, directors, trustees, partners, members, employees, servants, and agents thereof.
>
> **"Communication"** means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).
>
> **"Concerning"** means referring to, describing, evidencing, or constituting.

3

**"Defendant"** means Dexia.

**"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term. Fed. R. Civ. P. 34(a) defines "documents" as including writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form.[1]

**"Financial statements"** includes, but is not limited to: balance sheets; statements of the results of operations; statements of cash flow; statements of income, earnings, retained earnings or sources and applications of funds; cash flow projections; notes to each of such statements; and any other notes which pertain to past or present financial condition, whether any of the foregoing is audited or unaudited, whether final, interim or pro forma, complete or partial, consolidated, monthly or otherwise.

**"LDCs"** means the Language Development Companies with which L&H entered licensing agreements or other agreements calling for L&H software or intellectual property to be adopted for use with additional languages (including without limitation the Slavic Language Development Company, the Farsi Language Development Company, the Bahassa Language Development Company, the Greek Language Development Company, the Hungarian Language Development Company, the Polish Language Development Company, and the Czech Language Development Company) and any branches, divisions, subsidiaries, officers, directors, trustees, partners, members, employees, servants, and agents thereof.

**"LIC"** means Language Investment Company N.V., including any predecessors, successors, branches, divisions, subsidiaries, officers, directors, trustees, partners, members, employees, servants, and agents thereof.

**"L&H"** means Lernout & Hauspie Speech Products, N.V. and includes any branches, divisions, subsidiaries thereof (including, without limitation, L&H Holdings, USA, Inc., Kurzweil, L&H Korea and L&H Asia Pte), and the current and former officers, directors, employees, servants, and agents of the foregoing (including, without limitation, Jo Lernout, Pol Hauspie, Carl Dammekens, Nico Willaert, and Gaston Bastiaens).

**"Person"** means any natural person or any business, legal, or governmental entity or association.

---

[1] Thus, "document" shall include all electronic data.

"**Radial**" means Radial Belgium N.V., including any predecessors, successors, branches, divisions, subsidiaries, officers, directors, trustees, partners, members, employees, servants, and agents thereof.

"**SEC**" means the United States Securities and Exchange Commission.

"**U.S. GAAP**" means the Generally Accepted Accounting Principles that apply to publically traded companies in the Unites States.

"**You**" and "**Your**" refer to Dexia, including all of its affiliates, subsidiaries, employees, agents, subcontractors and all other persons acting or purporting to act on its behalf.

3. **Rules of Construction**. The following rules of construction apply to the discovery requests set forth herein:

**All/Each.** The terms "all" and "each" shall be construed as all and each.

**And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

**Number.** The use of the singular form of any word includes the plural and vice versa.

**Dates.** The use of dates in these Requests to Admit is intended to signify that events took place on or about the date specified. You should not deny any Request to Admit if the identified event actually took place on or about the date specified in the Request to Admit.

4. **Requests for Admission**:

Request No. 1. Defendant Dexia Bank Belgium is the corporate successor to Artesia Banking Corporation S.A., including Artesia Banking Corporation S.A.'s predecessor banks, Banque Paribas Belgium and Bacob Bank C.V.

Request No. 2. Defendant Dexia Bank Belgium assumed all of the liabilities of Artesia Banking Corporation S.A., including all the liabilities of Artesia Banking Corporation S.A.'s predecessor banks, Banque Paribas Belgium and Bacob Bank C.V.

Request No. 3. During the Class Period, L&H common stock traded on the Nasdaq and Easdaq exchanges.

Request No. 4.  During the Class Period, L&H's common stock traded in an efficient market.

Request No. 5.  During the Class Period, L&H options traded on the Chicago Board of Trade Options Exchange.

Request No. 6.  During the Class Period, L&H options traded in an efficient market.

Request No. 7.  Admit that:

(a) L&H publicly reported its financial results on a quarterly and annual basis during the period between January 1, 1998 and December 31, 2000; and

(b) Dexia knew this during the Class Period.

Request No. 8.  Admit that:

(a) L&H represented in its SEC filings during the period between January 1, 1998 and December 31, 2000 that it prepared its financial statements in accordance with U.S. GAAP;

(b) Dexia was aware of this representation during the Class Period; and

(c) Dexia knew during the Class Period that L&H was required to file its financial statements in accordance with U.S.GAAP.

Request No. 9.  L&H's financial statements for the third quarter of 1998 were materially false and misleading.

Request No. 10.  L&H's financial statements for the fourth quarter of 1998 were materially false and misleading.

Request No. 11.  L&H's year-end financial statements for 1998 were materially false and misleading.

Request No. 12.  Each of L&H's quarterly financial statements for 1999 were materially false and misleading.

Request No. 13.  L&H's year-end financial statements for 1999 were materially false and misleading.

Request No. 14. L&H's financial statements for the first and second quarter of 2000 were materially false and misleading.

Request No. 15.  Admit the following with respect to each of the press releases issued by L&H during the Class Period in which L&H announced either quarterly or annual financial results:

    a.    Each of those press releases materially overstated L&H's revenue.

    b.    Each of those press releases materially overstated L&H's net income.

    c.    During the Class Period, Dexia knew that each of the those press releases materially overstated L&H's revenue.

    d.    During the Class Period, Dexia knew that each of the those press releases materially overstated L&H's net income.

Request No. 16.  Admit the following with respect to each Artesia Securities analyst report issued during the Class Period which republished L&H's quarterly or annual financial results:

    a.    Each of those analyst reports materially overstated L&H's revenue

    b.    Each of those analyst reports materially overstated L&H's net income.

    c.    Dexia authorized the dissemination of each of those analyst reports.

    d.    At or about the time they were issued, Dexia knew that each of the those analyst reports materially overstated L&H's revenue.

    e.    At or about the time they were issued, Dexia knew that each of the those analyst reports materially overstated L&H's net income.

    f.    Dexia's misrepresentations in those analyst reports concerning L&H's financial results were a proximate cause of the losses suffered by the members of the Class who purchased L&H securities after the date of those misrepresentations.

Request No. 17.  Dexia acted with scienter in violating Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with L&H.

Request No. 18.  There were insufficient facts publicly available prior to August 19, 2001 to show that Dexia acted with the required state of mind to support a valid claim that Dexia violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with L&H.

Request No. 19.  There were insufficient facts publicly available prior to August 19, 2001

to support Plaintiffs' claim that Dexia violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with L&H.

Request No. 20.  Plaintiffs could not reasonably have discovered sufficient facts prior to August 19, 2001 to support Plaintiffs' claim that Dexia violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with L&H.

Request No. 21.  Plaintiffs could not reasonably have discovered sufficient facts prior to August 19, 2001 to support a valid claim that Dexia acted with the required state of mind to support a claim that Dexia violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with L&H.

Request No. 22.  In November 2000, L&H's Audit Committee issued a report regarding an investigation of accounting irregularities at L&H, which report made no mention of Dexia.

Request No. 23.  Dexia loaned approximately 215 million Belgian Francs (equivalent to more than $5 million) to Radial in 1998 with knowledge that Radial was a start up company without sufficient assets to secure a loan for that amount.

Request No. 24.  Dexia's initial loan to Radial was not made in accordance with Dexia's applicable loan procedures.

Request No. 25.  Dexia loaned money to Radial in 1998 with knowledge that Radial was going to use that money to fund recently created LDCs that would then use those funds to pay fees to L&H.

Request No. 26.  Dexia loaned money to Radial in 1998 with knowledge that L&H would recognize revenue on the fees it received from the LDCs that were funded by Dexia's loan to Radial.

Request No. 27.  Dexia knew that L&H needed to complete the Radial loan on short notice by the end of September 1998 so that it could recognize revenue on the proceeds of that loan on its quarterly financial statements for the third quarter of 1998.

Request No. 28.  In 1999, Dexia approved the extension of the loan to Radial on the condition that the loan be guaranteed by the principals of L&H, Jo Lernout, Pol Hauspie and Nico Willaert.

Request No. 29.  On the loan to Radial, Dexia intended the credit default swaps to serve as substitutes for the guarantees it originally requested.

Request No. 30.  At the time Dexia loaned money to Radial, Dexia was aware that L&H could not recognize revenue on any fees paid with the proceeds of the Radial loan if L&H had

any direct or indirect role in securing the Radial loan.

Request No. 31.   At the time Dexia loaned money to Radial, Dexia was informed that Lernout, Hauspie and Willaert refused to sign any guarantee for the Radial loan if such guarantee were disclosed in the letter of credit because they did not wish to disclose their involvement in the Radial loan to the U.S. Securities and Exchange Commission.

Request No. 32.   Dexia was aware at the time it loaned money to Radial that if Lernout, Hasupie and Willaert provided any form of surety for the Radial loan then L&H would not be able to recognize revenue under U.S. GAAP on the fees it received from the LDC's that were funded by the Radial loan.

Request No. 33.   In 1998, L&H improperly recognized revenue on fees it received from LDCs financed by Dexia's loan to Radial.

Request No. 34.   Dexia loaned approximately 220 million Belgian Francs (the equivalent to more than $5 million) to LIC in 1998 with knowledge that LIC had insufficient assets to secure a loan for that amount.

Request No. 35.   Dexia loaned money to LIC in 1998 with knowledge that LIC was going to use that money to fund recently created LDCs that would then use those same funds to pay fees to L&H.

Request No. 36.   Dexia loaned money to LIC in 1998 with knowledge that L&H would recognize revenue on the fees it received from the LDCs that were funded by Dexia's loan to LIC.

Request No. 37.   Dexia was informed that L&H needed to complete the LIC loan on short notice by the end of December, 1998 so that L&H could recognize revenue on the proceeds of that loan on its quarterly financial statements for the fourth quarter of 1998.

Request No. 38.   Dexia approved the loan to LIC in 1998 on the condition that the loan be guaranteed by L&H.

Request No. 39.   Dexia approved the extension of loan to LIC in 1999 on the condition that the loan be guaranteed by Messrs. Lernout, Hauspie and Willaert.

Request No. 40.   On the loan to LIC, Dexia intended the Credit default swaps to serve as substitutes for the guarantees it originally requested.

Request No. 41.   At the time Dexia loaned money to LIC, Dexia was aware that L&H could not recognize revenue under U.S. GAAP on any fees paid with the proceeds of the Radial loan if L&H had any direct or indirect role in securing the LIC loan.

Request No. 42. At the time Dexia loaned money to LIC, Dexia was informed that Lernout, Hauspie and Willaert refused to sign any guarantee for the LIC loan if such guarantee were disclosed in the letter of credit because they did not wish to disclose their involvement in the LIC loan to the U.S. Securities and Exchange Commission.

Request No. 43. Dexia was aware at the time it loaned money to LIC that Lernout, Hasupie and Willaert did not want to sign personal guarantees for this loan because they did not want to have to disclose such guarantees in L&H's financial statements.

Request No. 44. Dexia was aware at the time it loaned money to LIC that if Lernout, Hasupie and Willaert provided any form of surety for the LIC loan then L&H would not be able to recognize revenue under U.S. GAAP on the fees it received from the LDC's that were funded by the LIC loan.

Request No. 45. In 1998, L&H improperly recognized revenue in violation of U.S. GAAP on fees it received from LDCs financed by Dexia's loan to LIC.

Request No. 46. Dexia suggested the use of credit default swaps on the Radial and LIC loans so that Lernout, Hauspie and Willaert would not have to disclose the surety they provided for the Radial and LIC loans.

Request No. 47. Dexia's in-house counsel, Bernard Mommens, advised that the credit default swaps for the Radial and LIC loans had to be disclosed in the letters of credit for those loans.

Request No. 48. The letters of credit for the original loan to Radial did not disclose the credit default swap issued in connection with that loan.

Request No. 49. The letter of credit for the September 1999 extension of the Radial loan did not disclose the credit default swap issued in connection with that loan.

Request No. 50. The letters of credit for the original loan to LIC did not disclose the credit default swap issued in connection with that loan.

Request No. 51. The letter of credit for the September 1999 extension of the LIC loan did not disclose the credit default swap issued in connection with that loan.

Request No. 52. Dexia did not pay the any consideration for the credit default swaps issued in connection with the Radial loan.

Request No. 53. Dexia did not pay the full consideration for the credit default swap issued in connection with the LIC loan.

Request No. 54.   Dexia loaned money equivalent to approximately $20 million to Jo Lernout, Pol Hauspie and Nico Willaert in or about June 1999 (the "$20 million Dollar Loan").

Request No. 55.   Admit the following with regard to the $20 Million Loan:

(a) Dexia originally contemplated a loan to the Language Development Fund guaranteed by a credit default swap by Messrs. Lernout, Hauspie and Willaert; and

(b) Dexia converted that to a loan to the individuals because it could not obtain a guarantee and had lost comfort in the use of credit default swaps.

Request No. 56.   Dexia knew that the purpose of the $20 Million Loan was to fund recently created LDCs that would then use those same funds to pay fees to L&H.

Request No. 57.   Dexia made the $20 Million Dollar Loan with knowledge that L&H would recognize revenue on the fees it received from the LDCs that were funded by Dexia's loan to Lernout, Hauspie and Willaert.

Request No. 58.   At the time Dexia granted the $20 Million Loan, Dexia was aware that L&H could not recognize revenue on any fees paid with the proceeds of that loan if L&H had any direct or indirect role in securing the financing of the LDCs that used those proceeds to pay L&H.

Request No. 59.   At the time Dexia granted the $20 Million Loan, Dexia was aware that L&H could not recognize revenue on any fees paid with the proceeds of that loan if Messrs. Lernout, Hauspie or Willaert had any role in securing the financing of the LDCs that used those proceeds to pay L&H.

Request No. 60.   In 1999, L&H improperly recognized revenue in violation of U.S. GAAP on fees it received from LDCs financed by Dexia's loan to Jo Lernout, Pol Hauspie and Nico Willaert.

Request No. 61.   Dexia acquired and sold L&H securities for its own account during the same time period that Artesia Securities issued buy recommendations for L&H stock.

Request No. 62.   Dexia acquired and sold L&H securities for its own account during the same time period that it lent money to Radial, LIC and Messrs. Lernout, Hauspie and Willaert.

**Supplemental Interrogatories**:

I       Supplemental Interrogatory No. 1 - If you deny Request No. 18, describe in detail the basis for your denial and identify each fact that Plaintiffs could reasonably have discovered prior to August 19, 2001 to support a valid claim that Dexia acted with the required state of mind to

11

support a claim that Dexia violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with L&H, and the source(s) of such fact(s).

<u>Supplemental Interrogatory No. 2</u> - If you deny Request No. 19, describe in detail the basis for your denial and identify each fact that was publically available prior to August 19, 2001 to support Plaintiffs' claim that Dexia violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with L&H, and the source(s) of such fact(s).

<u>Supplemental Interrogatory No. 3</u> - If you deny Request No. 20, describe in detail the basis for your denial and identify each fact that Plaintiffs could reasonably have discovered prior to August 19, 2001 to support Plaintiffs' claim that Dexia violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with L&H, and the way in which each such fact was discoverable prior to August 19, 2001, and the source(s) of such fact(s).

<u>Supplemental Interrogatory No. 4</u> - If you deny Request No. 21, describe in detail the basis for your denial and identify each fact that was publicly available prior to August 19, 2001 to show that Dexia acted with the required state of mind to support a valid claim that Dexia violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in connection with L&H, and the source(s) of such fact(s).

Dated: May 17, 2006

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
Glen DeValerio, BBO # 122010
Patrick T. Egan, BBO # 637477
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

**SHALOV STONE & BONNER LLP**

*Patrick L. Rocco/ps*
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340

CAULEY BOWMAN CARNEY & WILLIAMS PLLC
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500

*Co-lead Counsel to Lead Class*
*Plaintiffs Hans A. Quaak, Karl Leibinger and*
*Attilio Po*

**LOONEY & GROSSMAN** LLP
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2800

**BERNSTEIN LITOWITZ BERGER &**
**GROSSMANN** LLP
Max W. Berger
Steven B. Singer
Avi Josefson
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400

*Counsel to Plaintiffs Stonington Partners, Inc.,*
*Stonington Capital Appreciation 1994 Fund L.P.*
*and Stonington Holdings L.L.C.*

**GREGORY P. JOSEPH LAW OFFICES** LLC
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
Third Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 407-1200

**KOTIN, CRABTREE & STRONG**
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone: (617) 227-7031

*Counsel to Plaintiffs Gary B. Filler and Lawrence*
*Perlman, Trustees of the TRA Rrights Trust*

13

**PARTRIDGE, ANKNER & HORSTMAN LLP**
/s/ Terrence K. Ankner
Terrence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999

**BOIES SCHILLER & FLEXNER**
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida 32801
Telephone: (407) 425-7118

**REED SMITH LLP**
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone: (215) 851-8100

***Counsel to Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBbaker LLC.***