# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br>    Plaintiffs,<br>        v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.:  04-CV-10411 (PBS) |

**STONINGTON PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEXIA BANK BELGIUM'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 4

I.      PLAINTIFFS HAVE SUFFICIENTLY PLED AIDING AND ABETTING FRAUD........... 4

      A.     This Court's Prior Decisions in Related Actions  Dispose of Dexia's Assertion that Plaintiffs' Aiding and Abetting Claims Fail as a Matter of Law. ................................................................................................................. 4

      B.     Dexia Has Conceded that the Allegations State Claims Against It for Aiding and Abetting the Fraudulent L&H Scheme. ........................................................... 6

      C.     Dexia's Assertion That Plaintiffs Have Failed To Plead That Dexia Proximately Caused Plaintiffs' Injuries Is Baseless. .................................................... 7

            1.     Foreseeability Is a Question for the Jury ....................................................... 7

            2.     A Defendant Need Not Foresee the Precise Manner of Injury in Order to Be Liable. .......................................................................................... 8

            3.     Plaintiffs Have Alleged Facts Sufficient To Show That  Dexia Could Reasonably Foresee That L&H Investors in Negotiated, Non-Market Transactions Would be Injured. ....................................................... 9

            4.     The Evidence Shows That Dexia Knew of L&H's Intention To Defraud the Owners of Dictaphone and Dragon in Stock-for-Stock Transactions. .............................................................................................. 10

            5.     The Cases on Which Dexia Relies Do Not Support Its Argument ................ 13

II.     PLAINTIFFS HAVE SUFFICIENTLY PLED CONSPIRACY TO DEFRAUD................. 17

CONCLUSION...................................................................................................................... 19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AUSA Life Insurance Co. v. Ernst and Young*,
206 F.3d 202 (2d Cir. 2000)................................................................7

*Bamberg v. SG Cowen*,
236 F.Supp.2d 79 (D. Mass. 2002) ......................................................5

*Bradley v. City of Lynn*,
403 F.Supp.2d 161(D. Mass. 2005) ....................................................10

*Buckley v. Goldman, Sachs & Co.*,
No. 02-CV-11497, 2005 WL 1206865 (D. Mass. May 20, 2005).............16

*Canty v. Old Rochester Reg'l Sch. Dist.*,
54 F. Supp.2d 66, 68  (D. Mass. 1999) ................................................4

*Coyne v. City of Somerville*,
972 F.2d 440 (1st Cir. 1992)..............................................................10

*Dale v. Banque SCS Alliance S.A.*,
No 02-CV-3592, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005)................8

*Filler v. Hanvit Bank*,
247 F.Supp.2d 425 (S.D.N.Y. 2003) .............................................13, 14

*Filler v. Hanvit Bank*,
339 F.Supp.2d 553 (S.D.N.Y. 2004)............................................3, 13, 14

*Garita Hotel Ltd. P'ship v. Ponce Federal Bank, F.S.B.*,
958 F.2d 15 (1st Cir. 1992)................................................................10

*In re Gas Reclamation, Inc. Sec. Litig.*,
659 F.Supp. 493 (S.D.N.Y. 1987)........................................................6

*Jorgensen v. Massachusetts Port Authority*,
905 F.2d 515 (1st Cir. 1990)...........................................................2, 8

*In re Lernout & Hauspie Sec. Litigation*,
236 F.Supp.2d 161 (D. Mass. 2003) .................................................1, 5

*Maruho v. Miles*,
13 F.3d 6 (1st Cir. 1993).................................................................17

*Miranda v. Ponce Fed. Bank*,
    948 F.2d 41 (1st Cir. 1991)........................................................................4

*Moghaddam v. Dunkin' Donuts, Inc.*,
295 F. Supp.2d 136 (D. Mass. 2003) ...............................................................4

*In re Monahan Ford Corp.*,
    340 B.R. 1 (U.S. Bankr. E.D.N.Y. 2006)....................................................17

*NFS Services Inc. v. Chemical Bank*,
    No. 89 Civ. 585 (LLS), 1990 U.S.Dist. LEXIS 12668 (S.D.N.Y. Sept. 24, 1990) .......6

*Primavera Familienstifung v. Askin*,
    130 F.Supp.2d 450 (S.D.N.Y. 2001)......................................................3, 16

*Quaak v. Dexia, S.A.*,
    357 F.Supp.2d 330 (D. Mass. 2005) ............................................1, 5, 6, 13

*Sebago, Inc. v. Beazer East, Inc.*,
    18 F.Supp.2d 70 (D. Mass. 1998) ..............................................................7

*Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.*,
    No. 03-11465-DPW, 2006 U.S.Dist. LEXIS 13683 (D. Mass. Mar. 26, 2006) ....10, 11

### STATE CASES

*Bedard v. La Bier*,
    20 Misc.2d 614, 194 N.Y.S.2d 216 (Sup. Ct. N.Y. County 1959) .............................18

*Bigbee v. Pacific Telephone and Telegraph Co.*,
    665 P.2d 947 (Cal. 1983) ........................................................................8

*CPC Int'l, Inc. v. McKesson Corp.*,
    507 N.Y.S.2d 984 (1st Dep't 1986) ....................................................3, 15

*CPC Int'l Inc. v. McKesson Corp.*,
    514 N.E.2d 116 (N.Y. 1987).........................................................3, 15, 18

*Singer v. Jefferies & Co., Inc.*,
    160 A.D.2d 216, 553 N.Y.S.2d 346 (N.Y. App. Div. 1990) ........................................8

**DOCKETED CASES**

*Filler v. Hanvit,*
No. 04-6295-cv, slip. op (2d Cir. Dec. 2, 2005) ...........................................................14

*Quaak v. Dexia S.A.,*
No. 03-CV-11566, slip. op. (D. Mass. July 7, 2005) ....................................................5

**MISCELLANEOUS**

Restatement (Second) of Torts § 453 (1965).......................................................................8

W. PROSSER AND W. KEETON, PROSSER AND KEETON ON TORTS 321 (5th ed. 1984)..........8

Plaintiffs in the above-captioned action respectfully submit this Memorandum of Law, and the accompanying Declaration of Avi Josefson ("Josefson Decl."), in opposition to Dexia Bank Belgium's ("Dexia's") Motion for Judgment on the Pleadings. For the reasons set forth below, Dexia's motion should be denied.

## PRELIMINARY STATEMENT

Eighteen months after this Court denied Dexia's motion to dismiss federal securities claims asserted against it, Dexia moves to dismiss the common law aiding and abetting and conspiracy claims of the Stonington Plaintiffs, as well as the Filler and Baker plaintiffs, who became victims of the fraudulent L&H scheme when their companies, Dictaphone Corporation and Dragon Corporation, were acquired by L&H for a billion dollars of L&H stock.[1] The Dictaphone and Dragon transactions were critical elements of L&H's fraudulent scheme, the ultimate objective of which was to allow L&H to exchange its worthless shares for established U.S. companies worth billions of dollars.

Plaintiffs have alleged that Dexia was a knowing and direct participant in that scheme, and this Court has already held that allegations that are virtually identical to the ones Plaintiffs have made here state a claim against Dexia for <u>primary liability</u> under Section 10(b) of the Securities Exchange Act of 1934. *Quaak v. Dexia, S.A.,* 357 F. Supp. 2d 330 (D. Mass. 2005). This Court has further held that "[a]llegations of active participation in a fraudulent scheme, with scienter, sufficient to establish primary liability under § 10(b)-5, <u>will a fortori suffice to show aiding and abetting common law fraud</u>." *In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161, 176 (D.

---

[1]   Dexia filed its motion in this Action as well as in *Baker v. Dexia, S.A.*, No. 04-CV-10501-PBS and *Filler v. Dexia, S.A.*, No. 04-CV-10477-PBS. The plaintiffs in those actions, who are filing a separate memorandum to respond to arguments asserted by Dexia that do not apply to Stonington Plaintiffs, intend to rely upon and incorporate in their memorandum the arguments set forth herein.

Mass. 2003) (emphasis added).  Indeed, Dexia itself has consistently taken the position in this Court

and the First Circuit that the allegations state a "quintessential claim for aiding and abetting" fraud.

*See, e.g., Quaak v. Dexia S.A.*, No. 03-CV-11566 (D. Mass), Dkt. #35, Memorandum of Law in

Support of Dexia S.A.'s and Dexia Bank Belgium's Motion to Dismiss the Second Amended

Complaint, at 13.  Thus, it is indisputable that Plaintiffs have stated a claim for aiding and abetting

fraud.

Moreover, while Dexia claims that Plaintiffs' losses were not reasonably foreseeable to it,

that argument is baseless, and contrary to well-settled principles of law, the allegations of the

Complaint, and the evidence in this case.  There is no support for Dexia's contention that it bears no

liability because it did not know the specific identity of plaintiffs when it first joined the L&H

fraud; to the contrary, a plaintiff need only show that a "harm of the same general character was a

foreseeable result of the defendant's conduct" for foreseeability to be established.  *Jorgensen v.*

*Massachusetts Port Authority*, 905 F.2d 515, 522-23 (1st Cir. 1990).  As Dexia well knew, the

purpose of the fraudulent scheme was to allow L&H to inflate its revenues and earnings, and

concomitantly its stock price.  It was obviously foreseeable to Dexia that <u>all</u> investors, and not just

market purchasers, would rely upon L&H's publicly reported financial results and stock price when

making their investment decisions.

Furthermore, as Plaintiffs have alleged, <u>Dexia was directly involved in the Dictaphone</u>

<u>transaction</u>, and provided L&H with critical financing it needed to complete the acquisition.  *See*

Josefson Decl. Exh. B at ¶26; Exh. D  ¶26; Exh. F at ¶24.  Indeed, discovery has shown that Dexia

was directly involved in defrauding the owners of Dictaphone and Dragon.  Documents produced

by Dexia show that Dexia (1) <u>knew</u> about these transactions from their inception; (2) <u>knew</u> that the

owners of Dictaphone and Dragon would receive L&H stock valued at the market price in exchange

for their ownership interests; (3) and <u>knew</u> that Plaintiffs would "assume the risk of fluctuations in the value of the LHSP shares that they [were to] receive."  These documents also show that Dexia agreed to loan L&H $50 million to consummate these acquisitions only after L&H agreed to repay Dexia for the loans Dexia had made to the sham LDCs – a quid pro quo that directly benefited Dexia.

Not surprisingly, Dexia is unable to point to a single case that actually supports its arguments, and in several instances Dexia significantly misrepresents the cases to which it cites. For example, in *Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004), the claims against three Korean banks were dismissed because, unlike in this case, those banks did not have any relationship, contact or dealings with L&H Belgium, no knowledge of L&H Belgium's scheme to defraud, and no knowledge of L&H's acquisitions of Dictaphone and Dragon.  Similarly, while Dexia cites *CPC Int'l, Inc. v. McKesson Corp.*, 507 N.Y.S.2d 984 (1st Dep't 1986) for the proposition that it cannot be held liable for L&H's independent conduct, Dexia fails to inform the Court that *McKesson* was reversed by the New York State Court of Appeals in a decision which directly held that aiders and abettors are fully liable for the independent conduct of the primary tortfeasor.  *See CPC Int'l Inc. v. McKesson Corp.*, 514 N.E.2d 116, 124 (N.Y. 1987).  And, in *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001), the court did not hold the aiders and abettors to a higher standard of scienter than the primary tortfeasor, but actually refused to apply that higher standard.

For the reasons set forth herein, Plaintiffs respectfully submit that Dexia's motion for judgment on the pleadings should be denied in its entirety.

# ARGUMENT

## I.    PLAINTIFFS HAVE SUFFICIENTLY PLED AIDING AND ABETTING FRAUD

As set forth below, Plaintiffs have sufficiently pled claims against Dexia for aiding and abetting fraud.[2]  The standard of review for a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6). *Moghaddam v. Dunkin' Donuts, Inc.*, 295 F. Supp.2d 136, 138 (D. Mass. 2003) (Saris, J.).  "In considering a motion to dismiss, a court must take the allegations in the non-moving party's pleading as true and must make all reasonable inferences in favor of the non-moving party."  *Id.* The non-moving party's pleading "should not be dismissed for failure to state a claim unless it appears beyond a doubt that [the non-moving party] can prove no set of facts in support of [its] claim which would entitle [it] to relief."  *Id.*  (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).  Thus, "[a] court's inquiry is a limited one, focusing not on whether the plaintiff will ultimately prevail but on whether the plaintiff should be entitled to offer evidence to support a claim."  *Id.* at 139 (quoting *Canty v. Old Rochester Reg'l Sch. Dist.*, 54 F.Supp.2d 66, 68 (D. Mass. 1999)).

### A.    This Court's Prior Decisions in Related Actions Dispose of Dexia's Assertion that Plaintiffs' Aiding and Abetting Claims Fail as a Matter of Law.

Dexia's motion entirely ignores this Court's prior decisions in related actions that are dispositive of the legal sufficiency of Plaintiffs' aiding and abetting allegations.  This Court already has held that the virtually identical allegations in the *Quaak* case state a claim against Dexia for primary liability under Section 10(b) and Rule 10b-5:  "[P]laintiffs allege that [Dexia's] actions

---

[2]   Dexia takes the position that Plaintiffs' common law claims are governed by New York law. Dexia Mem. 6-7, 10, 13.  At this stage, Plaintiffs take no position as to the applicable law, because their claims survive the instant motion regardless of which state's law is applied.

were integral to the fraudulent scheme, and that [Dexia] was a primary architect of the scheme to finance the sham entities.  Therefore, plaintiffs have alleged facts sufficient to establish primary liability by [Dexia] under Section 10(b)." *Quaak*, 357 F. Supp. 2d at 342 (D. Mass. 2005).  *See also Quaak v. Dexia*, S.A., No. 03-11566, slip. op. at 7 (D. Mass. July 7, 2005) ("[T]he allegations against Dexia describe a clear case of substantial participation in a manipulative scheme.").[3]

As this Court has made clear, "[a]llegations of active participation in a fraudulent scheme, with scienter, sufficient to establish primary liability under § 10(b)-5, <u>will a fortiori suffice to show aiding and abetting common law fraud</u>." *In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161, 176 (Jan. 13, 2003) (emphasis added) (denying motions to dismiss filed by FLV Fund and Mercator which, like Dexia, were alleged to have funded sham LDCs knowing that the money would be passed on to L&H and recognized as revenue in violation of auditing standards and applicable law) *(Lernout V)*.

Dexia has not provided the Court with any explanation as to why the Court's prior decisions should not apply here.  Accordingly, Plaintiffs respectfully submit that this Court should follow its own prior decision in *Lernout V* and deny Dexia's motion to dismiss Plaintiffs' aiding and abetting claims.

---

[3]   In light of the Court's prior decisions regarding the claims against Dexia and the extensive discussion of the facts contained therein, Plaintiffs will not here burden the Court by repeating the facts which this court has already held are sufficient to state a claim for securities fraud.  Plaintiffs note, however, that those allegations easily satisfy the elements of aiding and abetting fraud.  *See*, *e.g.*, *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 90-91 (D. Mass. 2002) (Saris, J.) (to state a claim for aiding and abetting, plaintiffs must allege that "(1) the defendant provides substantial assistance or encouragement to the other party; and (2) the defendant has unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions") (internal quotation omitted).

**B.     Dexia Has Conceded that the Allegations State Claims
        <u>Against It for Aiding and Abetting the Fraudulent L&H Scheme.</u>**

As this Court is aware, Dexia has conceded—before this Court and the First Circuit—that

the virtually identical allegations in the *Quaak* case are sufficient to state a claim against Dexia for

aiding and abetting L&H's securities law violations.  *Quaak*, 357 F. Supp. 2d at 341 ("Defendant

argues that plaintiffs' allegations against Dexia at most amount to a claim for aiding and abetting,

and are therefore barred by *Central Bank*.").  Indeed, in its motion to dismiss the *Quaak* complaint,

Dexia explicitly acknowledged that the allegations stated "<u>a quintessential claim for aiding and</u>

<u>abetting</u>" fraud.  *Quaak v. Dexia S.A.*, No. 03-CV-11566 (D. Mass), Dkt. #35, Memorandum of Law

in Support of Dexia S.A.'s and Dexia Bank Belgium's Motion to Dismiss the Second Amended

Complaint, at 13.  Dexia took the exact same position before the First Circuit, arguing that the

allegations against it "only" demonstrated that it aided and abetted L&H's fraudulent scheme, and

that "the Complaint alleges no more than aiding and abetting by Artesia."  *Quaak v. Dexia, S.A.*,

No. 05-2580 (1st Cir.), Brief of Appellant Dexia Bank Belgium at 6, 23-24.

As numerous courts have recognized, allegations sufficient to state a claim for aiding and

abetting securities fraud are a fortiori sufficient to state a claim for aiding and abetting common law

fraud.  *See, e.g., NFS Services Inc. v. Chemical Bank*, No. 89 Civ. 585 (LLS), 1990 U.S. Dist.

LEXIS 12668, at *18 (S.D.N.Y. Sept. 24, 1990) ("The elements of [a claim for aiding and abetting

common-law fraud] are the same as those for aiding and abetting a securities law violation."); *In re*

*Gas Reclamation, Inc. Sec. Litig.*, 659 F. Supp. 493, 518 (S.D.N.Y. 1987) (adequately pled claim of

aiding and abetting section 10(b) violation also establishes claim of aiding and abetting common

law fraud).  Accordingly, Dexia's own admissions that the allegations made by Plaintiffs state a

claim for aiding and abetting L&H's fraud mandate that its motion be denied.

**C.**     **Dexia's Assertion That Plaintiffs Have Failed To Plead**
           **That Dexia Proximately Caused Plaintiffs' Injuries Is Baseless.**

Notwithstanding the Court's prior decisions and its own admissions in various courts, Dexia argues that that Plaintiffs' aiding and abetting claims must be dismissed because Plaintiffs have not alleged that Dexia could have foreseen that L&H's fraudulent financial statements would cause loss to "parties engaged with L&H in non-market transactions" as opposed to "market investors." (Dexia Mem. 12-13).  In other words, Dexia concedes that it was foreseeable that market investors would be harmed by the fraud, but contends that it cannot be liable for Plaintiffs' harm unless it specifically knew, at the time that it joined the L&H fraud, that L&H would ultimately use its fraudulently inflated stock to purchase Dictaphone and Dragon from Plaintiffs.  This argument is contrary to this Court's prior decisions and is hopelessly at odds with the law and the facts. Plaintiffs are not required to show this level of foresight in order to demonstrate that Dexia proximately caused their losses.  In any event, Plaintiffs have alleged that Dexia actually knew of and participated in the Dictaphone transaction, and that similar private transactions (such as L&H's acquisition of Dragon) were eminently foreseeable.  Moreover, Dexia's own documents demonstrate that it actually knew of and profited from L&H's acquisitions of Dragon and Dictaphone.

**1.**     **Foreseeability Is a Question for the Jury**

It is black-letter law that foreseeability and proximate cause are questions of fact which should not be resolved on a Rule 12 pleadings motion.  *AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 217 (2d Cir. 2000) ("A foreseeability determination in and of itself is also a question of fact for resolution by the finder of fact."); *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 85 (D. Mass. 1998) ("'[P]roximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case.'")

(quoting W. PROSSER AND W. KEETON, PROSSER AND KEETON ON TORTS 321 (5th ed. 1984)).  *See also* Restatement (Second) of Torts § 453, comment b (1965) (if either facts or reasonable foreseeability of intervening act are subject to reasonable difference of opinion, question of proximate cause must go to jury).

Plaintiffs respectfully submit that the issue of proximate cause, of which foreseeability is an element, should be deferred for the jury to resolve based on all the evidence.

### 2.    A Defendant Need Not Foresee the Precise Manner of Injury in Order to Be Liable.

It is well-established that a defendant need not foresee the precise harm that will result from his tortious conduct in order to be held liable for that harm.  As the First Circuit has held, "[t]he plaintiff need not show that the particular harm that resulted was foreseeable to the defendant; . . . the plaintiff must show [only] that a harm of the same general character was a foreseeable result of the defendant's conduct."  *Jorgensen v. Massachusetts Port Authority*, 905 F.2d 515, 522-23 (1st Cir. 1990) (applying Massachusetts law).  *See also Singer v. Jefferies & Co., Inc.*, 160 A.D.2d 216, 219, 553 N.Y.S.2d 346 (N.Y. App. Div. 1990) ("[T]he element of reasonable foreseeability does not mean that the exact occurrence or precise injury need be foreseen.  It is sufficient that defendants should have been able to foresee that some injury might have resulted from their acts."); *Bigbee v. Pacific Telephone and Telegraph Co.*, 665 P. 2d 947, 952 (Cal. 1983) ("[I]t is well settled that what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence.").  "[A] defendant need not intend any specific harm to any particular individual; it is sufficient that the defendant causes harm by the creation of substantial risk of harm."  *Dale v. Banque SCS Alliance S.A.*, No 02-CV-3592, 2005 WL 2347853, at *7 (S.D.N.Y. Sept. 22, 2005) (internal quotation omitted) (applying the foreseeability doctrine to RICO predicate acts of fraud).

Here, there can be no serious dispute that the harm suffered by Plaintiffs was reasonably foreseeable to Dexia. Indeed, in its motion, Dexia concedes that it "aided and abetted L&H's fraud upon market investors <u>through transactions that L&H used to inflate its financial statements</u>." Dexia Mem. 12. Accordingly, as Dexia itself essentially admits, the general character of the harm was that investors in L&H would be defrauded because they relied upon L&H's materially false and misleading financial statements and acquired shares of L&H stock which were artificially inflated as a result of the fraud. Although Dexia attempts to draw a distinction between Plaintiffs and open-market purchasers, there is none. The particular manner in which a particular investor acquired his or her stock is wholly irrelevant for purposes of foreseeability – what is relevant is that Dexia understood that the purpose of the fraudulent scheme was to allow L&H to publicly misrepresent its financial results, and that Dexia obviously knew (or should have known) that investors would rely upon those financial statements when making their investment decisions. Thus, the general harm suffered by all L&H investors is identical, and the harm suffered by Plaintiffs, who acquired their stock through private transactions, is indistinguishable from the harm suffered by the *Quaak* class of L&H investors, who purchased their stock on the open market.

### 3. Plaintiffs Have Alleged Facts Sufficient To Show That Dexia Could Reasonably Foresee That L&H Investors in <u>Negotiated, Non-Market Transactions Would be Injured.</u>

In any event, although not required to do so as a matter of law, Plaintiffs have alleged facts sufficient to show that Dexia should have foreseen that L&H investors such as Plaintiffs would be injured in negotiated, non-market transactions. Indeed, Plaintiffs have pled, and Dexia has in fact admitted, that Dexia itself participated in the Dictaphone transaction, and therefore <u>actually knew</u> that L&H was defrauding Stonington of its interest in Dictaphone. *See* Josefson Decl. Exh. B at ¶26; Exh. C ¶26; Exh. D at ¶24; Exh. E at ¶24; Exh. F at ¶25; Exh. G at ¶25. *See also* Dexia

Mem. 5 ("Dexia participated in a syndicate of banks that provided financing for [the Dictaphone] acquisition.").[4]

### 4. The Evidence Shows That Dexia Knew of L&H's Intention To Defraud the Owners of Dictaphone and Dragon in Stock-for-Stock Transactions.

Documents obtained in discovery demonstrate that Dexia knew that the L&H scheme included defrauding the owners of Dictaphone and Dragon by acquiring their companies "via a stock swap … in which the LHSP shares are valued at … the price on the stock exchange at the time of the agreement in principle." *See, e.g.,* Josefson Decl. Exh. I at DBB014111.[5]  Indeed,

———————————

[4]  With regard to the Dragon Plaintiffs, they have pled (*see* Josefson Decl. Exh F at ¶ 141), and discovery has confirmed, that Dexia knew Dragon was a target of the L&H fraud, and facts alleged are sufficient to support an inference that the Dragon transaction and the harm resulting therefrom were foreseeable to Dexia.  *See Bradley v. City of Lynn*, 403 F. Supp. 2d 161, 164 (D. Mass. 2005) (On a motion for judgment on the pleadings, "the Court takes as true 'the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in his favor.'") (quoting *Coyne v. City of Somerville*, 972 F.2d 440, 442-43 (1st Cir. 1992)).  Plaintiffs allege that Dexia was "'an exceptionally important banker to [L&H] … involved in just about everything surrounding [L&H].'"  Josefson Decl. Exh. B at ¶ 5; Exh. D at ¶119; Exh. F at ¶ 56.  Dexia should therefore have been aware of important aspects of L&H's operations, including the fact that L&H had a long history of acquiring complementary businesses and technologies using its own stock as currency.  Josefson Decl. Exh. B at ¶¶ 40, 42; Exh. D at ¶ 39; Exh. F at ¶¶ 52, 55, 126.  Moreover, both the Dictaphone and Dragon transactions were publicly announced by L&H, and both transactions received extensive publicity in 2000 from financial analysts.  *See, e.g.,* Josefson Decl. Exh. N (March 7, 2000 L&H press release announcing acquisition of Dictaphone) and Exh. O (March 28, 2000 L&H press release announcing acquisition of Dragon).  Given these allegations, it is reasonable to infer that Dexia was well aware that L&H was acquiring both Dictaphone and Dragon for stock in 2000, and could reasonably foresee that Plaintiffs would be defrauded.

[5]  In submitting Josefson Decl. Exs. I and J, Plaintiffs do not seek to convert the instant motion into a motion for summary judgment.  *See Garita Hotel Ltd. P'ship v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 18 (1st Cir. 1992) ("A motion to dismiss is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed with, and not expressly rejected by, the district court.").  Rather, Plaintiffs seek merely to illustrate to the Court their ability to correct, in amended pleadings, any deficiencies the Court may identify in their pleadings.  While it is within the Court's discretion to convert the instant motion, Plaintiffs respectfully submit that in light of the facts that merits discovery is currently ongoing and the pre-trial schedule does not contemplate the filing of motions for summary judgment before December 22, 2006 (*see* Josefson Decl. Exh. H), it would not be in the interests of judicial efficiency to do so.  *See, e.g., Vermont*

discovery has shown that the $50 million loan Dexia made to L&H to allow it to acquire

Dictaphone was part and parcel of L&H's fraudulent scheme, and was part of a true quid pro quo

arrangement between Dexia and L&H, pursuant to which Dexia only agreed to participate in the

Dictaphone and Dragon transactions if it was repaid for the loans it had made to the sham LDCs.

To wit:

- Dexia knew that L&H was considering acquiring Dictaphone and Dragon virtually from the inception of L&H's negotiations to acquire those companies. Indeed, documents produced by Dexia show that, by no later than early December 1999, L&H had asked Dexia if it would fund L&H's acquisition of Dictaphone and Dragon. *See, e.g.,* Josefson Decl. Exh. I at DBB014108; Josefson Decl. Exh. J at DBB 105868.

- At the time L&H approached Dexia about participating in these deals, Dexia knew that its loans to the sham LDCs, including LIC and Radial, were past due and at risk of not being repaid. Accordingly, Dexia only agreed to finance the Dictaphone and Dragon acquisitions if its loans to LIC and Radial, as well as its $20 million loan to L&H's executives, were repaid – a true quid pro quo. *See* Josefson Decl. Exh. I at DBB014108 ("Conditions to be met in advance: [e]ffective reimbursement of LIC, Radial, Lernout/Hauspie/Willaert credits in the amount of 30,875 Euros."); Exh. J at 105868 (same).

- Dexia's credit proposal discussing the Dictaphone and Dragon loans expressly noted the benefits to Dexia of converting its credit to LIC and Radial into a credit to L&H, highlighting the fact that L&H was far more credit-worthy than the LDCs. *See* Josefson Decl. Exh. I at DBB014111 ("Positive risk factors: A short term deferral of the credit risk: We extend credit to Lernout & Hauspie Speech Products (listed), which is better in terms of risk than credit to an investment company (LIC and Radial Belgium)").

- The Dexia credit proposal concerning the Dictaphone and Dragon transactions also expressly noted as a "strong point" that L&H would benefit from the acquisitions of Dictaphone and Dragon. Josefson Decl. Exh. I at DBB014112 ("L&H SP becomes a bigger market player through the acquisition of Dragon and Dictaphone and will be able to generate synergy effects.").

---

*Pure Holdings, Ltd. v. Nestle Waters North America, Inc.*, No. 03-11465-DPW, 2006 U.S. Dist. LEXIS 13683, at *28 (D. Mass. Mar. 26, 2006) (declining to convert Rule 12(c) motion to summary judgment motion in a complex case in which discovery was ongoing).

- The Dexia credit proposal concerning the Dictaphone and Dragon transactions was prepared by Senior Credit Officer Peter Rabaey, who personally recommended to the Credit Committee that Dexia participate in the Dictaphone and Dragon transactions. *See* Josefson Decl. Exh. I at DBB 014108, DBB 014111 ("Because of the strong competition by other Belgian and international banks (which are also now getting into the L&H SP dossier), it is absolutely necessary that we take on a participation in this Club Deal so as to maintain the strategic advantage created in the past.").

- Mr. Rabaey was the same Senior Credit Officer who handled Dexia's sham loans to the LDCs, including LIC and Radial, as well as the use of credit default swaps to conceal L&H's involvement in those loans. *See* Josefson Decl. Exh. K at 17 (Memorandum and Order discussing Rabaey's involvement in Dexia's loans to the LDCs). Along with Dexia itself, Mr. Rabaey was personally indicted in Belgium for his role in the fraud. *See* Josefson Decl. at ¶ 16.[6]

- Mr. Rabaey's proposal to the Executive Committee specifically noted that Dictaphone and Dragon would be stock-for-stock deals, and further specifically noted that Plaintiffs will bear the risk of receiving L&H stock as consideration. *See* Josefson Decl. Exh. I at DBB014111. The memo notes the precise amount (and then-present value) of the L&H shares being paid in exchange for Dictaphone and Dragon, and states "The buyers assume the risk of fluctuations in the value of the LHSP shares that they receive." *Id.* at DBB 104110. Dexia also knew that Stonington and Dragon would be receiving L&H shares valued at their market price on the day the transactions closed. *Id.*

Thus, in sum, Dexia not only could "reasonably foresee" the harm to Plaintiffs, but Dexia actually knew that the owners of Dictaphone and Dragon were exchanging their interests in those companies for a billion dollars in L&H stock. Despite the clear and devastating harm to Plaintiffs, Rabaey advised Dexia to provide $50 million to facilitate those transactions because, in exchange, Dexia would be repaid millions of dollars in loans to sham entities. The harm to Plaintiffs was

---

[6]  Plaintiffs noticed Mr. Rabaey's deposition last fall, and Dexia refused to produce him for a deposition, claiming (despite his central involvement in the fraud) that he was not an "officer, director or managing agent" of Dexia and had very little involvement in the LDC loans. On July 10, 2006, Magistrate Judge Collings held that the evidence showed that Rabaey was a managing agent, and ordered his deposition to proceed. *See* Josefson Decl. Exh. K at 20-21. To date, despite Plaintiffs' requests, that deposition has not yet been scheduled, and Dexia has not provided any dates on which Mr. Rabaey is available to be deposed. *See* Josefson Decl. at ¶15 and Exs. L and M.

contemplated, weighed and disregarded by Dexia, whose sole concern was that Dexia be repaid on its sham loans and be able to maintain its "special" relationship with L&H.

The fact that Dexia may not have known that L&H would acquire Dictaphone and Dragon at the time Dexia funded the sham LDCs is meaningless. As this Court has recognized, the fraudulent scheme here continued for years (Dexia engaged in sham transactions with L&H from 1997-1999 (*See* Josefson Decl. Exh. B at ¶¶84-114; Exh. D ¶119- 149; Exh. F at ¶¶56-86), and the ramifications of Dexia's conduct continued from the time L&H's false financial statements were issued until the misstatements in those financial statements were revealed. Indeed, this Court itself has recognized that Dexia continued to participate in the scheme to defraud L&H's investors until June 30, 2000 (357 F. Supp. 2d at 337-38), when L&H issued its 1999 year-end financial statements (which were first announced on February 9, 2000). Moreover, as set forth above, Dexia knew about the Dictaphone and Dragon acquisitions long before they were consummated. Accordingly, Dexia's assertion that it did not reasonably foresee these acquisitions is specious.

### 5.    The Cases on Which Dexia Relies Do Not Support Its Argument

Dexia does not cite a single case that supports its contention that it cannot be held liable for aiding and abetting the L&H fraud unless it knew the specific identities of the victims of that fraud. Indeed, while Dexia relies heavily (if not exclusively) on *Filler v. Hanvit Bank,* 339 F. Supp. 2d 553 (S.D.N.Y. 2004), the facts of that case are inapposite, and the district court's analysis in that case actually supports Plaintiffs' argument that Dexia's direct participation in the L&H fraud constitutes aiding and abetting.

At issue in *Hanvit* were allegations that defendants, a group of Korean banks, assisted L&H's <u>Korean subsidiary, L&H Korea,</u> in misstating <u>its</u> financial results. The district court in that case dismissed both Section 10(b) and common law claims because the plaintiffs failed to identify any relationship at all between the defendant Korean banks and L&H Belgium – the alleged

perpetrator of the fraud – and also failed to identify any connection whatsoever between the actions

of the defendant banks and the issuance of L&H Belgium's false financial statements. *See Filler v.*

*Hanvit Bank*, 247 F.Supp.2d 425, 431 (D. Mass. 2003) ("From the allegations of the complaint, it is

impossible to decipher the connection between defendants' agreements with L&H Korea, and the

issuance of false financial statements by L&H Belgium" as the relationship between the defendant

Korean Banks and L&H Belgium had not been explained with any particularity); *Hanvit*, 339 F.

Supp. 2d 553, 557-58 (S.D.N.Y. 2004) ("[t]he allegations of the complaints, if true, demonstrate

that defendants aided and abetted L&H Korea in the falsification of its revenues … However, L&H

Korea's fraudulent inflation of its revenues is not the primary fraud complained of in this case.

Rather, plaintiffs allege that they were injured by L&H Belgium's fraudulent

misrepresentations…Therefore, it is not enough for plaintiffs to show that defendants knowingly

assisted L&H Korea's fraud; plaintiffs must show that [defendants] knowingly and substantially

assisted in L&H Belgium's fraudulent misrepresentations.").  It was only in this specific context –

where there were no allegations of any relationship or contacts between the defendants and the

perpetrator of the fraud (L&H Belgium) – that the district court held that the harm suffered by the

plaintiffs was not foreseeable.[7]

---

[7]   Moreover, the discussion in Hanvit of the distinction between investors who acquired L&H
shares through market rather than non-market transactions is merely *dicta* – identified as "[a]n
additional problem with plaintiffs' aiding and abetting allegations."  339 F. Supp. at 559.  The
District Court in *Hanvit* cited no case for this proposition and the discussion of foreseeability in
*Hanvit* was not affirmed by the Second Circuit on appeal.  *Filler v. Hanvit*, No. 04-6295-cv, slip op.
at 7-8 (2d Cir. Dec. 2, 2005) (Josefson Decl. Exh. A).  As discussed above, the suggestion that the
specific harm that results from defendant's conduct, as well as the identity of those who suffer the
harm, must be foreseeable to the defendant is inconsistent with well-established principles of tort
liability, as well as with this Court's prior decision in *Lernout V*.  To the extent that Hanvit can be
read to support the contention that an aider and abettor of fraud cannot be liable absent foresight of
the particular type of share transaction in which the plaintiff is harmed, Plaintiffs respectfully
submit that this is contrary to the law.

As this Court has recognized in its prior decisions regarding Dexia, the allegations here stand in stark contrast to *Hanvit*. Plaintiffs here have alleged that Dexia participated directly in the LDC fraud perpetrated by L&H Belgium, and knowingly and substantially assisted in L&H Belgium's fraudulent misrepresentations. Moreover, the "connection" between Dexia's fraudulent acts and the issuance of L&H Belgium's false financial statements is clear and direct: L&H Belgium improperly booked, with Dexia's knowledge and assistance, millions of dollars in revenue from sham loans that Dexia made to the LDCs, and reported that LDC revenue to Plaintiffs and other investors through L&H's financial statements. Thus, Dexia's involvement in the L&H fraud directly contributed to the deception of Plaintiffs. Accordingly, there is little question that, under the analysis conducted in *Hanvit*, Plaintiffs' allegations against Dexia should be sustained.

Similarly, Dexia's argument that it cannot be held liable for steps taken by L&H – such as L&H's acquisitions of Dictaphone and Dragon – is unfounded. The only case Dexia cites in support of that argument, *CPC Int'l, Inc. v. McKesson Corp.*, 507 N.Y.S.2d 984 (1st Dep't 1986) (quoted at Dexia Mem. 12), was reversed on the very point which Dexia cites it for – a fact that Dexia omits from its brief. *See* Dexia Mem. at 11 (stating that *McKesson* was "reversed on other grounds"). In fact, in *CPC Int'l Inc. v. McKesson Corp.*, 514 N.E.2d 116, 124 (N.Y. 1987), the New York Court of Appeals unambiguously stated that "We disagree" with the very same language that Dexia relies on its motion. *Id.* The Court of Appeals went on to hold that aiders and abettors are liable not only for the harm flowing from their own fraudulent conduct, but from the harm caused by the "independent actions" of the primary tortfeasor "done in furtherance of" the fraudulent scheme, even if those actions "were not contemplated as part of the original fraudulent scheme." *Id.* at 125. This decision eviscerates Dexia's patently untenable contention that Plaintiffs' pleadings must show that Dexia knew every detail of how the fraudulent L&H scheme would

15

evolve—including the precise identity of every victim of the scheme—from the outset of its participation.

Dexia similarly misrepresents the court's holding in *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001), which Dexia cites to support the argument that "allegations of scienter must be pled in more detail for aiders and abettors than for primary tortfeasors." Dexia Mem. at 11, citing *Primavera Familienstifung*, 130 F. Supp. 2d at 507-08. Dexia fails to note that the court, in the same paragraph from which it quotes, rejected the very standard that Dexia asks this Court to apply, and refused to hold aiders and abettors to a higher standard of scienter: "[T]he scienter requirement need not be more exacting than that applied to the primary fraud in a case involving a symbiotic fraudulent scheme, as compared with a remote relationship." *Id.* at 508 (internal quotation omitted). Plaintiffs here allege that Dexia participated in precisely the sort of "symbiotic fraudulent scheme" at issue in *Primavera Familienstifung*.[8]

Similarly, *Buckley v. Goldman, Sachs & Co.*, No. 02-CV-11497, 2005 WL 1206865 at *8 (D. Mass. May 20, 2005), fails to support Dexia's argument. In that case, the court found that the plaintiff had pled only constructive, rather than actual, knowledge of the underlying fraud. *Id.* This Court has previously held that the allegations against Dexia demonstrate actual knowledge of the L&H fraud, and nothing in *Buckley* supports Dexia's contention that Plaintiffs' must allege that Dexia knew that its participation in the L&H fraud would specifically harm Dictaphone and Dragon.[9]

---

[8] It is questionable what relevance the standards applied in *Primavera Familienstifung* has to Dexia's present motion, as that case addressed a motion for summary judgment under Rule 56 and considered the evidence necessary to prove scienter at trial, whereas Dexia asks the Court to examine the sufficiency of Plaintiffs' allegations alone.

[9] Dexia cites specifically to footnote 21 in *Buckley*, however the case quoted in that footnote actually undermines Dexia's argument. *See Buckley*, 2005 WL 1206865 at *8 n.21 ("The

16

## II.     PLAINTIFFS HAVE SUFFICIENTLY PLED CONSPIRACY TO DEFRAUD

As with Plaintiffs' aiding and abetting claims, Dexia argues that Plaintiffs' conspiracy

claims fail as a matter of law because Plaintiffs have not shown that Dexia knew that the common

objective of the conspiracy was to defraud the owners of Dictaphone and Dragon in stock-for-stock

transactions.  Dexia Mem. 13-14.  As explained above, this argument is nonsense.  Dexia does not

dispute the sufficiency of allegations sufficient to show (1) the existence of the "corrupt agreement"

between Dexia and L&H "to defraud the SEC and the investing public," (2) overt acts by Dexia in

furtherance of the agreement, (3) Dexia's intentional participation in furtherance of the plan or

purpose, and (4) resulting damage or injury.  *In re Monahan Ford Corp.*, 340 B.R. 1, 36 (U.S.

Bankr. E.D.N.Y. 2006) (applying New York law) (cited at Dexia Mem. 13-14).[10]

Under well-established principles of civil conspiracy, Dexia is liable for all of L&H's acts in

furtherance of the conspiracy, even if it was not aware of all of L&H's aims and of all of L&H's

acts in furtherance of the conspiracy.  "A common design is the essential essence of a conspiracy . .

. though it is not essential to one's liability for ensuing damages that he shall have joined in the

beginning, or should have complete knowledge of all aims of the conspirators or take part in each

---

Massachusetts courts have made clear that a defendant 'aids and abets' a tortfeasor only if, at the
least, the defendant actually knows about 'its substantial, supporting role in an unlawful
enterprise.'"), quoting *Maruho v. Miles*, 13 F.3d 6 (1st Cir. 1993).  Plaintiffs have alleged that
Dexia knew about its "substantial, supporting role in an unlawful enterprise" and nothing in *Buckley*
or *Maruho* requires allegations concerning defendant's knowledge of the identity of the victims of
that unlawful enterprise.

[10]  *Monahan Ford* does not support Dexia's argument that members of a conspiracy must know the
specific "objective" – i.e., the intended victim – of the planned fraud to be held liable.  In fact, the
court in that case never even discusses the "objective" of the fraud in question as an element of
either the conspiracy or aiding and abetting claims.  To the contrary, *Monahan Ford*, the only case
cited by Dexia for this proposition, establishes only that to be liable for either conspiracy to commit
fraud or aiding and abetting fraud a defendant must have knowledge of the fraud itself.  340 B.R. at
33, 35.

branch of the conspiracy or even that he <u>know of all steps taken toward the common design</u>.")

*Bedard v. La Bier*, 20 Misc. 2d 614, 616-17, 194 N.Y.S.2d 216, 220 (Sup. Ct. N.Y. County 1959)

(emphasis added). *See also CPC Int'l, Inc. v. McKesson Corp.*, 514 N.E.2d at 125 ("[E]ven if . . .

not contemplated as part of the original fraudulent scheme . . . defendants, as parties to the

underlying fraudulent conspiracy, could, nonetheless, be liable for [the primary violator's]

independent actions done in furtherance of it.").

        Thus, contrary to Dexia's claim, Plaintiffs are <u>not</u> required to plead that Dexia, from the

outset of its participation in the conspiracy "to defraud the SEC and the investing public," had

"complete knowledge" of L&H's aim to acquire legitimate businesses through fraudulent stock-for

stock transactions.  Even if Dexia never knew anything about the Dictaphone and Dragon

transactions it would be liable to Plaintiffs as L&H's co-conspirator.  However, as previously noted,

the evidence at trial will show that Dexia was not ignorant of these transactions or L&H's aim to

defraud Plaintiffs.

## CONCLUSION

For all of the foregoing reasons, Dexia's Motion for Judgment on the Pleadings should be denied in its entirety.  However, in the event that the Court should grant any of the relief Dexia seeks, Plaintiffs respectfully request leave to amend their complaint.

Dated:   July 20, 2006

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
  /s/ Avi Josefson
Max W. Berger
Steven B. Singer
Avi Josefson (avi@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 554-1400

LOONEY & GROSSMAN LLP
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2800

**COUNSEL TO PLAINTIFFS STONINGTON PARTNERS, INC., STONINGTON CAPITAL APPRECIATION 1994 FUND L.P. AND STONINGTON HOLDINGS L.L.C.**