# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br><br> Defendants. | Civil Action No.: 03-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br><br> Defendants. | Civil Action No.: 04-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust, <br><br> Plaintiffs, <br><br> v. <br><br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br><br> Defendants. | Civil Action No.: 04-10477 (PBS) |

JANET BAKER and JAMES BAKER,
JKBAKER LLC and JMBAKER LLC,

      Plaintiffs,

      v.

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),

      Defendants.

Civil Action No.:  04-10501 (PBS)

## DECLARATION OF JEFF E. BUTLER

    I, Jeff E. Butler, declare and state as follows:

    1.  I am an attorney associated with Clifford Chance US LLP and admitted *pro hac vice* to practice before this Court.  I am fully familiar with the facts set forth herein.  I submit this declaration in support of Dexia Bank Belgium's Motion to Compel Production of Certain "Issue Lists" Withheld as Work Product.

    2.  Attached hereto as Exhibit A is a true and correct copy of Stonington Plaintiffs' Responses and Objections to Dexia Bank Belgium's First Set of Interrogatories, dated September 20, 2005.

    3.  Attached hereto as Exhibit B is a true and correct copy of Class Plaintiffs' Amended Responses and Objections to Dexia Bank Belgium's Second Set of Interrogatories, dated November 1, 2005.

NYA 797393.1

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Dated: New York, New York
      August 11, 2006

                                                      _____
                                                          Jeff E. Butler

NYA 797393.1

<u>Exhibit A</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company, | : : : : : : : | Civil Action No. 04-10411 (PBS) |
| Plaintiffs, | : : |  |
| v. | : : |  |
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.), | : : : : | |
| Defendants. | : : |  |

## STONINGTON PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEXIA BANK BELGIUM'S FIRST SET OF INTERROGATORIES

Plaintiffs Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund L.P. and Stonington Holdings, L.L.C. (collectively, "Stonington Plaintiffs," or "Plaintiffs") hereby respond and object to Defendant Dexia Bank Belgium's First Interrogatories to the Stonington Plaintiffs (the "Interrogatories") as follows:

## GENERAL OBJECTIONS

These General Objections are incorporated into each specific response and objection hereinafter set forth, whether generally or as to each or any specific Interrogatory, Definition or Instruction, as if fully set forth therein, and will not be repeated in each specific response or objection. The provision of any information in response to an Interrogatory is not, and shall not be construed as, an admission of the propriety of such Interrogatory. Plaintiffs reserve the right

1

to amend these responses and objections. All information provided in response to an Interrogatory will be subject to the objections contained herein.

    1.    Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to impose upon Plaintiffs any obligations different from, or greater than, those established or required by the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts.

    2.    Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information protected by the attorney client privilege, the attorney work product doctrine, or any other applicable privileges or doctrines, and reserve the right not to provide such information. The inadvertent provision of any privileged information shall not constitute, or be deemed a waiver of, any applicable statutory, regulatory, common-law or other privilege with respect to such information (or the subject matter thereof) or with respect to any other information or discovery now or hereafter requested or produced. Plaintiffs reserve the right not to provide information that is in part protected by any such privilege, except on a redacted basis.

    3.    Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information not within the possession, custody or control of Plaintiffs.

    4.    Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they fail to include any temporal limit. Plaintiffs' responses to the Interrogatories will be limited to events that occurred during the period January 1, 1996 through late June 2003.

5.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information not maintained by Plaintiffs in the usual course of business.

6.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information in the possession of Plaintiffs that was obtained from a third party under an express agreement of confidentiality.

7.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they state or assume legal conclusions.  In providing these responses and objections to the Interrogatories, Plaintiffs do not admit the factual or legal premise of any of the Interrogatories.

8.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they are vague, ambiguous or would unreasonably require Plaintiffs to speculate as to the nature and/or scope of the information sought.

9.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they are duplicative, cumulative, or otherwise seek to impose undue burden or expense.

10.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they call for information that relates to matters not raised by the pleadings, that is not material and necessary to the prosecution or defense of this action, or that is not reasonably calculated to lead to the discovery of admissible evidence.

11.      Plaintiffs do not in any way waive or intend to waive, but rather intend to preserve and are preserving their rights to: supplement or amend these responses and objections; object on any ground to any Interrogatory seeking further information, or any other discovery requests in,

3

or relating to, this action; or move for an appropriate protective order pursuant to Rule 26(c) of

the Federal Rules of Civil Procedure

      12.     Plaintiffs object to the Definition of "Artesia" as vague in so far as it refers to

"Paribas" as a predecessor entity to Artesia.  Plaintiffs will construe the reference to Paribas to

mean Paribas Banque Belgium.

      13.     Plaintiffs object to the definition of "L&H Litigation" as overbroad to the extent it

includes actions that have not been or were not brought by Plaintiffs.

      14.     Plaintiffs object to the Definition of "You" and "Your" as overly broad, vague,

ambiguous, exceeding the scope of permissible discovery, and not reasonably calculated to lead

to the discovery of admissible evidence.  Plaintiffs will construe references to "you" to mean

Plaintiffs.

## SPECIFIC OBJECTIONS AND RESPONSES

### Interrogatory No. 1:

**Identify each act or omission of Artesia that you claim violated Section 10(b) of the Securities Exchange Act of 1934 and, for each such act or omission, describe how such act or omission caused the loss for which you seek to recover damages.**

### Response to Interrogatory No. 1:

      Plaintiffs object to this Interrogatory as premature because their investigation of Dexia

Bank Belgium's (hereinafter "Dexia, which term includes "Artesia") actions and omissions is

ongoing, and Plaintiffs have not received all relevant documents in the control of Dexia and/or

third parties, completely analyzed such documents, taken deposition testimony from the persons

who created the documents and/or were familiar with them and/or the activities they describe, or

engaged expert witnesses, to the extent required to formulate opinions based upon the factual

record developed in this case.  Until this process has been concluded, Plaintiffs cannot provide a

fully complete response to this Interrogatory. Plaintiffs further object to this Interrogatory to the

extent it seeks information protected by the attorney-client privilege or attorney work-product

doctrine and as calling for legal conclusions.

Subject to and without waiving the foregoing objections, Plaintiffs incorporate by

reference, as if set forth fully herein, paragraphs 1-15 and 39-139 of the Complaint filed in this

case. Plaintiffs further state that Dexia substantially participated in a fraudulent, manipulative

and/or deceptive scheme to artificially inflate L&H's publicly reported revenues and profits, to

show growing revenues and profits, as well as to artificially inflate the value of L&H stock.

Dexia's acts, practices, course of business and conduct to structure, implement and further this

fraudulent, manipulative and/or deceptive scheme include: (1) Dexia's loans to shell

corporations created by L&H and controlled by L&H and/or its principals, which shell

corporations, in turn, funded (with the monies loaned by Dexia) Language Development

Corporations ("LDCs") that had no legitimate business operations. Dexia knew that the funds it

loaned were being paid to L&H by the LDCs in the form of sham licensing fees and that L&H

improperly recognized these amounts as revenue. These transactions include, but are not

necessarily limited to: (a) Dexia's loan of approximately $6 million dollars to Radial Belgium

N.V. ("Radial") with knowledge that Radial would, in turn, fund three LDCs, that these LDCs

would pay the $6 million to L&H as fraudulent licensing fees (and royalties); Dexia agreed to

this loan because it was guaranteed by credit swap transactions whereby L&H's senior officers

guaranteed the funds Dexia loaned to Radial; the guarantees were structured to avoid disclosure

of the guarantees to anyone, including the SEC and/or the investing public; (b) Dexia's loan of

approximately $6 million to Language Investment Co. ("LIC"), which established and funded a

separate group of LDCs to pay fraudulent licensing fees to L&H, and the fees from those LDCs

were also fraudulently reported as revenue; Dexia's loan to LIC was also guaranteed by credit

swaps so that, L&H could avoid disclosing the guarantees to the SEC or the investing public; and

(c) Dexia's funding to the Language Development Fund ("LDF") to establish and fund six LDCs

(different from the LDCs established and funded by either Radial or LIC), with knowledge that

these LDCs funded by LDF were used to funnel the funds provided by Dexia back to L&H

through sham license agreements; Dexia provided these funds via a personal line of credit to

Lernout, Hauspie and Willaert, which was designed to permit L&H to record the funds it

received from the LDCs as revenue without reporting that the funds were guaranteed by L&H's

senior officers.

   (2) as addressed above, Dexia further participated in the scheme to permit the fraudulent

revenue recognition by L&H by structuring the security for its loans to Radial and LIC as credit

swaps with L&H's Senior Officers and by structuring its loan for LDF as a personal line of credit

to L&H Senior Officers with the intention that such guarantees would not be disclosed to the

SEC and investors;

   (3) Dexia's funding of BTG, lending BTG a total of $22.9 million, including its initial

funding, with the intent that L&H would find external investors to repay the loan and in a

manner that permitted L&H to hide the identity of the investors in BTG; Dexia knew that L&H

entered into license and research and development agreements with BTG and also L&H reported

as revenue from those agreements what should have been disclosed as research and development

expenses; when L&H subsequently purchased BTG at far more than the fair value of its assets,

L&H was able to capitalize the purchase price, once again turning what should have been

reported as an expense into an asset; and

(4) Dexia also participated in the above referenced scheme by participating in L&H's agreements with Vasco Data Security International ("Vasco"). L&H entered into a license agreement with Vasco although the "license fee" was no more than a fee for a $3 million loan from L&H. L&H subsequently entered into a second, backdated license agreement with Vasco for a second "license fee" under threat that it would call the loan if Vasco did not agree to backdate the license agreement; L&H fraudulently recognized the revenue from the alleged license fees in 1998. Dexia managed and organized the private placement of Vasco stock, the proceeds of which Vasco used, in part, to repay L&H and which permitted L&H, through its related and affiliated parties, to obtain an ownership interest in Vasco and place Pol Hauspie on Vasco's Board of Directors.

(5) Dexia also concealed its participation in the scheme from the investigators retained by the Audit Committee, as set forth in paragraph 115 of the Complaint.

As a result of Dexia's participation in the fraudulent, manipulative and/or deceptive scheme to materially and falsely inflate L&H's revenues, profits and stock prices, L&H improperly and fraudulently booked and publicly reported millions of dollars of revenue and profits and publicly reported a pattern of growing earnings. Further, as a result of Dexia's participation in the fraudulent, manipulative and/or deceptive scheme L&H publicly issued a series of announcements and/or press releases touting the validity of the LDC concept and its effect on L&H's growth of revenue and profits, including organic growth of revenue. Dexia's participation in these schemes was directly responsible for the artificial inflation of the value of L&H's stock, causing Plaintiffs damages when the fraudulent, manipulative and/or deceptive scheme, and the consequences thereof were disclosed. Once L&H's true condition became public knowledge, L&H's stock became worthless. Dexia's actions are also, in part, responsible

7

for the civil and criminal investigations of L&H, L&H's Senior Officers, L&H's related

companies and Dexia itself in either the United States, Belgium or both. Public disclosure of

those investigations also reduced the value of L&H stock.

**Interrogatory No. 2:**

**State each date on which alleged conduct by Artesia caused the price of L&H common stock to decline and, for each such date, identify any Disclosure which led to that decline.**

**Response to Interrogatory No. 2:**

Plaintiffs object to this Interrogatory on the ground that the information sought is not

relevant to any claim or defense of any party in so far as this Interrogatory misapprehends the

law governing Plaintiffs' claims. Plaintiffs further object to this Interrogatory as premature and

harassing because it calls for expert testimony prior to the time when such testimony must be

provided pursuant to the Court's June 2, 2005 Scheduling Order, and because Plaintiffs'

investigation of Dexia's actions and omissions is ongoing, and Plaintiffs have not received all

relevant documents in the control of Dexia and/or third parties, completely analyzed such

documents, taken deposition testimony from the persons who created the documents and/or were

familiar with them and the activities they describe, or engaged expert witnesses, to the extent

required to formulate opinions based upon the factual record developed in this case. Until this

process has been concluded, Plaintiffs cannot provide a fully complete response to this

Interrogatory. Subject to and without waiving these objections and based on the current state of

the discovery and information gathering, Plaintiffs state that the price of L&H's stock declined

from July 2000 to December 2000 (included) as a result of a series of revelations,

announcements and releases of information by L&H and others that the revenues and profits

L&H had previously publicly reported were fraudulently inflated as a result of the scheme in

which Dexia substantially participated. Plaintiffs will provide expert testimony responsive to

8

this Interrogatory at the time required by Fed. R. Civ. P. 26(a)(2). Moreover, the issue as to whether this Interrogatory is proper at this time is currently *sub judice* on Dexia's Motion to Compel Documents and Interrogatory Responses from Class Plaintiffs. If a decision of the Court requires amending this response, Plaintiffs will do so at the appropriate time.

**Interrogatory No. 3:**

**For each relevant quarter, state separately the amount of publicly reported L&H revenue that was attributable to each of (a) the Radial Loan; (b) the LIC Loan, (c) the Personal Loan, and (d) the Vasco Private Placement.**

**Response to Interrogatory No. 3:**

Plaintiffs object to this Interrogatory, (i) on the ground that the information sought is not relevant to any claim or defense of any party in so far as this Interrogatory misapprehends the law governing Plaintiffs' claims, (ii) as vague and ambiguous, (iii) to the extent it assumes the fraudulently inflated revenues, profits and stock price of L&H and the publicly reported growth of L&H's revenues and profits resulting from the fraudulent, manipulative and/or deceptive scheme described in the Complaint and in which Dexia substantially participated are somehow limited to "revenue that was attributable" to a particular loan or transaction, (iv) as premature, because it calls for expert testimony prior to the time when such testimony must be completed pursuant to the Court's June 2, 2005 Scheduling Order, (v) and because Plaintiffs' investigation of Dexia's actions and omissions is ongoing, and Plaintiffs have not received all relevant documents in the control of Dexia and/or third parties, completely analyzed such documents, taken deposition testimony from the persons who created the documents and/or were familiar with them and the activities they describe, or engaged expert witnesses, to the extent required to formulate opinions based upon the factual record developed in this case. Until this process has been concluded, Plaintiffs cannot provide a fully complete response to this interrogatory.

9

Plaintiffs further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. Subject to and without waiving these objections, Plaintiffs state that all of the revenue L&H fraudulently recognized and publicly reported from the LDCs owned or controlled by Radial, LIC, and LDF and all of the revenue L&H recognized from Vasco, like other L&H fraudulently recognized and publicly reported revenues, is "attributable" to Dexia's participation in the fraudulent, manipulative and/or deceptive scheme to vastly and fraudulently inflate L&H's revenues, profits and stock price and refer to and incorporate the information from the Complaint. Moreover, the issue as to whether this Interrogatory is proper at this time is currently *sub judice* on Dexia Bank Belgiums's Motion to Compel Documents and Interrogatory Responses From Class Plaintiffs. If necessary and appropriate, Plaintiffs will amend this response at the appropriate time.

**Interrogatory No. 4:**

**State whether you conducted a reasonably diligent investigation of potential claims against Artesia and, if so, state the time period of that investigation, describe all actions taken as part of that investigation and identify any print or electronic media and any computer databases that you reviewed in connection with that investigation.**

**Response to Interrogatory No. 4:**

Plaintiffs specifically object to this Interrogatory on the grounds that it seeks a legal conclusion; that the information sought is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines; and that it is unduly burdensome in so far as it seeks descriptions of "all" actions taken, and identification of "all" print, electronic media and computer databases consulted, during the course of an investigation that began in or about November 2000. Subject to, and without waiving the foregoing specific and general objections, and subject to Dexia's prior agreement that Plaintiffs' response to this Interrogatory does not constitute a waiver of attorney-client privilege or attorney work-product

protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance

LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their

undersigned legal counsel respond as follows:

1.      Plaintiffs and their legal counsel have conducted a reasonably diligent factual

investigation of all of Plaintiffs' potential claims arising out of Plaintiffs' sale of Dictaphone

Corporation ("Dictaphone") for artificially inflated, and ultimately worthless, L&H stock,

including potential claims against Dexia, among others.

2.      Plaintiffs initially contacted legal counsel in or about November 2000 to

commence an investigation into possible claims arising out of the sale of Dictaphone to L&H.

3.      Thereafter, Plaintiffs primarily relied upon their legal counsel to investigate all of

Plaintiffs' potential claims arising out of the sale of Dictaphone to L&H.

4.      Commencing in or about November 2000, and continuing through late June 2003

(see General Objection 4, above), Plaintiffs' legal counsel conducted a reasonably diligent

factual investigation of Plaintiffs' potential claims arising out of the sale of Dictaphone to L&H.

In connection with that investigation, Plaintiffs and their legal counsel took the following

actions:

a.      On an on-going basis, counsel for Plaintiffs researched, reviewed and analyzed

publicly available information concerning, *inter alia*, L&H, L&H Korea and L&H Singapore

(collectively "L&H Entities"), the officers, directors, auditors, and legal advisors of L&H

Entities, entities owned by officers and directors of L&H Entities, Brussels Translation Group,

Velstra Ptd Ltd., Radial NV, the Language Development Companies and Cross-Language

Development Companies, and Mercator & Noordstar, N.V., including but not limited to publicly

available information appearing in or available from The Wall Street Journal, The New York Times, Bloomberg, Dow Jones, Lexis-Nexis, Westlaw, Edgar, and Pacer.

    b.    Prior to the time when Plaintiffs were permitted to serve merits discovery in the L&H Litigation, the diligent investigation of potential claims by counsel for Plaintiffs included that counsel:

        i.    Plaintiffs counsel consulted with a forensic accounting firm to analyze L&H's financial results;

        ii.    coordinated with plaintiffs' counsel in the L&H related actions the procurement of information from the SEC (through the Freedom of Information Act) concerning its investigation of L&H;

        iii.    obtained, reviewed, and analyzed an English translation of the Report of KPMG Auditors as Ordered by the Court of Commerce of Ieper by Judgment on January 5, 2001, dated April 12, 2001;

        iv.    obtained, reviewed, and analyzed an English translation of the Report of the Statutory Auditor on the Statutory Accounts Submitted to the General Shareholders' Meeting of L&H, dated June 14, 2001;

        v.    obtained, reviewed, and analyzed 32 boxes of documents produced to the SEC by L&H, which were not publicly available;

        vi.    obtained, reviewed, and analyzed the Report of Findings and Recommendations to the Audit Committee of L&H by Bryan Cave LLP and Loeff Claeys Verbeke, dated November 20, 2000, which was not publicly available;

        vii.    coordinated with other plaintiffs' counsel in the L&H related actions to serve subpoenas on Arthur Andersen LLP, KPMG LLP and PricewaterhouseCoopers LLP

seeking documents concerning their audits and investigations of L&H Entities;

    viii. obtained, reviewed and analyzed (jointly with other law firms representing plaintiffs in the L&H Litigation) 23 CDs of documents produced to the SEC by L&H, which were not publicly available; and

    ix. coordinated with other plaintiffs' counsel in the L&H related actions to obtain (by motion in the L&H Litigation) an order from the U.S. District Court for the District of Massachusetts directing Arthur Andersen LLP to preserve documents relevant to the L&H Litigation and deliver same to the Court, and served a subpoena on Arthur Andersen LLP pursuant to that order;

  c. The diligent investigation of potential claims by counsel for Plaintiffs also included that counsel:

    i. through discovery in the L&H Litigation, commencing in or about September 2002 and continuing through late June 2003, obtained, reviewed, and analyzed documents and deposition testimony, including documents of L&H, and documents of legal advisors, financial advisors, and customers of the L&H Entities. The discovery materials obtained in the L&H Litigation are identified with specificity in Plaintiffs' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) dated April 15, 2005, and copies thereof have been made available to Dexia Bank Belgium in discovery. The ability of counsel for Plaintiffs to obtain discovery in the L&H Litigation was delayed by, among other things: (A) the automatic stay under the Private Securities Litigation Reform Act; (B) the bankruptcy of L&H, which among other things necessitated that counsel travel to Belgium to review L&H documents, after obtaining relief from the automatic stay in the United States Bankruptcy Court for the District of Delaware; and (C) the fact that Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren ("KPMG

Belgium") strenuously resisted providing discovery, based on its assertion of an auditor-client privilege, with the result that Plaintiffs first obtained KPMG-Belgium's workpapers of L&H audits beginning only in or about June 2004, more than a year after Plaintiffs filed suit against Dexia.

        ii.    in or about June 2003, obtained, reviewed, and analyzed an English translation of the report dated May 28, 2001, and titled "Onderzoek Naar de Omzet Generealiseerd op de Language Development Companies Revenue Recognition Consolidatie – en Related Party Problematiek, Deel II" (the "LDC Report") prepared for the Belgian Investigating Magistrate, which was not publicly available or previously available to plaintiffs or their counsel.

**Interrogatory No. 5:**

**Identify each person who conducted any investigation leading to the allegations in the Complaint, and state, for each such person, the time period of his or her involvement in that investigation.**

**Response to Interrogatory No. 5:**

      Plaintiffs specifically object to this Interrogatory on the grounds that the information sought is not relevant to any claim or defense of any party, and is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines. Plaintiffs further specifically object to this Interrogatory to the extent that it seeks information that is not available to Plaintiffs in so far as certain allegations in the Complaint are based upon investigations conducted by persons who were not employees or agents of Plaintiffs or their legal counsel, including but not limited to the authors of the *Report of Findings and Recommendations to the Audit Committee of L&H* by Bryan Cave LLP and Loeff Claeys Verbeke, dated November 20, 2000, the *L&H Korea Report* prepared by PricewaterhouseCoopers LLP, the LDC Report,

and numerous press reports. Plaintiffs further object to this Interrogatory on the grounds that it is

overly broad and unduly burdensome in light of the fact that counsel for Plaintiffs commenced

investigating potential claims arising out of the sale of Dictaphone to L&H in or about

November 2000, and that investigation involved numerous persons whose functions were

primarily administrative or who acted primarily as translators. Plaintiffs also object to the

requests that Plaintiffs provide the "time period" of the involvement of each individual person in

the investigation on the grounds that it is burdensome and not relevant.

Subject to and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to this Interrogatory does not

constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected

in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is

annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the

Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal

counsel respond that the following attorneys were primarily responsible for conducting the

factual investigations leading to the allegations in the Complaint:

(a) Max W. Berger, Steven B. Singer, J. Erik Sandstedt, Jerry Silk, Javier Bleichmar, Avi

Josefson, Deborah Sturman and Steve Mellen, each of whom is or was an attorney at Bernstein

Litowitz Berger & Grossmann LLP ("BLB&G"). BLB&G has been involved in the investigation

of Stonington's claims from approximately April 2001 to date;

(b) Alan S. Goudis, H. Miriam Farber and Thomas Childs at Shearman & Sterling,

located at 599 Lexington Avenue, New York, New York 10022, which was involved in the

investigation from about November 2000 through approximately April 2001; and

(c) David C. McBride, Josy W. Ingersoll, John Shaw, and John J. Paschetto at Young

Conaway Stargatt & Taylor LLP, located at Rodney Square North, P.O. Box 391, Wilmington,

Delaware 19899, which was involved in the investigation from about November 2000 through

approximately April 2001.

**Interrogatory No. 6 (a):**

**State the date on which you first discovered information showing that L&H and its Senior Officers were engaged in a scheme to defraud L&H investors that involved improper revenue recognition from transactions with Dictation Consortium and/or Brussels Translation Group.**

**Response to Interrogatory No. 6(a):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and

ambiguous, and the information sought is not relevant to any claim or defense of any party and is

protected by the attorney client privilege, the attorney work product doctrine, and other

applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise

date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(a) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected

in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is

annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the

Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal

counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate

Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal

counsel did not maintain a contemporaneous record of the date on which counsel first discovered

information showing a scheme to defraud L&H investors that involved improper revenue

recognition from transactions with Dictation Consortium and Brussels Translation Group; and

(3) Plaintiffs, or their legal counsel, may have first learned of information that tended to show the

fraudulent scheme, acts, practices, course of business, statements and omissions of material facts

to artificially inflate the revenue and stock price of L&H from transactions with Dictation

Consortium and Brussels Translation Group in or about December 2000.

**Interrogatory No. 6 (b):**

**State the date on which you first discovered information showing that L&H and its Senior Officers were engaged in a scheme to defraud L&H investors that involved improper revenue recognition from transactions with Language Development Companies.**

**Response to Interrogatory No. 6(b):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and

ambiguous, and the information sought is not relevant to any claim or defense of any party and is

protected by the attorney client privilege, the attorney work product doctrine, and other

applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise

date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(b) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (which

agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance

LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their

undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal

counsel to investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H;

(2) Plaintiffs' legal counsel did not maintain a contemporaneous record of the date on which

counsel first discovered information tending to show a scheme to defraud L&H investors that

17

involved improper revenue recognition from transactions involving Language Development

Companies; and (3) Plaintiffs, or their legal counsel, may have first learned of information that

tended to show the fraudulent scheme, acts, practices, course of business, statements and

omissions of material facts to artificially inflate the revenue and stock price of L&H from

transactions with the Language Development Companies beginning in or about the summer of

2000.

**Interrogatory No. 6 (c):**

**State the date on which you first discovered information showing that L&H and its Senior Officers were engaged in a scheme to defraud L&H investors that involved improper revenue recognition from transactions with Vasco.**

**Response to Interrogatory No. 6(c):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and

ambiguous, and the information sought is not relevant to any claim or defense of any party and is

protected by the attorney client privilege, the attorney work product doctrine, and other

applicable privileges and doctrines.  Plaintiffs further object to the request to identify a precise

date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and

subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(c)

does not constitute a waiver of attorney-client privilege or attorney work-product protection (as

reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of

which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the

Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal

counsel respond as follows:  (1) Plaintiffs primarily relied upon their legal counsel to investigate

Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal

counsel did not maintain a contemporaneous record of the date on which counsel first discovered

information tending to show a scheme to defraud L&H investors that involved improper revenue recognition from transactions involving Vasco; and (3) Plaintiffs, or their legal counsel, may have first learned of information that tended to show that L&H may have used revenue from transactions involving Vasco as a part of the fraudulent scheme, acts, practices, course of business, statements and omissions of material facts to artificially inflate the revenue and stock price of L&H as it relates to transactions regarding Vasco beginning in or about October 2001.

**Interrogatory No. 6 (d):**

**State the date on which you first discovered information showing that Artesia loaned money to Dictation Consortium and/or Brussels Translation Group.**

**Response to Interrogatory No. 6(d):**

     Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and ambiguous, and the information sought is not relevant to any claim or defense of any party and is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines.  Plaintiffs further object to the request to identify a precise date of discovery, as that is unduly burdensome and not feasible.

     Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(d) does not constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal counsel respond as follows:  (1) Plaintiffs primarily relied upon their legal counsel to investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal counsel did not maintain a contemporaneous record of the date on which counsel first discovered

information tending to show that Dexia had loaned money to Dictation Consortium and/or

Brussels Translation Group; (3) Plaintiffs, or their legal counsel, may have first obtained

information that tended to show that Dexia loaned money to Brussels Translation Group in or

about June or July 2003; and (4) Plaintiffs, or their legal counsel, first obtained information

tending to show that Dexia may have loaned money to Dictation Consortium in or about October

2001.

**Interrogatory No. 6 (e):**

**State the date on which you first discovered information showing that Artesia loaned
money to one or more Language Development Companies doing business with L&H.**

**Response to Interrogatory No. 6(e):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and

ambiguous, and the information sought is not relevant to any claim or defense of any party and is

protected by the attorney client privilege, the attorney work product doctrine, and other

applicable privileges and doctrines.  Plaintiffs further object to the request to identify a precise

date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and

subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(e)

does not constitute a waiver of attorney-client privilege or attorney work-product protection (as

reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of

which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the

Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal

counsel respond as follows:  (1) Plaintiffs primarily relied upon their legal counsel to investigate

Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal

counsel did not maintain a contemporaneous record of the date on which counsel "first

20

discovered information tending to show a scheme to defraud L&H investors that involved loans from Dexia to the Language Development Companies; and (3) Plaintiffs do not allege that Dexia directly loaned money to one or more of the Language Development Companies.

**Interrogatory No. 6 (f):**

**State the date on which you first discovered information showing that Artesia loaned money to one or more L&H Senior Officers.**

**Response to Interrogatory No. 6(f):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and ambiguous, and the information sought is not relevant to any claim or defense of any party and is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise date of discovery, as that is unduly burdensome and not feasible.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(f) does not constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal counsel did not maintain a contemporaneous record of the date on which counsel first discovered information tending to show that Dexia loaned money to one or more L&H Senior Officers; and (3) Plaintiffs, or their legal counsel, may have first learned of information that tended to show that Dexia had extended a personal loan to a Senior Officer in or about August 2000.

21

**Interrogatory No. 6 (g):**

**State the date on which you first discovered information showing that Artesia managed a $11.5 million private placement of common stock for Vasco.**

**Response to Interrogatory No. 6(g):**

Plaintiffs specifically object to this Interrogatory on the grounds that it is vague and ambiguous, and the information sought is not relevant to any claim or defense of any party and is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines. Plaintiffs further object to the request to identify a precise date of discovery as that is unduly burdensome and not feasible, and on the ground that the interrogatory incorrectly implies that Artesia was the sole manager of a $11.5 million private placement of common stock for Vasco.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(g) does not constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as Exhibit A), and the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs' legal counsel did not maintain a contemporaneous record of the date on which counsel first discovered that Artesia and Bank Degroof jointly managed a $11.5 million private placement of Vasco common stock; and (3) Plaintiffs, or their legal counsel, may have first learned of information that reflected the joint roles of Artesia and Bank Degroof in the Vasco private placement in or about June 2003.

Dated: September 20, 2005

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Steven B. Singer
Javier Bleichmar
Victoria Wilheim
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400 (phone)
(212) 554-1444 (fax)

- and -

**LOONEY & GROSSMAN, LLP**

Richard J. Grahn (BBO #206620)
Charles P. Kindregan (BBO # 554947
101 Arch Street
Boston, Massachusetts 02110
(617) 951-2800 (phone)
(617) 951-2819 (fax)

Attorneys for the Stonington Plaintiffs.

23

## VERIFICATION OF COUNSEL

I verify that the foregoing responses to Interrogatories 4, 5 and 6 and the objections to all Interrogatories are true and correct.

Executed on September 20, 2005.

Javier Bleichmar
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, New York 10019
212-554-1400

24

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served to counsel in the attached service list by electronic mail on September 20, 2005.

### *STONINGTON PARTNERS, INC.  v. DEXIA BANK BELGIUM*

### SERVICE LIST

1.     **Counsel for Stonington Partners, et al.**

Steven B. Singer, Esq.
Erik Sandstedt, Esq.
Javier Bleichmar, Esq.
Avi Josefson, Esq.
**BERNSTEIN LITOWITZ, BERGER & GROSSMAN LLP**
1285 Avenue of the Americas
New York, NY 10019
*(212) 554-1400*

2.     **Co-Lead Counsel for the Lead Plaintiffs**

Glen DeValerio
Jeffrey C. Block, Esq.
Patrick T. Egan, Esq.
**BERMAN, DEVALERIO PEASE
        TABACCO BURT & PUCILLO**
One Liberty Square
Boston, MA 02109
(617) 542-8300

J. Allen Carney, Esq.
Causley Bowman Carney & Williams, PLLC
11001 Executive Center Drive, Suite 200
PO Box 25438
Little Rock, AR 72221-5438
(501) 312-8505

James P. Bonner, Esq.
Patrick L. Rocco, Esq.
**SHALOV STONE & BONNER**
485 7th Avenue, Suite 1000
New York, New York 10018
(212) 239-4340

3.     **Counsel for Filler, et al.**

Gregory P. Joseph, Esq.
Susan M. Davies, Esq.
**GREGORY P. JOSEPH LAW OFFICES, LLC**
805 Third Avenue

31st Floor
New York, NY 10022
(212) 407-1210


4.     **Counsel for Baker, et al**

Karen C. Dyer, Esq.
George C. Coe, Esq.
**BOIES, SCHILLER & FLEXNER LLP**
255 S. Orange Avenue
Suite 905
Orlando, FL 32801-3456
(407) 425-7118

Alan K. Cotler, Esq.
Joan Yue, Esq.
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 10103-4301
(215) 851-8100

Terence K. Anker, Esq.
**Law Offices of Patridge, Akner**
**& Horstmann LLP**
200 Berkely St., 16th Floor
Boston, MA 02116
(617) 859-9999

5.     **Counsel for Defendant Dexia Bank Belgium**

James B. Weidner, Esq.
Jeff E. Butler, Esq.
**Clifford Chance US LLP**
31 West 52nd Street
New York, NY 10019
Tel: 212-878-8205
Fax: 212-878-8375
Jeff.Butler@CliffordChance.com

Peter M. Saparoff, Esq.
**MINTZ LEVIN COHN FERRIS**
    **GLOVSKY AND POPEO, PC**
One Financial Center
Boston, MA 02111

# **EXHIBIT A**

# CLIFFORD
# CHANCE

**CLIFFORD CHANCE US LLP**

31 WEST 52ND STREET
NEW YORK NY 10019 6131

TEL +1 212 878 8000
FAX +1 212 878 8375
www.cliffordchance.com

**Jeff E. Butler**

DIRECT TEL  212-878-8205
DIRECT FAX  212-878-8375
jeff.butler@cliffordchance.com

August 19, 2005

VIA FACSIMILE

To:     Counsel on attached list

Re:     *Quaak v. Dexia Bank Belgium*
        *Stonington v. Dexia Bank Belgium*
        *Filler v. Dexia Bank Belgium*
        *Baker v. Dexia Bank Belgium*

Dear Counsel:

This letter confirms my telephone conversation yesterday with Susan Davies and George Coe.

*First*, as Plaintiffs have requested, Dexia and its counsel hereby agree that responses to Dexia Bank Belgium's Second Set of Interrogatories to Class Plaintiffs, Dexia Bank Belgium's First Set of Interrogatories to the Stonington Plaintiffs, Dexia Bank Belgium's First Set of Interrogatories to the TRA Rights Trust and Dexia Bank Belgium's First Set of Interrogatories to the Baker Plaintiffs shall not constitute a waiver of any privilege or other immunity from disclosure, including, but not limited to, the attorney-client privilege and the attorney work-product protection, that may apply to such responses. Dexia and its counsel further agree that they will not argue before any Court that the aforementioned responses constitute a waiver of any privilege or other immunity from disclosure.

*Second*, as Plaintiffs have requested, Dexia agrees that the deadline for serving responses to the interrogatories referenced above shall be extended to September 20, 2005.

*Third*, we have previously informed you that Dexia was working to complete its document production (with the exception of documents from backup tapes) by the beginning of September. It is now clear that we will not be able to meet that target. We now expect our document production (with the possible exception of documents from backup tapes) to be substantially complete in late September or early October.

Sincerely,

Jeff E. Butler

NYB 1508617.1

Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>Defendants | Civil Action No.: 03-11566 (PBS) |

## CLASS PLAINTIFFS' AMENDED RESPONSES AND OBJECTIONS TO DEXIA BANK BELGIUM'S SECOND SET OF INTERROGATORIES

Class Plaintiffs Hans A. Quaak, Attilio Po and Karl Leibinger (collectively, "Plaintiffs") hereby respond and object to Defendant Dexia Bank Belgium's Second Set Of Interrogatories to Class Plaintiffs (the "Interrogatories") as follows:

## GENERAL OBJECTIONS

These General Objections are incorporated into each specific response and objection hereinafter set forth, whether generally or as to each or any specific Interrogatory, Definition or Instruction, as if fully set forth therein, and will not be repeated in each specific response or objection. The provision of any information in response to an Interrogatory is not, and shall not be construed as, an admission of the propriety of such Interrogatory. Plaintiffs reserve the right to amend these responses and objections. All information provided in response to an Interrogatory will be subject to the objections contained herein.

1.  Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent

1

they, individually or cumulatively, purport to impose duties and/or obligations beyond those required by the Federal Rules of Civil Procedure or the Local Rules or Orders of this Court.

2.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they are overbroad, harassing, vague or ambiguous, and to the extent that the discovery sought is unreasonably cumulative, duplicative, disproportionate or unduly burdensome.

3.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that any Interrogatory is premature inasmuch as it purports to call for opinions, including expert opinions, or contentions relating to fact or to the application of law to fact that Plaintiffs would not be required to disclose until all discovery has been completed or at such later time as the Court may direct.

4.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that the information sought is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or doctrine, Rule 26(b)(3) of the Federal Rules of Civil Procedure relating to trial preparation materials, or is otherwise privileged or immune from discovery.  This objection includes, but is not limited to, information requested by defendants that relates to mental impressions, conclusions, opinions, or legal theories of Plaintiffs' attorneys or representatives concerning the litigation or that seeks information regarding communications between Plaintiffs and any attorneys representing Plaintiffs or the communications between Plaintiffs' attorneys and the attorneys representing plaintiffs in any related actions.

5.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent they seek information or documents that are not relevant to the claims or defenses of any party.

6.      Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent

that they purport to call for information not within the possession, custody or control of Plaintiffs.

7.     Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information not maintained by Plaintiffs in the usual course of business.

8.     Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they purport to call for information in the possession of Plaintiffs that was obtained from a third party under an express agreement of confidentiality.

9.     Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they state or assume legal conclusions.  In providing these responses and objections to the Interrogatories, Plaintiffs do not admit the factual or legal premise of any of the Interrogatories.

10.     Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they call for information that relates to matters not raised by the pleadings, or that is not material and necessary to the prosecution or defense of this action, or that is not reasonably calculated to lead to the discovery of admissible evidence.

11.     Plaintiffs object to the definition of "L&H Litigation" as overbroad to the extent it encompasses actions that are not or were not brought by Plaintiffs.  Plaintiffs will define "L&H Litigation" as limited to *In re: Lernout & Hauspie Securities Litigation*, 00-CIV-11589 (PBS).

12.     Plaintiffs object to the Interrogatories, Definitions and Instructions to the extent that they are not subject to any temporal limit.  Except were indicated, Plaintiffs' responses to the Interrogatories will be limited to events that occurred during the period January 1, 1997 through

June 23, 2003.

13.    In providing Responses to the Interrogatories, Plaintiffs do not in any way waive or intend to waive, but rather intend to preserve and are preserving:

(a)    All objections as to competency, relevancy, materiality and admissibility of the Interrogatories and/or the Responses;

(b)    All rights to object on any ground to the use of any of the Responses, or their subject matter, in any subsequent proceedings, including the trial of this or any other action;

(c)    All rights to object on any ground to any further interrogatories or other discovery requests involving or related to the subject matter of the Interrogatories;

(d)    The right to supplement the Responses to the Interrogatories prior to trial; and

(e)    Any and all privileges or rights arising under applicable Federal Rules of Civil Procedure, Local Rules of this Court, other statutes, and/or the common law.

14.    In addition to the General Objections set forth above, Plaintiffs also state additional specific objections to the Interrogatories where appropriate.  By setting forth such specific objections, Plaintiffs do not intend to limit or restrict the General Objections set forth above.  To the extent that Plaintiffs respond to the specific Interrogatories, any stated objections are not waived by providing Responses.  In addition, the inadvertent disclosure of privileged information shall not constitute a waiver of any applicable privilege.

15.    Plaintiffs hereby designate as confidential their responses to Interrogatories 12 and 13(a) through 13(g) below, pursuant to the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005 and entered by the Court in this action.

4

## OBJECTIONS TO DEFINITIONS

1.    Plaintiffs object to the Definition of "Artesia" as vague in so far as it refers to

"Paribas" as a predecessor entity to Artesia. Plaintiffs will construe the reference to Paribas to

mean Banque Paribas Belgium.

2.    Plaintiffs object to the Definition of "You" and "Your" as overly broad, vague,

ambiguous, exceeding the scope of permissible discovery, and not reasonably calculated to lead

to the discovery of admissible evidence. Plaintiffs will construe references to "you" to mean

Hans A. Quaak, Karl Leibinger and Atillio Po.

* * * * *

Subject to and without waiver of the foregoing General Objections, each of which is

hereby incorporated into each of Plaintiffs' responses and specific objections to each

Interrogatory, Plaintiffs respond as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

**Interrogatory No. 11:**

**Identify each act or omission of Artesia that you claim violated Section 10(b) of the Securities Exchange Act of 1934 and, for each such act or omission, describe how such act or omission caused the loss for which you seek to recover damages.**

**Response to Interrogatory No. 11:**

Plaintiffs object to this Interrogatory as premature because their investigation of Dexia

Bank Belgium's (hereinafter "Dexia's, which term includes "Artesia") actions and omissions is

ongoing, and Plaintiffs have not received all relevant documents in the control of Dexia and/or

third parties, completely analyzed such documents, taken deposition testimony from the persons

who created the documents and/or were familiar with them and/or the activities they describe, or

engaged expert witnesses, to the extent required to formulate opinions based upon the factual

record developed in this case. Until this process has been concluded, Plaintiffs cannot provide a fully complete response to this Interrogatory. Plaintiffs further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine and as calling for legal conclusions.

Subject to and without waiving the foregoing objections, Plaintiffs incorporate by reference as if set forth fully herein paragraphs 1-20; and 52-129 of the Complaint filed in this case. Plaintiffs further state that Dexia substantially participated in a fraudulent, manipulative and/or deceptive scheme to artificially inflate L&H's publicly reported revenues and profits, to show growing revenues and profits, as well as to artificially inflate the value of L&H stock. Dexia's acts, practices, course of business and conduct to structure, implement and further this fraudulent, manipulative and/or deceptive scheme include:

(1) Dexia's loans to shell corporations created by L&H and controlled by L&H and/or its principals, which shell corporations, in turn, funded (with the monies loaned by Dexia) Language Development Corporations ("LDCs") that had no legitimate business operations. Dexia knew that the funds it loaned were being paid to L&H by the LDCs in the form of sham licensing fees and that L&H improperly recognized these amounts as revenue. These transactions include, but are not necessarily limited to: (a) Dexia's loan of approximately $6 million dollars to Radial Belgium N.V. ("Radial") (granted on or about September 29, 1998, and extended beyond its original maturity date of December 31, 1998 on or about April 20, 1999 and again on or about September 30, 1999) with knowledge that Radial would, in turn, fund three LDCs, that these LDCs would transmit the $6 million to L&H as fraudulent licensing fees (and royalties); Dexia agreed to this loan because it was guaranteed by credit default swap transactions whereby L&H's Senior Officers guaranteed the funds Dexia loaned to Radial; the guarantees were structured to

6

keep the role of L&H and its Senior Officers in the loan secret from the SEC or the investing

public; (b) Dexia's loan of approximately $6 million to Language Investment Co. ("LIC")

(granted on or about December 17, 1998, and extended beyond its original maturity date of June

30, 1999 on or about September 30, 1999), which established and funded a separate group of

LDCs to pay fraudulent licensing fees to L&H, and the fees from those LDCs were also

fraudulently reported as revenue; Dexia's loan to LIC was also guaranteed by credit default

swaps that were structured to keep the role of L&H and its Senior Officers in the loan secret

from the SEC or the investing public; and (c) Dexia's June 25, 1999 personal line of credit to

L&H Senior Officers for Language Development Fund ("LDF") to establish and fund six LDCs

(different from the LDCs established and funded by either Radial or LIC), with knowledge that

these LDCs funded by LDF were used to funnel the funds provided by Dexia back to L&H

through sham license agreements and to permit L&H to improperly and fraudulently record the

funds it received from the LDCs as revenue but conceal the fact that the funds were guaranteed

by L&H's Senior Officers;

      (2) as addressed above, Dexia further participated in the scheme to permit the fraudulent

revenue recognition by L&H by structuring the security for its loans to Radial and LIC as credit

default swaps with L&H's Senior Officers and by structuring its loan for LDF as a personal line

of credit to L&H Senior Officers with the intention that L&H and its Senior Officers' roles in the

loans would not be disclosed to the SEC or investors;

      (3) Dexia's funding of the development within L&H of machine translation technology

by means of loans to shell corporation BTG, which loans were granted at various times including

on or about March-May 1997 and March 31, 1998 and were, at least in part, secured by the

secret personal guarantees of L&H's Senior Officers; which guarantees were not referenced in

7

any of the BTG loan documents because Dexia knew that the purpose of the loan was to enable L&H to recognize as revenue funds received from BTG under a Software Development and Commercialization Agreement that should have appeared on L&H's balance sheets as research and development expenses, and Dexia also knew that L&H could not properly recognize these amounts as revenue under US GAAP because the Software Development and Commercialization Agreement with BTG was not a commercial transaction between unrelated parties. Dexia funded BTG with the intent that L&H would find external investors to repay the loan and in a manner that permitted L&H to hide the identity of the investors in BTG. When L&H subsequently purchased BTG in or about June 1999 at far more than the fair value of its assets, L&H capitalized the purchase price, once again turning what should have been reported as an expense into an asset;

(4) Dexia also participated in the above referenced scheme by participating in L&H's agreements with Vasco Data Security International ("Vasco"). In or about March 1998, L&H entered into a license agreement with Vasco although the "license fee" was no more than a fee for a $3 million loan from L&H. In or about January 1999, when Vasco was unable to pay back the loan (which was due on January 4, 1999), L&H entered into a second license agreement with Vasco (backdated to December 31, 1998) for a second "license fee," under threat that it would call the loan if Vasco did not agree to backdate the license agreement; L&H fraudulently recognized the revenue from the alleged license fees in 1998. In or about March-April 1999, Dexia co-managed and organized the private placement of Vasco stock which was completed on April 15, 1999, the proceeds of which Vasco used, in part, to repay L&H and which permitted L&H, through its related and affiliated parties, to obtain an ownership interest in Vasco and place Pol Hauspie on Vasco's Board of Directors; and

8

(5) Dexia fraudulently concealed its participation in the fraudulent scheme to artificially

inflate L&H's publicly reported revenues and profits, to show growing revenues and profits, as

well as to artificially inflate the value of L&H stock in a number of ways: (a) as discussed above,

Dexia structured transactions so that none of personal guarantees for the loan to BTG or the

credit default swaps entered into in connection with the loans to Radial and LIC were mentioned

in the loan documents to conceal the fact that Jo Lernout, Pol Hauspie and Nico Willaert had

secretly guaranteed loans to sham entities that were transmitting the loaned funds to L&H to be

improperly recognized as revenue and that L&H's transactions with BTG and the LDCs were

related-party transactions without economic substance; (b) Dexia misled L&H's Audit

Committee and the Committee's agents about Dexia's role in the LDCs scheme.  Specifically, on

November 24, 2000, Dexia sent a letter to Willem Hardeman of LIC in response to a request he

made at the behest of Loeff Claeys Verbeke, counsel retained by L&H's Audit Committee to

perform an investigation into the fraud at L&H, which stated: "On December 22, 1998,

ARTESIA BANK N.V. granted a credit line to N.V. LANGUAGE INVESTMENT COMPANY

in the amount of BEF 220,000,000; L&H provided no bank guarantees for this loan." This was

false and misleading because it failed to disclose the credit default swaps executed by the

principals of L&H related to the LIC transaction, thus concealing Dexia's critical role in the

fraudulent scheme to artificially inflate L&H's publicly reported revenues and profits, to show

growing revenues and profits, as well as to artificially inflate the value of L&H's stock.  As a

result, the Audit Committee Report makes no mention of Dexia's role in the scheme; (c) on or

about March 16, 2001, the Belgian newspaper *L'Echo* published a story entitled, "L&H: The

Courts Have Heard from a Director of Artesia."  See Exhibit B to Leone-Quick Decl. in Support

of Dexia's motion to dismiss in *Quaak v. Dexia S.A.*, No. 03-CV-11566 (PBS).  The article

reports that Geert Dauwe, one of Dexia's then-directors, was interviewed by Belgian authorities. The article quoted a Dexia spokesperson as stating: "The police invited Mr. Dauwe to respond to questions regarding the L&H case. *Nobody else from the bank has been interrogated.*" (emphasis added). This statement was false and misleading when made and designed to conceal Dexia's role in the scheme to artificially inflate L&H's publicly reported revenues and profits, to show growing revenues and profits, as well as to artificially inflate the value of L&H stock because, prior to the March 16, 2001 publication, at least 5 other officers, directors or managers of Dexia had been interrogated by Belgian authorities in connection with the L&H investigation, some on more than one occasion. Dexia's false public statement about the number of its personnel interrogated in the L&H investigation served to further hide Dexia's role in the scheme, as well as the fact that Dexia's relationship with L&H was under intense scrutiny from the Belgian authorities; and (d) in both the U.S. and in Belgium, Dexia actively has pursued claims in the L&H bankruptcy proceedings, portraying itself as a legitimate creditor entitled to priority over other creditors, rather than a primary actor in the scheme to artificially inflate L&H's publicly reported revenues and profits, to show growing revenues and profits, as well as to artificially inflate the value of L&H stock. In this regard, on or about April 17, 2001, Dexia was awarded 44 million euro from the Commercial Court in Belgium, and continued to proceed with claims in the bankruptcy proceedings.

None of the information in parts (1) through (5) above was disclosed to plaintiffs and the class.

As a result of Dexia's participation in the fraudulent, manipulative and/or deceptive scheme to materially and falsely inflate L&H's revenues, profits and stock prices, L&H improperly and fraudulently booked and publicly reported millions of dollars of revenue and

profits and publicly reported a pattern of growing earnings. Further, as a result of Dexia's

participation in the fraudulent, manipulative and/or deceptive scheme L&H publicly issued a

series of announcements and/or press releases touting the validity of the LDC concept and its

effect on L&H's growth of revenue and profits, including organic growth of revenue. Dexia's

participation in these schemes was directly responsible for the artificial inflation of the value of

L&H's stock, causing Plaintiffs damages when the fraudulent, manipulative and/or deceptive

scheme, and the consequences thereof were disclosed. Once L&H's true condition became

public knowledge, L&H's stock became worthless. Dexia's actions are also, in part, responsible

for the civil and criminal investigations of L&H, L&H's Senior Officers, L&H's related

companies and Dexia itself in either the United States, Belgium or both. Public disclosure of

those investigations also reduced the value of L&H stock.

**Interrogatory No. 12:**

**Identify each person who conducted any investigation leading to the allegations in the Complaint, and state, for each such person, the time period of his or her involvement in that investigation.**

**Response to Interrogatory No. 12:**

Plaintiffs specifically object to Interrogatory No. 12 on the grounds that the information

sought is not relevant to any claim or defense of any party, and is protected by the attorney client

privilege, the attorney work product doctrine, and other applicable privileges and doctrines.

Plaintiffs further specifically object to Interrogatory No. 12 to the extent that it seeks information

that is not available to Plaintiffs in so far as certain allegations in the Complaint are based upon

investigations conducted by persons who were not employees or agents of Plaintiffs or their legal

counsel, including but not limited to the authors of the *Report of Findings and Recommendations

to the Audit Committee of L&H* by Bryan Cave LLP and Loeff Claeys Verbeke dated November

11

20, 2000, the *L&H Korea Report* prepared by PricewaterhouseCoopers LLP, the LDC Report,

and numerous press reports. Plaintiffs further specifically object to Interrogatory No. 12 on the

grounds that it is overly broad and unduly burdensome in light of the fact that as early as August

2000, Plaintiffs, through their counsel commenced investigating potential claims arising out

Plaintiffs' purchases of L&H securities, and that investigation involved numerous persons whose

functions were primarily administrative or who acted primarily as translators. Plaintiffs also

object to the request that Plaintiffs provide the "time period" of the involvement of each

individual person in the investigation on the grounds that it is vague, ambiguous, burdensome

and not relevant.

Subject to and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 12 does not

constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected

in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is

annexed hereto as **Exhibit A**), and subject to the terms of the Stipulation and Order Governing

the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned

legal counsel respond that the following persons were among those responsible for conducting

the factual investigations leading to the allegations in the Complaint; the following list includes

all persons primarily responsible for said investigation:

| NAME | CONTACT INFORMATION | APPROXIMATE TIME PERIOD |
|---|---|---|
| Jeffrey Block | Berman DeValerio Pease Tabacco Burt & Pucillo One Liberty Square Boston, MA 02109 (617) 542-8300 | 9/27/00 – 6/23/03 |
| Glen DeValerio | Berman DeValerio Pease Tabacco Burt & Pucillo | 8/14/00- 6/23/03 |

12

| | One Liberty Square<br>Boston, MA 02109<br>(617) 542-8300 | |
|---|---|---|
| Michael Lange | Berman DeValerio Pease Tabacco<br>Burt & Pucillo<br>One Liberty Square<br>Boston, MA 02109<br>(617) 542-8300 | 8/8/00 - 4/4/02 |
| Michael Matraia | c/o Berman DeValerio Pease Tabacco<br>Burt & Pucillo<br>One Liberty Square<br>Boston, MA 02109<br>(617) 542-8300 | 1/13/01 - 6/23/03 |
| Mark Booker | c/o Berman DeValerio Pease Tabacco<br>Burt & Pucillo<br>One Liberty Square<br>Boston, MA 02109<br>(617) 542-8300 | 5/12/03 - 6/23/03 |
| Patrick Egan | Berman DeValerio Pease Tabacco<br>Burt & Pucillo<br>One Liberty Square<br>Boston, MA 02109<br>(617) 542-8300 | 10/31/00 - 6/23/03 |
| Nicole Starr | Berman DeValerio Pease Tabacco<br>Burt & Pucillo<br>One Liberty Square<br>Boston, MA 02109<br>(617) 542-8300 | 11/20/02 - 6/23/03 |
| Robin Estrin | Berman DeValerio Pease Tabacco<br>Burt & Pucillo<br>One Liberty Square<br>Boston, MA 02109<br>(617) 542-8300 | 4/15/03 - 6/3/03 |
| Tara Gibbs | c/o Berman DeValerio Pease Tabacco<br>Burt & Pucillo<br>One Liberty Square<br>Boston, MA 02109<br>(617) 542-8300 | 3/25/03 - 6/23/03 |
| Christopher Szechenyi | Berman DeValerio Pease Tabacco<br>Burt & Pucillo<br>One Liberty Square<br>Boston, MA 02109<br>(617) 542-8300 | 3/24/03 - 7/31/03 |
| Lee Shalov | Shalov Stone & Bonner LLP<br>485 Seventh Avenue - Suite 1000<br>New York, NY 10018 | 10/00 – 6/23/03 |

13

| | | |
|---|---|---|
| | (212) 239-4340 | |
| Ralph Stone | Shalov Stone & Bonner LLP<br>485 Seventh Avenue - Suite 1000<br>New York, NY 10018<br>(212) 239-4340 | 10/00 - 6/23/03 |
| James Bonner | Shalov Stone & Bonner LLP<br>485 Seventh Avenue - Suite 1000<br>New York, NY 10018<br>(212) 239-4340 | 8/01 - 6/23/03 |
| Patrick Rocco | Shalov Stone & Bonner LLP<br>485 Seventh Avenue - Suite 1000<br>New York, NY 10018<br>(212) 239-4340 | 8/02 - 6/23/03 |
| John Carroll | c/o Shalov Stone & Bonner LLP<br>485 Seventh Avenue - Suite 1000<br>New York, NY 10018<br>(212) 239-4340 | 1/01 - 6/23/03 |
| Kenneth Ricken | c/o Shalov Stone & Bonner LLP<br>485 Seventh Avenue - Suite 1000<br>New York, NY 10018<br>(212) 239-4340 | 2/01 – 8/01 |
| Jill Levy | c/o Shalov Stone & Bonner LLP<br>485 Seventh Avenue - Suite 1000<br>New York, NY 10018<br>(212) 239-4340 | 2/02 – 1/03 |
| Jennifer Sullivan | c/o Shalov Stone & Bonner LLP<br>485 Seventh Avenue - Suite 1000<br>New York, NY 10018<br>(212) 239-4340 | 5/03 - 6/23/03 |
| Curtis Bowman | Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 9/05/00 – 6/23/03 |
| Eugene Brandao | Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 1/27/03 – 6/23/03 |
| Matthew Bucher | Cauley Bowman Carney & Williams<br>11001 Executive Center Drive | 1/08/2002 –<br>6/23/03 |

14

| | Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | |
|---|---|---|
| J. Allen Carney | Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 1/07/2002 –<br>6/23/03 |
| S. Gene Cauley | Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 9/27/2000 –<br>6/23/03 |
| Stuart Cearley | c/o Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 5/13/02 – 7/15/02 |
| Howard K. Coates | c/o Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 8/31/01 - 4/30/03 |
| Gina Cothern | c/o Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 8/17/00- 1/12/02 |
| Paul Geller | c/o Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 10/03/00 – 6/6/02 |
| Melissa Glover | c/o Cauley Bowman Carney & Williams | 1/06/03- 8/19/02 |

15

|  | 11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 |  |
|---|---|---|
| Connie Grace | c/o Cauley Bowman Carney &<br>Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 5/14/02- 5/20/02 |
| James Kauffman | Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 5/12/2003 -<br>6/23/03 |
| Scott Poynter | c/o Cauley Bowman Carney &<br>Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 2/21/01- 12/18/02 |
| Randall Pulliam | c/o Cauley Bowman Carney &<br>Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 5/18/01- 6/23/03 |
| Jack Reise | c/o Cauley Bowman Carney &<br>Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 9/4/02 – 6/23/03 |
| Brian Robbins | c/o Cauley Bowman Carney &<br>Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 12/20/00- 3/5/01 |

| | | |
|---|---|---|
| Deborah Sallings | Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 5/13/02 – 6/23/03 |
| Todd VerWeire | c/o Cauley Bowman Carney &<br>Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 2/21/01 – 1/28/02 |
| Brent Walker | Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 9/05/01 – 6/23/03 |
| W. Woodrow White | W3 Consulting<br>54 Mjorca Drive<br>Hot Springs, AR 71909<br>(501) 984-3535 | 1/01/2001 –<br>6/23/03 |
| Douglas Wilens | c/o Cauley Bowman Carney &<br>Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 8/11/00 - 8/28/01 |
| Tiffany Wyatt | Cauley Bowman Carney & Williams<br>11001 Executive Center Drive<br>Suite 200<br>P.O. Box 25438<br>Little Rock, Arkansas 72221-5438<br>(501) 312-8500 | 10/02/2002 –<br>6/23/03 |
| James Mintz | James Minz Group<br>32 Avenue of Americas<br>New York, NY  10013<br>(212) 489-7100 | 3/01 |
| Ed Frost | James Minz Group<br>32 Avenue of Americas<br>New York, NY  10013<br>(212) 489-7100 | 3/01 – 10/01 |
| Suzanne Clark | James Minz Group<br>32 Avenue of Americas | 3/01 – 10/01 |

17

| | New York, NY 10013<br>(212) 489-7100 | |
|---|---|---|
| Jan Ravelingien | Marx Van Ranst Vermeersch &<br>Partners<br>Tervurenlaan 270 Avenue de<br>Tervueren<br>1150 Brussels, Belgium<br>32 2 285 0100 | 5/01 - 6/23/03 |
| Elizabeth Van Der<br>Biest | c/o Marx Van Ranst Vermeersch &<br>Partners<br>Tervurenlaan 270 Avenue de<br>Tervueren<br>1150 Brussels, Belgium<br>32 2 285 0100 | 2/02 - 6/23/03 |
| Larry Lopez | Strategic Research<br>49 Fayette St.<br>Cambridge, MA 02139<br>(617) 497-6700 | 5/22/03 – 6/11/03 |

**Interrogatory No. 13(a):**

**State the date on which you first discovered information showing that L&H and its Senior Officers were engaged in a scheme to defraud L&H investors that involved improper revenue recognition from transactions with Dictation Consortium and/or Brussels Translation Group.**

**Response to Interrogatory No. 13(a):**

Plaintiffs specifically object to Interrogatory No. 13(a) on the grounds that the

information sought is not relevant to any claim or defense of any party and is protected by the

attorney client privilege, the attorney work product doctrine, and other applicable privileges and

doctrines. Plaintiffs further object to this interrogatory to the extent it assumes that the date of

discovery specifically of improper revenue recognition from the transactions with Dictation

and/or Brussels Translation Group is relevant or dispositive either to the causes of Plaintiffs'

losses or the date the statute of limitations began to run with regard to Plaintiffs' claims against

Dexia and to the extent it assumes that the scheme in which Dexia substantially participated can

be limited to or defined solely by specific transactions. Plaintiffs also object to the request to

18

identify a precise date of discovery, as that is unduly burdensome and not feasible.  Plaintiffs

further object to the phrase "first discovered information showing" as vague and ambiguous.

Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 13(a) does

not constitute a waiver of attorney-client privilege or attorney work-product protection (as

reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of

which is annexed hereto as **Exhibit A**), and subject to the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their

undersigned legal counsel respond as follows:  (1) Plaintiffs primarily relied upon their legal

counsel to investigate Plaintiffs' potential claims arising out of the fraud at L&H; (2) Plaintiffs

and their legal counsel did not keep track of and do not know the date on which counsel "first

discover[ed]" information tending to show that a scheme to defraud L&H investors that involved

improper revenue recognition from transactions with Dictation Consortium and Brussels

Translation Group; (3) Plaintiffs, or their legal counsel on their behalf, first obtained information

in or about December 2000 tending to show that the fraudulent scheme, acts, practices course of

business, statements and omissions of material facts to artificially inflate the revenue and stock

price of L&H included transactions specific to Dictation Consortium and to Brussels Translation

Group.

<u>Interrogatory No. 13(b)</u>:

**State the date on which you first discovered information showing that L&H and its Senior
Officers were engaged in a scheme to defraud L&H investors that involved improper
revenue recognition from transactions with Language Development Companies.**

<u>Response to Interrogatory No. 13(b)</u>:

Plaintiffs specifically object to Interrogatory No. 13(b) on the grounds that the

information sought is not relevant to any claim or defense of any party and is protected by the

19

attorney client privilege, the attorney work product doctrine, and other applicable privileges and

doctrines. Plaintiffs further object to this interrogatory to the extent it assumes that the date of

discovery specifically of improper revenue recognition from the transactions with Language

Development Companies is relevant or dispositive either to the causes of Plaintiffs' losses or the

date the statute of limitations began to run with regard to Plaintiffs' claims against Dexia and to

the extent it assumes that the scheme in which Dexia substantially participated can be limited to

or defined solely by specific transactions. Plaintiffs also object to the request to identify a

precise date of discovery, as that is unduly burdensome and not feasible. Plaintiffs further object

to the phrase "first discovered information showing" as vague and ambiguous.

     Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(b) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (which

agreement is reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance

LLP, a copy of which is annexed hereto as **Exhibit A**), and subject to the terms of the Stipulation

and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs

and their undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their

legal counsel to investigate Plaintiffs' potential claims arising out of the fraud at L&H; (2)

Plaintiffs and their legal counsel did not keep track of and do not know the date on which

counsel "first discover[ed]" information tending to show a scheme to defraud L&H investors that

involved improper revenue recognition from transactions involving Language Development

Companies; and (3) Plaintiffs, or their legal counsel, first obtained information, in or about the

summer of 2000, tending to show that the fraudulent scheme, acts, practices, course of business,

statements and omissions of material facts to artificially inflate the revenue and stock prices of

L&H included transactions regarding the Language Development Companies.

**Interrogatory No. 13(c):**

**State the date on which you first discovered information showing that L&H and its Senior Officers were engaged in a scheme to defraud L&H investors that involved improper revenue recognition from transactions with Vasco.**

**Response to Interrogatory No. 13(c):**

Plaintiffs specifically object to Interrogatory No. 13(c) on the grounds that the

information sought is not relevant to any claim or defense of any party and is protected by the

attorney client privilege, the attorney work product doctrine, and other applicable privileges and

doctrines. Plaintiffs further object to this interrogatory to the extent it assumes that the date of

discovery specifically of improper revenue recognition from the transactions with Vasco is

relevant or dispositive either to the causes of Plaintiffs' losses or the date the statute of

limitations began to run with regard to Plaintiffs' claims against Dexia and to the extent it

assumes that the scheme in which Dexia substantially participated can be limited to or defined

solely by specific transactions. Plaintiffs also object to the request to identify a precise date of

discovery, as that is unduly burdensome and not feasible. Plaintiffs further object to the phrase

"first discovered information showing" as vague and ambiguous.

Subject to, and without waiving the foregoing specific and general objections, and

subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(c)

does not constitute a waiver of attorney-client privilege or attorney work-product protection (as

reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of

which is annexed hereto as **Exhibit A**), and subject to the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their

undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal

counsel to investigate Plaintiffs' potential claims arising out of the fraud at L&H; (2) Plaintiffs

and their legal counsel did not keep track of and do not know the date on which counsel "first

discover[ed]" information tending to show a scheme to defraud L&H investors that involved

improper revenue recognition from transactions involving Vasco; and (3) Plaintiffs, or their legal

counsel on their behalf, first obtained, on or about August 29, 2001, information tending to show

that the fraudulent scheme, acts, practices, course of business, statements and omissions of

material facts to artificially inflate the revenue and stock price of L&H may have included

transactions specific to Vasco.

**Interrogatory No. 13(d):**

**State the date on which you first discovered information showing that Artesia loaned money to Dictation Consortium and/or Brussels Translation Group.**

**Response to Interrogatory No. 13(d):**

Plaintiffs specifically object to Interrogatory No. 13(d) on the grounds that the

information sought is not relevant to any claim or defense of any party and is protected by the

attorney client privilege, the attorney work product doctrine, and other applicable privileges and

doctrines. Plaintiffs further object to this interrogatory to the extent it assumes that the date of

discovery of fact that Dexia loaned money to Dictation Consortium and/or Brussels Translation

Group is relevant or dispositive either to the causes of Plaintiffs' losses or the date the statute of

limitations began to with regard to Plaintiffs' claims against Dexia and to the extent it assumes

that the scheme in which Dexia substantially participated can be limited to or defined solely by

specific transactions. Plaintiffs also object to the request to identify a precise date of discovery,

as that is unduly burdensome and not feasible. Plaintiffs further object to the phrase "first

discovered information showing" as vague and ambiguous.

22

Subject to, and without waiving the foregoing specific and general objections, and subject

to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(d) does not

constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected

in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is

annexed hereto as **Exhibit A**), and subject to the terms of the Stipulation and Order Governing

the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned

legal counsel respond as follows:  (1) Plaintiffs primarily relied upon their legal counsel to

investigate Plaintiffs' potential claims arising out of the fraud at L&H; (2) Plaintiffs and their

legal counsel did not keep track of and do not know the date on which counsel "first

discover[ed]" information tending to show that Artesia had loaned money to Dictation

Consortium and/or Brussels Translation Group; (3) Plaintiffs, or their legal counsel on their

behalf, first obtained information, in or about September 2001, tending to show that Artesia,

Banque Paribas Belgium and Bacob Bank C.V. may have loaned money to Dictation

Consortium; and Plaintiffs, or their legal counsel, first obtained information, in or about late June

or July 2003, tending to show that Artesia may have loaned money to Brussels Translation

Group.

**Interrogatory No. 13(e):**

**State the date on which you first discovered information showing that Artesia loaned
money to one or more Language Development Companies doing business with L&H.**

**Response to Interrogatory No. 13(e):**

Plaintiffs specifically object to Interrogatory No. 13(e) on the grounds that the

information sought is not relevant to any claim or defense of any party and is protected by the

attorney client privilege, the attorney work product doctrine, and other applicable privileges and

doctrines.  Plaintiffs further object to this interrogatory to the extent it assumes that the date of

23

discovery specifically that Dexia loaned money to one or more Language Development

Company is relevant or dispositive either to the causes of Plaintiffs' losses or the date the statute

of limitations began to run with regard to Plaintiffs' claims against Dexia and to the extent it

assumes that the scheme in which Dexia substantially participated can be limited to or defined

solely by specific transactions. Plaintiffs also object to the request to identify a precise date of

discovery, as that is unduly burdensome and not feasible. Plaintiffs further object to the phrase

"first discovered information showing" as vague and ambiguous.

Subject to, and without waiving the foregoing specific and general objections, and

subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 13(c)

does not constitute a waiver of attorney-client privilege or attorney work-product protection (as

reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of

which is annexed hereto as **Exhibit A**), and subject to the terms of the Stipulation and Order

Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their

undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal

counsel to investigate Plaintiffs' potential claims arising out of the fraud at L&H; and (2)

Plaintiffs are unable to respond with respect to loans to the Language Development Companies

because, *inter alia*, Plaintiffs have not alleged and are not aware that Dexia loaned money to

Language Development Companies.

## Interrogatory No. 13(f):

**State the date on which you first discovered information showing that Artesia loaned
money to one or more L&H Senior Officers.**

## Response to Interrogatory No. 13(f):

Plaintiffs specifically object to Interrogatory No. 13(f) on the grounds that the

information sought is not relevant to any claim or defense of any party and is protected by the

24

attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines. Plaintiffs further object to this interrogatory to the extent it assumes that the date of discovery that Dexia loaned money to one or more L&H Senior Officers is relevant or dispositive either to the causes of Plaintiffs' losses or the date the statute of limitations began to run with regard to Plaintiffs' claims against Dexia and to the extent it assumes that the scheme in which Dexia substantially participated can be limited to or defined solely by specific transactions. Plaintiffs also object to the request to identify a precise date of discovery, as that is unduly burdensome and not feasible. Plaintiffs further object to the phrase "first discovered information showing" as vague and ambiguous.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(f) does not constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as **Exhibit A**), and subject to the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2) Plaintiffs and their legal counsel did not keep track of and do not know the date on which counsel "first discover[ed]" information tending to show that Artesia loaned money to one or more L&H Senior Officers; and (3) Plaintiffs, or their legal counsel on their behalf, first obtained, in or about late August 2000, information tending to show that Artesia may have loaned money to one or more L&H Senior Officer.

25

**Interrogatory No. 13(g):**

**State the date on which you first discovered information showing that Artesia managed a $11.5 million private placement of common stock for Vasco.**

**Response to Interrogatory No. 13(g):**

Plaintiffs specifically object to Interrogatory No. 6(g) on the grounds that the information sought is not relevant to any claim or defense of any party and is protected by the attorney client privilege, the attorney work product doctrine, and other applicable privileges and doctrines. Plaintiffs further object to this interrogatory to the extent it assumes that the date of discovery of the fact that Dexia managed a $11.5 million private placement of common stock for Vasco is relevant or dispositive either to the causes of Plaintiffs' losses or the date the statute of limitations began to run with regard to Plaintiffs' claims against Dexia and to the extent it assumes that the scheme in which Dexia substantially participated can be limited to or defined solely by specific transactions. Plaintiffs also object to the request to identify a precise date of discovery as that is not possible and on the ground that the interrogatory incorrectly implies that Artesia was the sole manager of a $11.5 million private placement of common stock for Vasco. Plaintiffs further object to the phrase "first discovered information showing" as vague and ambiguous.

Subject to, and without waiving the foregoing specific and general objections, and subject to Defendant Dexia's prior agreement that Plaintiffs' response to Interrogatory No. 6(g) does not constitute a waiver of attorney-client privilege or attorney work-product protection (as reflected in the August 19, 2005 letter from Jeff Butler, Esq. of Clifford Chance LLP, a copy of which is annexed hereto as **Exhibit A**), and subject to the terms of the Stipulation and Order Governing the Treatment of Confidential Information dated May 31, 2005, Plaintiffs and their undersigned legal counsel respond as follows: (1) Plaintiffs primarily relied upon their legal counsel to

26

investigate Stonington's potential claims arising out of the sale of Dictaphone to L&H; (2)

Plaintiffs and their legal counsel did not keep track of and do not know the date on which

counsel "first discover[ed]" information tending to show that Artesia managed a $11.5 million

private placement of Vasco common stock; and (3) Plaintiffs, or their legal counsel on their

behalf, first obtained, on or about August 29, 2001, information tending to show that Artesia may

have managed a private placement of Vasco common stock.


Dated: November 1, 2005

BERMAN DeVALERIO PEASE
TABACCO BURT & PUCILLO

Glen DeValerio, BBO # 122010
Jeffrey C. Block, BBO # 600747
Patrick T. Egan, BBO # 637477
One Liberty Square
Boston, MA 02109
(617) 542-8300

SHALOV STONE & BONNER LLP
Lee S. Shalov
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 1000
New York, New York 10018
(212) 239-4340

CAULEY BOWMAN CARNEY & WILLIAMS
Allen Carney
11001 Executive Center Drive
Suite 200
P.O. Box 25438
Little Rock, Arkansas 72221-5438
(501) 312-8500


CLASS PLAINTIFFS' LEAD COUNSEL

27

08/19/2005 15:23 FAX          CLIFFORD CHANCE US LLP                    ☒001/003

# C L I F F O R D
# C H A N C E

**CLIFFORD CHANCE US LLP**

31 WEST 52ND STREET
NEW YORK NY 10019

TEL +1 212 878 8000
FAX +1 212 878 8375
www.cliffordchance.com

| | | | | |
|---|---|---|---|---|
| TO | Patrick T. Egan | COMPANY | Berman DeValerio Pease Tabacco Burt & Pucillo | |
| FAX NO | 617 542 1194 | PHONE NO | 617 542 8300 | |
| TO | Patrick L. Rocco | COMPANY | Shalov, Stone & Bonner LLP | |
| FAX NO | 212 239 4310 | PHONE NO | 212 239 4340 | |
| TO | Susan Davies | COMPANY | Gregory P. Joseph Law Offices LLC | |
| FAX NO | 212 407 1274 | PHONE NO | 212 407 1200 | |
| TO | Javier Bleichmar | COMPANY | Bernstein Litowitz Berger & Grossmann LLP | |
| FAX NO | 212 554 1444 | PHONE NO | 212 554 1400 | |
| TO | Karen C. Dyer | COMPANY | Boies, Schiller & Flexner LLP | |
| FAX NO | 407 425 7047 | PHONE NO | 407 425 7118 | |
| TO | Alan K. Cotler | COMPANY | Reed Smith LLP | |
| FAX NO | 215 851 1420 | PHONE NO | 215 851 8100 | |
| TO | Peter M. Saparoff | COMPANY | Mintz, Levin, Cohn, Ferris, Glovsky And Popeo P.C. | |
| FAX NO | 617 542 2241 | PHONE NO | 617 542 6000 | |

| | | | |
|---|---|---|---|
| FROM | Jeff E. Butler | DATE | August 19, 2005 |
| SENDER PHONE | +1 212 878 8205 | PAGES (INCL COVER) | 3 |

Please see the attached.

FOR FAX TRANSMISSION PROBLEMS, CALL +1 212 878 8374 THIS FACSIMILE TRANSMISSION IS INTENDED SOLELY FOR THE
USE OF THE PERSON OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED,
CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ANY REVIEW, DISSEMINATION, DISTRIBUTION,
COPYING OR OTHER USE OF, OR THE TAKING OF ANY ACTION IN RELIANCE UPON, THIS TRANSMISSION OR ITS
CONTENTS BY PERSONS OTHER THAN THE ADDRESSEE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, OR ARE UNCERTAIN ABOUT ITS PROPER HANDLING, PLEASE CALL US IMMEDIATELY
(COLLECT AT +1 212 878 8374) AND RETURN THE ORIGINAL TRANSMISSION TO US BY MAIL.

NYB 1499406.1

# EXHIBIT A

# C L I F F O R D
# C H A N C E

CLIFFORD CHANCE US LLP

31 WEST 52ND STREET
NEW YORK NY 10019 6131

TEL +1 212 878 8000
FAX +1 212 878 8375
www.cliffordchance.com

Jeff E. Butler

DIRECT TEL 212-878-8205
DIRECT FAX 212-878-8375
jeff.butler@cliffordchance.com

August 19, 2005

VIA FACSIMILE

To:     Counsel on attached list

Re:     *Quaak v. Dexia Bank Belgium*
        *Stonington v. Dexia Bank Belgium*
        *Filler v. Dexia Bank Belgium*
        *Baker v. Dexia Bank Belgium*

Dear Counsel:

        This letter confirms my telephone conversation yesterday with Susan Davies and George Coe.

        *First*, as Plaintiffs have requested, Dexia and its counsel hereby agree that responses to Dexia Bank Belgium's Second Set of Interrogatories to Class Plaintiffs, Dexia Bank Belgium's First Set of Interrogatories to the Stonington Plaintiffs, Dexia Bank Belgium's First Set of Interrogatories to the TRA Rights Trust and Dexia Bank Belgium's First Set of Interrogatories to the Baker Plaintiffs shall not constitute a waiver of any privilege or other immunity from disclosure, including, but not limited to, the attorney-client privilege and the attorney work-product protection, that may apply to such responses. Dexia and its counsel further agree that they will not argue before any Court that the aforementioned responses constitute a waiver of any privilege or other immunity from disclosure.

        *Second*, as Plaintiffs have requested, Dexia agrees that the deadline for serving responses to the interrogatories referenced above shall be extended to September 20, 2005.

        *Third*, we have previously informed you that Dexia was working to complete its document production (with the exception of documents from backup tapes) by the beginning of September. It is now clear that we will not be able to meet that target. We now expect our document production (with the possible exception of documents from backup tapes) to be substantially complete in late September or early October.

Sincerely,

Jeff E. Butler

NYB 1508617.1

**C L I F F O R D**                                    CLIFFORD CHANCE US LLP
**C H A N C E**

                                                                    Page 2

August 19, 2005

To:     Patrick T. Egan, Esq.
        Berman Devalerio Pease  Tabacco Burt & Pucillo
        One Liberty Square
        Boston, MA 02109

        Patrick Rocco, Esq.
        Shalov Stone & Bonner
        485 Seventh Avenue, Suite 1000
        New York, NY 10018

        Javier Bleichmar, Esq.
        Bernstein Litowitz Berger & Grossman LLP
        1285 Avenue of the Americas
        New York, NY 10019

        Susan Davies, Esq.
        Gregory P. Joseph Law Offices LLC
        805 Third Avenue, 31st Floor
        New York, NY 10022

        Karen Dyer, Esq.
        Boies, Schiller & Flexner LLP
        255 South Orange Avenue, Suite 905
        Orlando, FL 32801

        Alan Cotler, Esq.
        Reed Smith
        2500 One Liberty Place
        1650 Market Street
        Philadelphia, PA 19103

        Peter M. Saparoff, Esq.
        Mintz Levin Cohn Ferris Glovsky & Popeo
        One Financial Center
        Boston, MA 02111