**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10477 (PBS) |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10501 (PBS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEXIA'S MOTION FOR PROTECTIVE ORDER LIMITING THE DURATION OF DEPOSITIONS OF BART FERRAND AND PETER RABAEY**

Plaintiffs in each of the above-captioned actions respectfully submit this memorandum of law in Opposition to Dexia's Motion for Protective Order Limiting the Duration of Depositions of Bart Ferrand and Peter Rabaey. This motion is currently scheduled to be heard on October 5, 2006 at 11:00 a.m.

## PRELIMINARY STATEMENT

Plaintiffs first sought to depose Defendant Dexia Bank Belgium's ("Dexia") managing agents, Bart Ferrand and Peter Rabaey, more than one year ago. On July 10, 2006, this Court granted Plaintiffs' motion to compel, ordering Dexia to produce these witnesses for deposition (the "July 10 Order"). Now, more than two months later, Dexia has openly defied that Order by *again refusing to schedule either deposition* because Plaintiffs in these four separate actions will not agree – before beginning the depositions – to limit artificially their examinations to the equivalent of less than one day of examination in English. Dexia's contumacious defiance of the Court's July 10 Order is utterly without justification, and obviously calculated to thwart Plaintiffs' timely prosecution of these actions.

Dexia's only argument for refusing to produce its witnesses for even a single day is that Plaintiffs' notice of deposition, which calls for Ferrand and Rabaey to each testify for four days through an interpreter (the equivalent of less than two days of testimony in English), purportedly exceeds the presumptive limit under Federal Rule of Civil Procedure 30(d)(2). However, that limit is inapplicable, and Judge Saris has already made clear in related actions that coordinated depositions of party witnesses may be conducted for *up to four days*. *See* Declaration of Jeff E. Butler in Support of Dexia's Protective Order Motion ("Butler Decl."), **Exh. E** at 32.

Dexia's preemptive attempt to curtail Plaintiffs' examination of Ferrand and Rabaey to two days of examination through an interpreter must be denied. Indeed, Dexia concedes that two days of interpreted testimony is *equivalent to a single day of examination in English* (and, in

1

reality, as shown below, it is far less than that).  Contrary to Dexia's assertion, Federal Rule of Civil Procedure 30(d)(2) does not impose a one-day limit on depositions where – as here – a witness is being deposed in *four separate actions* concerning facts and events that are *not common to all actions*.  Moreover, as the Court is aware – having already granted Plaintiffs' motion to compel these depositions – Ferrand and Rabaey had extensive personal involvement in the loans that form the basis of Plaintiffs' Section 10(b) claims.  In addition, Ferrand and Rabaey were deeply involved in the private transactions at the heart of the *Stonington*, *Filler* and *Baker* actions and advised Dexia to finance those transactions despite their extensive knowledge of the L&H fraud.[1]  For these reasons, it is highly unlikely that Plaintiffs will be able to complete fair examinations of Ferrand and Rabaey in the equivalent of less than a single seven-hour day.

Dexia does not argue that scheduling four consecutive days for these depositions would cause any hardship to the deponents, or prejudice to Dexia.  Moreover, Dexia concedes that Plaintiffs have, in the past, conducted efficient examinations of Dexia deponents.  Dexia's speculation that Plaintiffs now intend to "depart[ ] from past practice," by engaging in dilatory, duplicative examinations of Ferrand and Rabaey, is entirely unfounded, and, in fact, contrary to Plaintiffs' goal of an expeditious resolution of these cases.  Accordingly, Plaintiffs urge the Court to deny Dexia's motion for protective order and order Dexia to produce Ferrand and Rabaey on the dates noticed so that Plaintiffs in each of these four separate actions may, collectively, depose Ferrand and Rabaey for up to two days in English – or four days through an interpreter – as necessary to enable Plaintiffs to conduct fair examinations pursuant to the July 10 Order.  Moreover, as a sanction for willfully defying this Court's July 10 Order, pursuant to its

---

[1]  It was through those transactions – L&H's acquisition of Dictaphone Corp., at issue in *Stonington Partners, Inc. v. Dexia, S.A.*, No. 04-CV-10411-PBS, and L&H's acquisition of Dragon Systems, Inc. at issue in *Filler v. Dexia, S.A.*, No. 04-CV-10477-PBS, and *Baker v. Dexia, S.A.*, No. 04-CV-10501-PBS, that the Stonington, Baker and Filler Plaintiffs acquired their L&H shares.

2

powers under Fed. R. Civ. P. 37, the Court should order Dexia to produce these deponents in Boston and to pay all reasonable costs and expenses, including attorney's fees, incurred by Plaintiffs in opposing the instant motion.

### PROCEDURAL HISTORY

On September 15, 2005, Plaintiffs noticed the depositions of Ferrand and Rabaey for two days each, "continuing day to day thereafter until completion." *See* Butler Decl. **Exh. A**. Dexia refused to produce these witnesses solely on the grounds that they are not "managing agents" of Dexia, but did not challenge the duration of the depositions as noticed or seek to limit their duration. Declaration of Patrick Egan Support of Plaintiffs' Opposition to Dexia's Motion for Protective Order ("Egan Decl.") ¶ 4. On November 4, 2005, Plaintiffs moved to compel. *Id.* In opposing that motion, Dexia again made no attempt to limit the duration of those depositions. The Court granted Plaintiffs' motion on July 10, 2006, and ordered Dexia to produce Ferrand and Rabaey for deposition. *Id.* **Exh. A** at 13-21, 31-32. Dexia did not seek review of the July 10 Order. *Id.* ¶ 4.

Following the issuance of the July 10 Order, Plaintiffs' counsel repeatedly informed Dexia's counsel that Plaintiffs would require more than two days through an interpreter to complete the Ferrand and Rabaey depositions, but that Plaintiffs were willing to take the two days tentatively offered by Dexia and submit to the Court the issue of the additional time sought by Plaintiffs. Egan Decl. ¶¶ 7-8 and **Exh. C**; Butler Decl. Exh. B. In response, Dexia informed Plaintiffs that, unless all Plaintiffs agreed in advance to limit their examinations of these deponents to a total of two days through an interpreter, Dexia would not produce the deponents for even a single day. Because Dexia had failed to provide firm dates for these witnesses, on September 6, 2006, Plaintiffs noticed the Ferrand and Rabaey depositions for four days –*i.e.,*

3

equivalent to less than a two-day examination of an English-speaking witness.  Egan Decl, **Exh. D**; Butler Decl. Exh. C.  On September 13, 2006, only after Plaintiffs threatened to seek sanctions for Dexia's refusal to comply with the July 10 Order, Dexia filed this motion for protective order under Federal Rule of Civil Procedure 26(c), seeking to limit the depositions to two days of examination through an interpreter – equivalent to less than one day in English.

Dexia's papers in support of its motion make no reference to ***Dexia's position that it will not obey the July 10 Order until after the Court decides its motion for protective order.***  While Dexia's moving papers state that: "Dexia remains willing to schedule [Ferrand and Rabaey] for depositions of two days each" (*see* Dexia Mem. at 1), Dexia has, in fact, repeatedly refused to schedule the depositions even for the two days for which it has previously agreed to make the witnesses available.  Indeed, when Plaintiffs informed Dexia that they would notice the Ferrand and Rabaey depositions for four days each, Dexia effectively withdrew the tentative dates for Ferrand and Rabaey it had previously offered stating: "[W]e are not willing to schedule these depositions if plaintiffs are going to file a motion to extend the examination period to four days." *See* Egan Decl., **Exh. C**.

**ARGUMENT**

A. *Dexia Should Be Ordered To Produce Ferrand and Rabaey*
   *For Deposition on All of the Dates Noticed By Plaintiffs*

There is no basis for the Court to preemptively limit the depositions of Ferrand and Rabaey to the equivalent of less than a single day of English testimony.  Ferrand and Rabaey will both be testifying in Dutch, using an interpreter.  *See* Egan Decl. ¶ 8.  In addition, Dexia's counsel has stressed that Mr. Rabaey, in particular, intends to rely heavily on the interpreter to ensure the accuracy of his testimony.  Dexia concedes that the deponents' use of an interpreter will, at a minimum, double the amount of time it will take Plaintiffs to obtain information from

4

them.  Dexia Mem. at 4.  Indeed, Dexia has taken the position throughout the discovery process that one day of examination conducted in English is the equivalent of two days through an interpreter.  Egan Decl. ¶ 6.  Plaintiffs' experience in these cases, however, demonstrates that conducting a deposition through an interpreter ***more than doubles*** the time needed to obtain the same amount of information.  *Id.*  For example, Plaintiffs deposed Dexia employee Bernard Mommens in English for one day, resulting in a 352-page transcript.  *Id.*  By comparison, a two day deposition of Dexia witness Alain Probst, conducted through a French/English interpreter, resulted in only 228 pages of transcript.  *Id.*  Thus, in moving to limit the Ferrand and Rabaey depositions to two days each, Dexia is really seeking to limit each of the depositions to substantially less than a single day.  *Id.*  Dexia's moving papers fail to articulate why such an arbitrary and unreasonable time limit is "require[d] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c), and Dexia offers no reason whatsoever why Ferrand and Rabaey cannot be available for up to four consecutive days.

Dexia's reliance on the presumptive one-day limitation on depositions in Federal Rule of Civil Procedure 30(d)(2) is inapposite.  Dexia cites to no authority – and Plaintiffs are aware of none – applying this limitation to coordinated depositions being conducted in separate, unconsolidated actions.  Dexia elevates form over substance by arguing that Plaintiffs' examinations should be subject to the Rule 30(d)(2) time limit because:  "Plaintiffs ***jointly*** noticed the depositions of Mr. Ferrand and Mr. Rabaey, rather than filing [sic] separate notices for each group of Plaintiffs."  Dexia Mem. at 5 (emphasis in original).  This argument must be rejected because again Dexia cites to no authority supporting such an absurd result, and Plaintiffs are aware of none.

5

Notably, the Rule 30(d)(2) time limit was not applied to the numerous, coordinated depositions conducted in the prior related case, *In re Lernout & Hauspie Sec. Litig.*, No. 00-CV-11589-PBS, and the three separate actions that were coordinated therewith for discovery purposes. In those cases, Judge Saris did impose presumptive time limits on coordinated depositions: two days for non-party witness and ***four days for party witnesses***. *See* Butler **Exh. E** at 32. Plaintiffs in the four separate actions here seek less than half this amount of time to depose Dexia's witnesses; that is, a total of no more than four days through an interpreter.

Even in situations where the presumptive one-day limit applies, Rule 30(d)(2) expressly provides that: "***The court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent***." *See also Cf. Moore v. CVS Corp.*, No. 7:04cv054, 2005 U.S. Dist. LEXIS 3798, *5-9 (W.D. Va. Mar. 11, 2005) (granting motion to extend duration of depositions in light of complexity of case and number of parties); Advisory Committee Note to 2000 Amendment ("In multi-party cases, the need for each party to examine the witness may warrant additional time"). Plaintiffs here collectively need more than one day to conduct fair examinations of Ferrand and Rabaey. Both deponents were heavily involved in the matters relevant to the fraudulent scheme to falsify L&H's financial statements. The Court, in holding that Rabaey and Ferrand were managing agents of Dexia, has already found that Ferrand:

> was involved in most of the credit applications made by L&H, . . . consulted extensively with Mssrs. Hauspie and Willaert concerning the Language Development Corporation ("LDC") concept, . . . decided 'autonomously' that for the bank's internal purposes, the income generated on loans to L&H and the LDCs should be reported collectively and in negotiating the terms of the LDF loan application, . . . proposed that the $20 million credit be secured by CDSs with Mssrs. Lernout, Hauspie and Willaert.

Egan Decl. **Exh. A** at 13. For his part, Rabaey

> contacted Dexia's in-house counsel seeking legal advice as to whether the CDSs had to be disclosed in the letters of credit, communicated with Mssr. Willaert regarding whether the CDSs had to be disclosed in the letters of credit, met with the manager of Radial to discuss whether the CDSs had to be disclosed in the letters of credit, prepared and submitted to the Credit Committee detailed credit proposals that recommended extending the terms of the loans to Radial and LIC, a recommendation the Credit Committee accepted, and recommended to the Credit Committee the granting of a $20 million loan to LDF secured by the sale of a CDS to Mssrs. Lernout, Hauspie and Willaert

Egan Decl. **Exh. A** at 17. Since Plaintiffs filed their motion to compel these depositions on November 4, 2005, Plaintiffs' counsel have learned additional information concerning the extensive roles played by Ferrand and Rabaey in the fraudulent scheme, including their involvement in loans made by Dexia to enable L&H-related parties to purchase L&H shares for the express purpose of boosting L&H's share price. *See, e.g.* Davies Decl.¶ 5 and **Exh. B**.

In addition, both Ferrand and Rabaey have personal knowledge of the private transactions in which the Plaintiffs in the *Stonington*, *Baker* and *Filler* actions were defrauded. These deponents were personally involved in Dexia's decisions to finance L&H's acquisitions of Dictaphone Corporation and Dragon Systems, Inc. Davies Decl. ¶¶ 6-7, **Exhs. C, D**. It is of critical importance to the Stonington, Baker and Filler Plaintiffs to examine them concerning these transactions because, on June 22, 2003, Dexia moved to dismiss the *Stonington*, *Baker* and *Filler* actions on the grounds of an alleged failure to plead that Dexia could reasonably have foreseen that they would be harmed by the L&H fraud. *Id.* at ¶ 5. It is also important for all of the Plaintiffs to examine these deponents concerning their extensive participation in the entire scheme to falsify L&H's financial statements.[2]

---

[2] The only other deposition witness who has had such extensive involvement in so many matters relevant to Plaintiffs' claims was Jacques Janssens, whom Plaintiffs deposed, through an interpreter, on April 20 and 21, 2006. Egan Decl. ¶ 12. Plaintiffs were unable to complete their examination of Mr. Janssens within two days, and Dexia terminated the deposition prematurely over Plaintiffs' objection. *Id.* and **Exh. F**. Stonington, Baker and Filler Plaintiffs had no opportunity to examine Mr. Janssens' concerning the Dictaphone and Dragon transactions. *Id.* ¶ 12.

7

Plaintiffs' good faith in noticing these depositions for up to four days each is further evidenced by the diligence Plaintiffs' counsel have displayed in coordinating and limiting their examinations of Dexia's witnesses to date. In fact, Dexia concedes that Plaintiffs have, in the past, avoided duplicative questioning of Dexia witnesses by "designat[ing] one lawyer to be the lead examiner in each deposition." Dexia Mem. at 5. Contrary to Dexia's speculation, Plaintiffs intend to continue this practice for the Ferrand and Rabaey depositions, and to designate a single lawyer as the lead examiner on questions of common interest to all Plaintiffs. Egan Decl. ¶ 3. However, Stonington Plaintiffs, and Baker and Filler Plaintiffs jointly, intend – and are entitled under Rule 26(b)(1) – to examine the deponents about matters relevant to the claims and defenses in their respective actions that are not common to the other actions. *Id.* Two days of interpreted examination simply will not allow Plaintiffs sufficient time to do this, especially given these deponents' extensive involvement in the fraud and the unlikelihood that they will appear at trial because of that extensive involvement. Dexia's assertions that Plaintiffs can complete their examinations within two days are baseless speculation.[3]

Accordingly, the Court should order Dexia to produce Ferrand and Rabaey for their depositions for up to the four days that each has been noticed – October 10 through 13 for Rabaey and October 17 through 20 for Ferrand – as necessary for Plaintiffs to complete their examinations. Additionally, to facilitate the resolution of any further disputes involving the

---

[3] This Court has held previously that the correct practice where parties cannot agree upon the amount of time necessary for a fair examination is for the deposition to be commenced and conducted for the agreed amount of time, before the examining party seeks additional time from the court. *Malec v. Trustees of Boston College*, 208 F.R.D. 23, 24 (D. Mass. 2002). However, *Malec* is inapposite here for several reasons. First, as already explained, Dexia has refused to follow the practice outlined in *Malec* by stating its refusal to produce these witnesses unless and until Plaintiffs agree to limit their examination to two days, despite being under Court order to produce these two deponents. Second, *Malec* did not involve a defendant's blatant disregard for a discovery order, such as implicated by Dexia's conduct here. Finally, *Malec* did not involve the substantial costs that would be incurred if the Ferrand and Rabaey depositions were to be resumed at a later date. Because the depositions were noticed for Belgium (at Dexia's insistence) Plaintiffs' counsel would be forced to make a costly second trip there in order to complete the depositions.

8

conduct or duration of these depositions, the Court should further order that they take place here in Boston.  This will avoid the problems that Belgium's 6-hour time zone differential would impose in seeking the Court's timely intervention to resolve such disputes.  As noted below, in addition to these practical benefits of proceeding in Boston, compelling Dexia to bring these deponents here is also an appropriate sanction for Dexia's refusal to comply with the July 10 Order.

        **B.**       *Dexia's Failure to Obey This Court's July 10 Order Should Be Sanctioned*

This Court has the inherent power under Rule 37(b)(2) to sanction Dexia for its blatant failure to obey the July 10 Order to produce Ferrand and Rabaey for depositions.  Because Dexia refused without justification to produce these witnesses for any length of time in direct defiance of that order, the Court should require Dexia to bring Ferrand and Rabaey to Boston to be deposed.  Moreover, Dexia should also be ordered to pay the reasonable costs and expenses, including reasonable attorney's fees, incurred by Plaintiffs in opposing the instant motion because this motion openly defies Dexia's obligation to produce these deponents pursuant to the July 10 Order without providing any basis for relief from that order.[4]  These sanctions are fair and appropriate under the circumstances and will help to deter further misconduct by Dexia.  *See Pereira v. Narragansett Fishing Corp.*, 135 F.R.D. 24, 27-28 (D. Mass.  1991) (Collings, J.) (awarding costs, attorney's fees and a fine where party failed to comply with Court's discovery order); Rule 37(b)(2) (empowering Court to make such orders "in regard to the failure [to obey a discovery order] as are just", including "reasonable expenses, including attorney's fees").  Finally, to ensure that the next order of this Court is not similarly ignored by Dexia, the Court

---

[4]  Alternatively, even if the Court declines to sanction Dexia and reserves judgment on the proper duration of these depositions, the Court should order Dexia to produce these witnesses in Boston for any continuation of their examination in the event that the Court later determines that additional examination is appropriate.  This will prevent Dexia from unreasonably curtailing these depositions and relieve Plaintiffs of the unwarranted costs and burden of traveling twice to Belgium to complete the depositions.

9

should include in its order denying Dexia's motion for a protective order a provision that if Dexia to fails to produce Ferrand and Rabaey for their deposition on the dates noticed, Dexia's intention to defraud Plaintiffs "shall be taken to be established" in each of the above-captioned actions. Fed. R. Civ. P. 37(b)(2)(A). Such an automatic sanction is expressly envisioned by the Rule and will avoid both further delays and further applications to the Court. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Dexia's motion for protective order pursuant to Federal Rule of Civil Procedure 26(c), and: (a) order Dexia to produce Ferrand and Rabaey on the dates noticed by Plaintiffs so that each may be deposed for up to a total of four consecutive days as necessary for a fair examination; (b) require Dexia to produce these witnesses for examination in Boston, (c) require Dexia to pay the reasonable costs and expenses, including attorney's fees, incurred by Plaintiffs in responding to this motion; and (d) provide that if Dexia to fails to produce Ferrand and Rabaey for their deposition on the dates noticed, Dexia's intention to defraud Plaintiffs "shall be taken to be established" in each of the above-captioned actions.

Dated: September 27, 2006                    Respectfully submitted,

**BERMAN DEVALERIO PEASE**
**TABACCO BURT & PUCILLO**

　　　/s/ Patrick T. Egan
Glen DeValerio, BBO # 122010
Patrick T. Egan, BBO # 637477
(pegan@bermanesq.com)
Allison K. Jones, BBO # 654804
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

**SHALOV STONE & BONNER LLP**
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340

**CAULEY BOWMAN CARNEY & WILLIAMS PLLC**
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500

*Co-lead Counsel to Class Plaintiffs*
*Hans A. Quaak, Karl Leibinger and Attilio Po*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

         /s/ Avi Josefson
Max W. Berger
Steven B. Singer
Avi Josefson
(avi@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400

**LOONEY & GROSSMAN LLP**
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2800

*Counsel to Plaintiffs Stonington Partners, Inc.,*
*Stonington Capital Appreciation 1994 Fund L.P.*
*and Stonington Holdings L.L.C.*

11

**GREGORY P. JOSEPH LAW OFFICES LLC**

    /s/ Susan M. Davies
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
805 Third Avenue, 31st Floor
New York, NY  10022
Telephone:  (212) 407-1200

**KOTIN, CRABTREE & STRONG**
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone:  (617) 227-7031

*Counsel to Plaintiffs Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust*


**PARTRIDGE, ANKNER & HORSTMAN LLP**

    /s/ Terence K. Ankner
Terence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone:  (617) 859-9999

**BOIES SCHILLER & FLEXNER**
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida  32801
Telephone:  (407) 425-7118

**REED SMITH LLP**
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone:  (215) 851-8100

*Counsel to Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBaker LLC.*

12