## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company, | ) ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) | Civil Action No.: 04-10411 (PBS) |
| v. | ) ) |  |
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.) | ) ) ) ) |  |
| Defendants. | ) ) |  |

## ANSWER

Defendant Dexia Bank Belgium ("Dexia"), for its answer to the First Amended Complaint filed September 15, 2006, states as follows:

1.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1, except admits that the First Amended Complaint purports to be related to *Stonington Partners, Inc. et al. v. Dammekens et al.*, Civ. No. 02-10303 (PBS) (the "Dammekens Action"); admits that L&H has filed for bankruptcy and is going through liquidation; and refers to the filings in the Dammekens Action for their content.

2.    Dexia denies the allegations in paragraph 2, except admits Dexia is the successor to Artesia Banking Corporation ("Artesia" or "Artesia Banking"), admits Artesia Securities, S.A. ("Artesia Securities") was a subsidiary of Artesia; admits that Banque Paribas Belgium and

Bacob Bank C.V. were predecessors to Artesia; and admits that on June 24, 2003 Dexia issued a press release, and refers to that document for its content.

3.   Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3, except admits that L&H appeared to have grown into a world leader in speech recognition software and related products; admits that L&H issued restated financial statements for 1998, 1999, and the first two quarters of 2000, and refers to those documents for their content.

4.   Dexia denies the allegations in paragraph 4, except admits that Artesia provided loans to certain entities doing business with L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

5.   Dexia denies the allegations in paragraph 5, except admits that a preliminary report was drafted at the request of the Belgian Examining Magistrate, and refers to the May 28, 2001, preliminary report referenced in this paragraph for its content.

6.   Dexia denies the allegations in paragraph 6, except admits that Artesia sought personal guarantees from Hauspie, Lernout and Willaert for certain loans, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

7.   Dexia denies the allegations in paragraph 7, except admits that Artesia provided loans to certain entities doing business with L&H and admits that Artesia entered into credit default swaps in relation to two of these loans.

8.   Dexia denies the allegations in paragraph 8, except refers to the preliminary report referenced in this paragraph for its content.

9. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9, except admits that L&H stock is now worthless.

10. Dexia denies the allegations in paragraph 10, except admits that Artesia Banking was a member of the banking consortium which extended a credit facility to L&H, which L&H used to acquire Dictaphone.

11. Dexia denies the allegations in paragraph 11, except admits that Artesia provided loans to certain entities doing business with L&H; admits that Artesia received shares of L&H stock as collateral for loans extended to L&H or certain Principal Officers; and refers to the documents referenced in this paragraph for their content.

12. Dexia denies the allegations in paragraph 12, except admits that Artesia sold shares of L&H stock in 2000; and refers to the documents referenced in this paragraph for their content.

13. Dexia denies the allegations in paragraph 13, except admits that Artesia Securities was a wholly-owned subsidiary of Artesia; admits that Artesia Securities issued analyst reports concerning L&H, and refers to those reports for their content.

14. Dexia denies the allegations in paragraph 14, except admits that Artesia provided loans to certain entities doing business with L&H and certain officers of L&H; and admits that Artesia charged interest fees in connection with those loans.

15. Dexia denies the allegations in paragraph 15, except admits that Artesia made loans to entities doing business with L&H.

16. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16, except refers to *The Wall Street Journal* for its contents.

17. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17, except admits that L&H has issued restated financial statements for 1998, 1999, and the first two quarters of 2000, and refers to those documents for their content.

18. Dexia denies the allegations in paragraph 18, except admits L&H filed for bankruptcy and is going through liquidation; and admits that Lernout, Hauspie, and Willaert were arrested by criminal authorities in Belgium.

19. Dexia denies the allegations in paragraph 19, except admits that the Belgian Examining Magistrate seized records from Artesia in February 2001; admits that Artesia made certain loans in 1998 and 1999; and refers to the June 24, 2003 press release and the June 25, 2003 edition of *De Financieël Economische Tijd* referenced in this paragraph for their content.

20. Dexia denies the allegations in paragraph 20.

21. Dexia denies the allegations in paragraph 21, except admits that this action purports to arise under § 10(b) of the 1934 Act and the rules and regulations promulgated thereunder, and state law.

22. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22, except admits that Plaintiffs purport to base jurisdiction on § 27 of the 1934 Act and 28 U.S.C. §§ 1331, 1337, and 1367.

23. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23, except admits that Plaintiffs purport that venue is proper in this District under § 27 of the 1934 Act and 28 U.S.C. § 1391(b).

24. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.

25. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25, except refers to the Merger Agreement referenced in this paragraph for its content.

26. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, except refers to the Merger Agreement referenced in this paragraph for its content.

27. Dexia denies the allegations in paragraph 27, except admits that it is a subsidiary of Dexia S.A.

28. Dexia denies the allegations in paragraph 28, except refers to Dexia S.A.'s March 31, 2001 press release for its content, and admits that there was a merger between Artesia and Dexia.

29. Dexia denies the allegations in paragraph 29, except admits that, prior to its acquisition by Dexia, Artesia had various subsidiaries in the United States, including Artesia Mortgage Capital Corporation, located at 1180 NW Maple St., Suite 202, Issaqua, Washington 98027, Artesia North America, and Artesia Securities, a fifty-percent owned joint venture headquartered in New York; admits that Artesia Mortgage continues to conduct business under the same name although it is now owned by Dexia; and admits that Artesia was a member of a lending syndicate that loaned $430 million as part of L&H's acquisition of Dictaphone.

30. Dexia denies the allegations in paragraph 30, except admits that prior to July 2001 Artesia Securities was a "societe anonyme", that it conducted business primarily in Belgium, that its offices were in Brussels, that it was a wholly-owned subsidiary of Arteisa, and that Artesia was the reference shareholder of Artesia Securities; admits that there was a merger between Artesia and Dexia; and admits that the name of Artesia Securities was changed to Dexia Securities Belgium S.A.

31. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, except admits that L&H was based in Belgium and had United States offices in Burlington, Massachusetts; admits that L&H was listed on NASDAQ; and admits L&H has filed for bankruptcy and is going through liquidation.

32. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32, except admits that Lernout was a co-founder of L&H.

33. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33, except admits that Hauspie was a co-founder of L&H.

34. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34, except admits that Bastiaens was named as a defendant in *Stonington, et al. v. Bastiaens*, Civ. No. 1:03-10642 (PBS).

35. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35, except admits that Dammekens was named as a defendant in the Dammekens Action.

36. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36.

37. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.

38. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38, except admits that in 1995, L&H completed its initial public offering and commenced trading on the NASDAQ.

39. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39, except admits that L&H was considered an international success story.

40. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

41. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43.

44. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44.

45. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.

46. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46.

47. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48.

49. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.

50. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51, except refers to L&H's February 9, 2000 press release for its content.

52. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

53. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53.

54. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.

55. Dexia denies the allegations in paragraph 55, except admits that an article concerning Artesia was published in the Belgian press on June 25, 2003, and refers to that document for its content.

56. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56.

57. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57, except refers to the Merger Agreements referenced in this paragraph for their content.

58. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58, except refers to the Merger Agreements referenced in this paragraph for their content.

59. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59, except refers to the Merger Agreements referenced in this paragraph for their content.

60. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60, except refers to the Merger Agreements referenced in this paragraph for their content.

61. Dexia denies the allegations in paragraph 61.

62. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62, except admits that L&H stock is now worthless.

63. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

64. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64, except refers to L&H's June 30, 2000 Form 10-Q referenced in this paragraph for its content.

65. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65, except refers to L&H's June 30, 2000 Form 10-Q and the August 8, 2000 edition of *The Wall Street Journal* referenced in this paragraph for their content.

66. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66, except refers to the August 15, 2000 edition of *The Wall Street Journal* referenced in this paragraph for its content.

67. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.

68. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68, except refers to the September 22, 2000 edition of *The Wall Street Journal* referenced in this paragraph for its content.

69. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69, except refers to the September 22 and 26, 2000 editions of *The Wall Street Journal* referenced in this paragraph for their content.

70. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70, except refers to the September 26, 2000 edition of *The Wall Street Journal* referenced in this paragraph for its content.

71. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71, except refers to the October 18, 2000 edition of *The Wall Street Journal* referenced in this paragraph for its content.

72. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72, except refers to L&H's November 9, 2000 press release referenced in this paragraph for its content.

73. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73, except refers to the Statement of Auditing Standards No. 53 referenced in this paragraph for its content.

74. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.

75. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75, except refers to the November 17, 2000 edition of *The Wall Street Journal* referenced in this paragraph for its content.

76. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76, except admits that L&H filed for bankruptcy protection.

77. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77, except refers to the December 14, 2000 edition of *The Wall Street Journal* referenced in this paragraph for its content.

78. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78, except refers to the Audit Committee Report for its content.

79. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79, except refers to the January 5, 2001 Associated Press report referenced in this paragraph for its content.

80. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80.

81. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81, except admits that Lernout, Hauspie, and Willaert were arrested by criminal authorities in Belgium and admits that Bastiaens was arrested by United States officials.

82. Dexia denies the allegations in paragraph 82, except admits that Artesia provided loans to certain entities doing business with L&H.

83. Dexia denies the allegations in paragraph 83, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's relationship with the LDCs and CLDCs or L&H's accounting practices.

84. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84, except refers to the December 7, 2000 edition of *The Wall Street Journal* for its content.

85. Dexia denies the allegations in paragraph 85, except admits that Artesia's predecessors provided financing to Dictation Consortium.

86. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86, except admits that Artesia's predecessors provided financing to Dictation Consortium, and refers to the internal Artesia Banking documents referenced in this paragraph for their content.

87. Dexia denies the allegations in paragraph 87, except refers to document quoted for its content.

88. Dexia denies the allegations in paragraph 88, except refers to the Artesia Banking Dictation loan files referenced in this paragraph for their content.

89. Dexia denies the allegations in paragraph 89, except refers to the Artesia Banking loan files referenced in this paragraph for their content; refers to U.S. GAAP for its content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

90. Dexia denies the allegations in paragraph 90, except admits that Artesia's predecessors provided financing to Dictation Consortium, and refers to the internal Artesia Banking memorandum dated June 19, 1997 for its content.

91. Dexia denies the allegations in paragraph 91, except admits that Artesia's predecessors provided financing to Dictation Consortium.

92. Dexia denies the allegations in paragraph 92.

93. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93.

94. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94, except refers to the internal Artesia Banking document referenced in this paragraph for its content.

95. Dexia denies the allegations in paragraph 95, except admits that Artesia made a loan to BTG; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the formation of BTG; and refers to the December 7, 2000 edition of *The Wall Street Journal* for its content.

96. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96.

97. Dexia denies the allegations in paragraph 97, except admits that Artesia's predecessor provided financing to BTG, and refers to the Artesia Banking credit proposal referenced in this paragraph for its content.

98. Dexia denies the allegations in paragraph 98, except admits that Artesia's predecessor provided financing to BTG, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

99. Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99.

100.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100.

101.    Dexia denies the allegations in paragraph 101, except refers to *The Wall Street Journal* article referenced in this paragraph for its content.

102.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102, except refers to the April 7, 1999 L&H press release for its content.

103.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103, except refers to L&H's 1998 Annual Report on Form 20-F for its content.

104.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104.

105.    Dexia denies the allegations in paragraph 105, except admits that Artesia extended loans to certain entities doing business with L&H, and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

106.    Dexia denies the allegations in paragraph 106, except admits that Artesia loaned approximately $6 million to Radial on September 29, 1998; admits that Radial transferred the funds to the Slavic Development Company N.V., the Farsi Development Company N.V.,  and the Bahassa Development Company N.V.; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning use of the funds by the LDCs or L&H's accounting practices.

107.    Dexia denies the allegations in paragraph 107, except refers to the preliminary report referenced in this paragraph for its content.

108.    Dexia denies the allegations in paragraph 108, except admits that there is a September 21, 1999 e-mail referenced in this paragraph and refers to that document for its content.

109.    Dexia denies the allegations in paragraph 109, except refers to the preliminary report referenced in this paragraph for its content.

110.    Dexia denies the allegations in paragraph 110, except admits that there is a September 21, 1999 e-mail referenced in this paragraph and refers to it for its content, and refers to the preliminary report referenced in this paragraph for its content.

111.    Dexia denies the allegations in paragraph 111, except admits that there is a September 21, 1999 e-mail referenced in this paragraph and refers to that document for its content.

112.    Dexia denies the allegations in paragraph 112, except admits that Geert Dauwe, Rene Avonts, and J. Van der Ven are former employees of Artesia; admits that Geert Dauwe was placed under suspicion in Belgium; and refers to the internal Artesia memorandum referenced in this paragraph for its content.

113.    Dexia denies the allegations in paragraph 113, except admits that Artesia entered into credit default swaps with officers of L&H relating to the LIC and Radial loans, and refers to the April 21, 1999 memorandum prepared by Artesia Bank's Internal Audit Department referenced in this paragraph for its content.

114.    Dexia denies the allegations in paragraph 114, except refers to the February 10, 2000 interoffice memorandum and the February 14, 2000 interoffice memorandum referenced in this paragraph for their content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

115.    Dexia denies the allegations in paragraph 115, and refers to the loan agreement cited for its content.

116.    Dexia denies the allegations in paragraph 116, except admits that on December 22, 1998, Artesia made a loan to LIC for approximately $6 million; admits that LIC transferred the funds to development companies for the Greek, Hungarian, Polish, and Czech languages; admits that these development companies transferred the funds to L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

117.    Dexia denies the allegations in paragraph 117, except refers to the internal Artesia Banking credit proposal for the LIC loan referenced in this paragraph for its contents.

118.    Dexia denies the allegations in paragraph 118, except refers to the preliminary report and the internal Artesia Banking documents referenced in this paragraph for their content.

119.    Dexia denies the allegations in paragraph 119, except admits that on or about January 4, 1999, Artesia entered into credit default swaps relating to the LIC loan; refers to the minutes of Artesia Banking's credit committee referenced in this paragraph for their content; and refers to the December 29, 1998 e-mail from Jan Van der Ven referenced in this paragraph for its content.

120.    Dexia denies the allegations in paragraph 120, except admits that Artesia Banking and LIC amended the December 22, 1998 loan agreement with LIC; refers to the initial loan agreement between Artesia Banking and LIC for its content; refers to the June 17, 1999 amendment referenced in this paragraph for its content; and refers to the e-mail by Peter Rabaey referenced in this paragraph for its content.

121.    Dexia denies the allegations in paragraph 121, except refers to the January 30, 2000 audit report referenced in this paragraph for its content.

122.    Dexia denies the allegations in paragraph 122, except admits that it entered into credit default swaps that were related to the Radial and LIC loans.

123.    Dexia denies the allegations in paragraph 123, except admits that Artesia Banking made a loan to Radial on or about September 29, 1998; admits that the loan was due June 30, 1999; admits that Artesia extended the loans to December 15, 1999; and admits that Artesia entered into credit default swaps in relation to the Radial loan.

124.    Dexia denies the allegations in paragraph 124, except admits that Artesia Banking made a loan to LIC on or about December 22, 1998; admits that the loan was due June 30, 1999; admits that the loan was extended to December 15, 1999; and admits that Artesia entered into credit default swaps in relation to the LIC loan.

125.    Dexia denies the allegations in paragraph 125, except admits that Artesia Banking extended the Radial and LIC loans until December 15, 1999, and refers to the document cited for its content.

126.    Dexia denies the allegations in paragraph 126, except refers to the January 20, 2000 audit report referenced in this paragraph for its content.

127.    Dexia denies the allegations in paragraph 127, except refers to the January 31, 2000 memorandum referenced in this paragraph for its content.

128.    Dexia denies the allegations in paragraph 128, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the formation of the LDF, or the funding from Mercator and Noordstar, or L&H's accounting practices.

129.    Dexia denies the allegations in paragraph 129, except refers to the March 1999 fax referenced in this paragraph for its content.

130.    Dexia denies the allegations in paragraph 130, except admits that Artesia was requested to grant a $20 million loan to LDF; and refers to the June 21, 1999 e-mail and the preliminary report referenced in this paragraph for their content.

131.    Dexia denies the allegations in paragraph 131, except refers to the credit committee's minutes referenced in this paragraph for their content; admits that a credit proposal for a $20 million loan to LDF was submitted to Artesia Banking's Credit Committee; admits that on June 25, 1999, Artesia granted a personal $20 million line of credit to Lernout, Hauspie, and Willaert; and admits that 650,000 shares of L&H stock were pledged as collateral.

132.    Dexia denies the allegations in paragraph 132, except refers to Artesia Banking's internal documents and the June 25, 1999 loan agreement between Artesia and the Principal Officers referenced in this paragraph for their content.

133.    Dexia denies the allegations in paragraph 133, except admits that on June 25, 1999, Artesia granted a personal $20 million line of credit to Lernout, Hauspie and Willaert; states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning use of the funds by Lernout, Hauspie and Willaert, or L&H's accounting practices; and refers to L&H's Form 10-Q for the quarter ended June 30, 1999 and Form 10-K for the year ended December 31, 1999 for their content.

134.    Dexia denies the allegations in paragraph 134, except admits that Artesia's personal loan to Lernout, Hauspie and Willaert was due in October 1999; admits that Artesia extended the loan to December, 1999; refers to the internal memorandum by B. Ferrand dated September 7, 1999 quoted in this paragraph (although not cited) for its content.

135.    Dexia denies the allegations in paragraph 135, except refers to the December 27, 1999 e-mail referenced in this paragraph for its content.

136.    Dexia denies the allegations in paragraph 136, except refers to the letter from Artesia to KPMG dated on or about March 17, 2000 referenced in this paragraph for its content; and admits that the Radial, LIC, Lernout, Hauspie and Willaert loans were erroneously booked as having been paid in December 2000.

137.    Dexia denies the allegations in paragraph 137, except admits that Artesia made a $20 million personal loan to Lernout, Hauspie, and Willaert; admits that Artesia entered into credit default swaps with Lernout and Hauspie for two loans to entities doing business with L&H; admits that the Radial, LIC, Lernout, Hauspie and Willaert loans were erroneously booked as having been paid in December 2000; refers to internal audit reports referenced in this paragraph for their content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

138.    Dexia denies the allegations in paragraph 138, except refers to the preliminary report referenced in this paragraph for its content.

139.    Dexia denies the allegations in paragraph 139.

140.    Dexia denies the allegations in paragraph 140, except refers to the March 8, 1999 memorandum referenced in this paragraph for its content; and admits that Bernard Mommens was an officer and in-house legal counsel of Artesia.

141.    Dexia denies the allegations in paragraph 141.

142.    Dexia denies the allegations in paragraph 142, except admits that Artesia provided financing to LHIC; admits that LHIC was an investment fund and that it was founded by Hauspie and Lernout in 1998; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning additional details regarding the formation of LHIC, LHIC's use of loan funds, or the management structure of LHIC.

143.    Dexia denies the allegations in paragraph 143, except admits that Artesia participated in the extension of a $160 million line of credit to LHIC in or about December 1998, of which $55 million would be provided by Artesia; admits that Artesia amended its credit facility with LHIC in April 2000 to increase the funds available to LHIC by $25 million, and refers to the Artesia Banking documents referenced in this paragraph for their content.

144.    Dexia denies the allegations in paragraph 144, except admits that the funds made available to LHIC were secured by pledges of L&H stock, and refers to the June 2000 Report referenced in this paragraph for its content.

145.    Dexia denies the allegations in paragraph 145, except admits that Nico Willaert approached Artesia in 2000 to obtain a $25 million loan to Gaston Bastiaens; admits that Artesia extended the $25 million loan to Gaston Bastiaens; admits that Gaston Bastiaens used the loan to purchase L&H stock; and refers to the discovery documents referenced in this paragraph for their content.

146.    Dexia denies the allegations in paragraph 146.

147.    Dexia denies the allegations in paragraph 147, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

148.    Dexia denies the allegations in paragraph 148, except admits that Artesia was a member of a banking consortium which extended a line of credit to L&H for $430 million as part of L&H's acquisition of Dictaphone; and admits that Artesia conditioned its participation in the credit facility on the repayment of the Radial loan, the LIC loan, and the $20 million line of credit to Lernout, Hauspie and Willaert.

149.    Dexia denies the allegations in paragraph 149, except refers to the credit proposal referenced in this paragraph for its content.

150.    Dexia denies the allegations in paragraph 150, except refers to the credit proposal and Rabaey e-mail referenced in this paragraph for their content.

151.    Dexia denies the allegations in paragraph 151, except refers to the credit proposal referenced in this paragraph for its content.

152.    Dexia denies the allegations in paragraph 152, except refers to the updated credit proposal referenced in this paragraph for its content.

153.    Dexia denies the allegations in paragraph 153, except refers to the January 5, 2000 memorandum referenced in this paragraph for its content.

154.    Dexia denies the allegations in paragraph 154, except refers to the March 7, 2000 L&H press release for its content.

155.    Dexia denies the allegations in paragraph 155.

156.    Dexia denies the allegations in paragraph 156, except refers to the credit proposals referenced in this paragraph for their content.

157.    Dexia denies the allegations in paragraph 157, except refers to the Dictaphone Credit Proposal referenced in this paragraph for its content.

158.    Dexia denies the allegations in paragraph 158, except refers to the Dictaphone Credit Proposal referenced in this paragraph for its content.

159.    Dexia denies the allegations in paragraph 159, except refers to the Dictaphone Credit Proposal referenced in this paragraph for its content.

160.    Dexia denies the allegations in paragraph 160, except admits that Rabaey was the credit analyst responsible for the Dictaphone loan.

161.    Dexia denies the allegations in paragraph 161, except refers to the credit proposal referenced in this paragraph for its content.

162.    Dexia denies the allegations in paragraph 162, except admits that in or around April 2000, Artesia's management committee approved its participation in a "Club Deal" as a member of a syndicate including other banks; Artesia agreed to provide up to $50 million under the credit facility; admits that KBC Bank and Fortis Bank were other members of the "Club Deal"; and refers to the credit proposal discussed in this paragraph for its content.

163.    Dexia denies the allegations in paragraph 163, except refers to the credit proposal for its content; and admits that repayment of Artesia's loans to LIC, Radial, Lernout, Hauspie and Willaert was received in January 2000.

164.    Dexia denies the allegations in paragraph 164, except admits that the Banking Credit Committee met on April 27, 2000.

165.    Dexia denies the allegations in paragraph 165, except admits that on or about May 2, 2000, Artesia approved the credit facility to finance L&H's acquisition of Dictaphone; admits that the credit facility was for $430 million, $50 million of which would come from Artesia; admits that KBC Bank, Fortis Bank, Deutsche Bank and Dresdner Bank were other members of the banking syndicate; and refers to the credit facility for its content.

166.    Dexia denies the allegations in paragraph 166, except admits that the credit facility was for $430 million; and refers to the credit facility and Artesia Banking's documents referenced in this paragraph for their content.

167.    Dexia denies the allegations in paragraph 167, except refers to the bank documents referenced in this paragraph for their content.

168.    Dexia denies the allegations in paragraph 168, except refers to the Dictaphone Credit Proposal referenced in this paragraph for its content.

169.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 169, except admits that Artesia's share of the credit facility was $50 million.

170.    Dexia denies the allegations in paragraph 170, except refers to the Internal Audit Department reports referenced in this paragraph for their content.

171.    Dexia denies the allegations in paragraph 171, except refers to the document quoted in this paragraph for its content.

172.    Dexia denies the allegations in paragraph 172, except admits that Francois Saverys was the director of Global Credit Risk at Artesia; and refers to the March 6, 2000 document from Piret to Dauwe referenced in this paragraph for its content.

173.    Dexia denies the allegations in paragraph 173, except refers to the internal document referenced in this paragraph for its content.

174.    Dexia denies the allegations in paragraph 174, except admits that Artesia did not file tax forms for the consideration paid under the LIC and Radial credit default swaps, and refers to the documents referenced in this paragraph for their content.

175.    Dexia denies the allegations in paragraph 175, except admits that Cordius Asset Management was a subsidiary of Artesia; and refers to the February 8, 2000 report referenced in this paragraph for its content.

176.    Dexia denies the allegations in paragraph 176, except refers to the February 10, 2000 report referenced in this paragraph for its content.

177.    Dexia denies the allegations in paragraph 177, except refers to the March 9, 2000 report referenced in this paragraph for its content.

178.    Dexia denies the allegations in paragraph 178, except admits that Artesia was a member of a banking consortium which provided financing to L&H in relation to its acquisition of Dictaphone; and refers to the Cordius reports referenced in this paragraph for their content.

179.    Dexia denies the allegations in paragraph 179.

180.    Dexia denies the allegations in paragraph 180.

181.    Dexia denies the allegations in paragraph 181.

182.    Dexia denies the allegations in paragraph 182, except refers to the document quoted in this paragraph for its content.

183.    Dexia denies the allegations in paragraph 183.

184.    Dexia denies the allegations in paragraph 184.

185.    Dexia denies the allegations in paragraph 185, except admits that Artesia granted a bank guarantee to the shareholders of Heitmann International in connection with L&H's acquisition of Heitmann International.

186.    Dexia denies the allegations in paragraph 186.

187.    Dexia denies the allegations in paragraph 187.

188.    Dexia denies the allegations in paragraph 188.

189.    Dexia denies the allegations in paragraph 189, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning alleged misrepresentations by L&H and "other participants."

190.    Dexia denies the allegations in paragraph 190, except admits that Artesia Banking made loans to entities doing business with L&H; admits that Artesia entered into credit default

swaps with officers of L&H in relation to two of the loans made to entities doing business with L&H; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices.

191.    Dexia denies the allegations in paragraph 191, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the consideration accepted by Stonington in exchange for its interest in Dictaphone; and refers to the Merger Agreement for its content.

192.    Dexia denies the allegations in paragraph 192, except admits that L&H stock dropped from $36.99 to $29.81 on August 8, 2000, and that L&H stock closed at $26.75 on August 9, 2000; and refers to the August 8, 2000 article in *The Wall Street Journal* referenced in this paragraph for its content.

193.    Dexia denies the allegations in paragraph 193, except admits that Bastiaens resigned as CEO of L&H on or about August 25, 2000; admits that L&H stock closed at $30.06 on August 25, 2000; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting, or investors' confidence in L&H's reporting.

194.    Dexia denies the allegations in paragraph 194, except admits that the SEC announced that it would investigate L&H's financial statements on or about September 20, 2000; admits that the value of L&H stock declined on September 20, 2000 and September 21, 2000 to close at $15.13; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning variations in L&H's share price, L&H's accounting, or investors' confidence in L&H's reporting.

195.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 195, except denies that Artesia engineered fraudulent LDC transactions.

196.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 196, except denies that Artesia engineered fraudulent LDC transactions or played an integral role in those transactions.

197.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 197, except refers to the October 26, 2000 issue of *The Wall Street Journal* for its content; and denies that Artesia engineered fraudulent LDC transactions.

198.     Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 198, except admits that L&H announced it would have to restate its financial results for 1998, 1999, and the first half of 2000 on November 9, 2000; and denies that Artesia engineered the fraudulent LDC transactions.

199.     Dexia denies the allegations in paragraph 199.

200.     Dexia denies the allegations in paragraph 200.

201.     Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 201, except denies that Artesia or Artesia Securities knowingly participated in a fraudulent scheme, and denies that Artesia or Artesia Securities made any materially false or misleading representations.

202.     Dexia denies the allegations in paragraph 202.

203.     Dexia denies the allegations in paragraph 203, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Stonington's ability to terminate the Merger Agreement.

204.    Dexia denies the allegations in paragraph 204, except admits that L&H securities are now worthless.

205.    Dexia denies the allegations in paragraph 205.

206.    Dexia denies the allegations in paragraph 206.

207.    Dexia denies the allegations in paragraph 207.

208.    Dexia denies the allegations in paragraph 208, except refers to the preliminary report for its content.

209.    Dexia denies the allegations in paragraph 209, except refers to the report prepared for L&H's Audit Committee for its content; and refers to *The Wall Street Journal* articles referenced in this paragraph for their content.

210.    Dexia denies the allegations in paragraph 210, except admits that in or around November 2000, CBF sought information from Artesia Banking concerning its relationship with L&H; and refers to the Artesia Banking documents obtained in discovery, Artesia Banking's response to the CBF, and the January 2000 findings of the Internal Audit Department referenced in this paragraph for their content.

211.    Dexia denies the allegations in paragraph 211, except refers to the March 16, 2001 article in *L'Echo* referenced in this paragraph for its content.

212.    Dexia denies the allegations in paragraph 212, except admits that the Belgian authorities had interviewed at least five employees of Artesia in connection with the L&H investigation by March 16, 2001.

213.    Dexia denies the allegations in paragraph 213, except admits that it actively pursued claims in the L&H bankruptcy proceeding in both the U.S. and in Belgium.

214.    Dexia denies the allegations in paragraph 214, except refers to the June 24, 2003 article in *The Belgian Financial Times* referenced in this paragraph for its content.

215.    Dexia admits that L&H issued a press release on April 28, 1998, and refers to that document for its content.

216.    Dexia admits that L&H filed a Form 6-K with the SEC on or about May 1, 1998, and refers to that document for its content.

217.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 217, except refers to L&H's restated financial statements for their content.

218.    Dexia admits that L&H issued a press release on July 28, 1998, and refers to that document for its content.

219.    Dexia admits that L&H filed a Form 6-K with the SEC on or about August 7, 1998, and refers to that document for its content.

220.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 220, except refers to L&H's restated financial statements for their content.

221.    Dexia admits that L&H issued a press release on October 27, 1998, and refers to that document for its content.

222.    Dexia admits that L&H filed a Form 6-K with the SEC on or about October 29, 1998, and refers to that document for its content.

223.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 223, except refers to L&H's restated financial statements for their content.

224.    Dexia admits that L&H issued a press release on April 7, 1999, and refers to that document for its content.

225.    Dexia admits that L&H filed a Form 6-K with the SEC on or about April 19, 1999, and refers to that document for its content.

226.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 226, except refers to L&H's April 7, 1999 press release for its content.

227.    Dexia admits that L&H filed a Form 20-F with the SEC on or about June 30, 1999, and refers to that document for its content.

228.    Dexia denies the allegations in paragraph 228, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices, and refers to L&H's restated financial statements for their content.

229.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 229, except refers to L&H's 1998 Annual Report on Form 20-F for its content.

230.    Dexia admits that L&H issued a press release on May 18, 1999, and refers to that document for its content.

231.    Dexia admits that L&H filed a Form 6-K with the SEC on or about June 1, 1999, and refers to that document for its content.

232.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 232, except refers to L&H's restated financial statements for their content.

233.    Dexia admits that L&H issued a press release on July 28, 1999, and refers to that document for its content.

234.    Dexia admits that L&H filed a Form 6-K with the SEC on or about August 6, 1999, and refers to that document for its content.

235.    Dexia denies the allegations in paragraph 235, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices, and refers to L&H's restated financial statements for their content.

236.    Dexia admits that L&H issued a press release on October 27, 1999, and refers to that document for its content.

237.    Dexia admits that L&H filed a Form 6-K with the SEC on or about November 4, 1999, and refers to that document for its content.

238.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 238, except refers to L&H's restated financial statements for their content.

239.    Dexia admits that L&H issued a press release on February 9, 2000, and refers to that document for its content.

240.    Dexia denies the allegations in paragraph 240, except states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning L&H's accounting practices, and refers to L&H's restated financial statements for their content.

241.    Dexia denies the allegations in paragraph 241.

242.    Dexia denies the allegations in paragraph 242, except admits that analyst reports issued by Artesia Securities are not publicly available on the databases that typically contain such reports.

243.     Dexia denies the allegations in paragraph 243, except admits that Pierre-Paul Verelst was an analyst for Artesia Securities; admits that Verelst issued a report concerning L&H on May 19, 1999, and refers to that report for its content.

244.     Dexia denies the allegations in paragraph 244.

245.     Dexia denies the allegations in paragraph 245, except admits that Verelst issued a report concerning L&H on July 13, 1999, and refers to that report for its content.

246.     Dexia denies the allegations in paragraph 246, except admits that Artesia extended a $20 million loan to Lernout, Hauspie, and Willaert in June 1999.

247.     Dexia denies the allegations in paragraph 247, except admits that Verelst issued a report concerning L&H on July 29, 1999, and refers to that report for its content.

248.     Dexia denies the allegations in paragraph 248, except refers to the July 29, 1999 report for its content.

249.     Dexia denies the allegations in paragraph 249, except refers to the July 29, 1999 report for its content.

250.     Dexia denies the allegations in paragraph 250, except refers to the July 29, 1999 report for its content.

251.     Dexia denies the allegations in paragraph 251, except refers to the September 15, 1999 report for its content.

252.     Dexia denies the allegations in paragraph 252, except refers to the September 15, 1999 report for its content.

253.     Dexia denies the allegations in paragraph 253, except refers to the September 15, 1999 report for its content.

254.     Dexia denies the allegations in paragraph 254.

255.    Dexia denies the allegations in paragraph 255, except refers to the report referenced in this paragraph for its content.

256.    Dexia denies the allegations in paragraph 256, except refers to the report referenced in this paragraph for its content.

257.    Dexia denies the allegations in paragraph 257.

258.    Dexia denies the allegations in paragraph 258, except refers to the October 28, 1999 report for its content.

259.    Dexia denies the allegations in paragraph 259, except refers to the October 28, 1999 report for its content.

260.    Dexia denies the allegations in paragraph 260.

261.    Dexia denies the allegations in paragraph 261, except refers to the November 18, 1999 report for its content.

262.    Dexia denies the allegations in paragraph 262, except refers to the November 18, 1999 report for its content.

263.    Dexia denies the allegations in paragraph 263.

264.    Dexia denies the allegations in paragraph 264, except refers to the December 28, 1999 and January 10, 2000 reports for their content.

265.    Dexia denies the allegations in paragraph 265, except admits that Artesia owned 100% of the shares of Artesia Securities throughout the time period that Verelst is alleged to have issued analyst reports; and admits that Artesia was the reference shareholder of Artesia.

266.    Dexia denies the allegations in paragraph 266, except refers to the internal Artesia Banking documents referenced in this paragraph for their content.

267.    Dexia denies the allegations in paragraph 267, except admits that Rene Avonts, a member of Artesia's Management Committee, was the ultimate head of Artesia Securities.

268.    Dexia denies the allegations in paragraph 268, except admits that Artesia provided the initial funding for Artesia Securities; and admits that Artesia Securities was located in a building also used by Artesia.

269.    Dexia denies the allegations in paragraph 269, except admits that Verelst's e-mail was pierre-paul_verelst@artesia.com; and admits that Artesia Securities employees shared a common e-mail domain name with employees of Artesia.

270.    Dexia denies the allegations in paragraph 270, except refers to the May 7, 1999 memorandum referenced in this paragraph for its content.

271.    Dexia denies the allegations in paragraph 271.

272.    Dexia denies the allegations in paragraph 272.

273.    Dexia denies the allegations in paragraph 273.

274.    Dexia denies the allegations in paragraph 274.

275.    Dexia denies the allegations in paragraph 275, except admits that Artesia received interest and fees in connection with loans to Radial, LIC, Lernout, Hauspie, and Willaert.

276.    Dexia denies the allegations in paragraph 276.

277.    Dexia denies the allegations in paragraph 277, except refers to Dexia's interrogatory responses for data concerning Artesia's trading in L&H shares.

278.    Dexia denies the allegations in paragraph 278, except admits that Artesia was part of a banking syndicate that provided a line of credit to L&H in connection with L&H's acquisition of Dictaphone; and admits that Artesia earned fees and interest payments in connection with the line of credit.

279.    Dexia denies the allegations in paragraph 279.

280.    Dexia denies the allegations in paragraph 280.

281.    Dexia denies the allegations in paragraph 281.

282.    Dexia denies the allegations in paragraph 282, except refers to the June 18, 2003 edition of *De Financieël Economische Tijd* for its content.

283.    Dexia denies the allegations in paragraph 283.

284.    Dexia denies the allegations in paragraph 284, except admits that Artesia Securities was a subsidiary of Artesia Banking.

285.    Dexia denies the allegations in paragraph 285, except admits that Artesia has loaned substantial sums to L&H, Lernout, Hauspie, and Willaert; admits that the bankruptcy of L&H has resulted in Artesia losing hundreds of millions of dollars; and admits that Artesia was one of the largest creditors in the L&H bankruptcy proceedings.

286.    Dexia denies the allegations in paragraph 286.

287.    Dexia denies the allegations in paragraph 287, except admits that Artesia suffered the loss of much of the money that it loaned to L&H and the Principal Officers.

288.    Dexia denies the allegations in paragraph 288, except admits that L&H at one time was one of the largest companies in Belgium; admits that Lernout and Hauspie were two of Belgium's richest men; and admits that Artesia earned fees on loans extended to L&H.

289.    Dexia denies the allegations in paragraph 289, except admits that Artesia Securities was a subsidiary of Artesia.

290.    Dexia denies the allegations in paragraph 290.

291.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 291, except admits that L&H stock traded on the NASDAQ; and

denies the allegation that Artesia Securities made material public misrepresentations or failed to disclose material facts regarding L&H's financial results during 1999 and 2000.

292.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 292.

293.    Dexia denies the allegations in paragraph 293.

294.    Dexia denies the allegations in paragraph 294, except incorporates the responses set forth above.

295.    Dexia denies the allegations in paragraph 295, except admits that Plaintiff purports to bring this action for violations § 10(b) of the 1934 Act, and Rule 10b-5.

296.    Dexia denies the allegations in paragraph 296.

297.    Dexia denies the allegations in paragraph 297.

298.    Dexia denies the allegations in paragraph 298.

299.    Dexia denies the allegations in paragraph 299.

300.    Dexia denies the allegations in paragraph 300, except refers to the preliminary report referenced in this paragraph for its content.

301.    Dexia denies the allegations in paragraph 301.

302.    Dexia denies the allegations in paragraph 302.

303.    Dexia denies the allegations in paragraph 303, except incorporates the responses set forth above.

304.    Dexia denies the allegations in paragraph 304.

305.    Dexia denies the allegations in paragraph 305.

306.    Dexia denies the allegations in paragraph 306.

307.    Dexia denies the allegations in paragraph 307.

308.     Dexia denies the allegations in paragraph 308.

309.     Dexia denies the allegations in paragraph 309.

310.     Dexia denies the allegations in paragraph 310, except incorporates the responses set forth above.

311.     Dexia denies the allegations in paragraph 311.

312.     Dexia states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 312, except refers to the L&H financial statements and restatements referenced in this paragraph for their content.

313.     Dexia denies the allegations in paragraph 313.

314.     Dexia denies the allegations in paragraph 314, except admits that Artesia loaned approximately $6 million to Radial; admits that Artesia entered into credit default swaps with Lernout, Hauspie, and Willaert in relation to the Radial loan; admits that Artesia loaned approximately $6 million to LIC; admits that Artesia entered into credit default swaps with Lernout and Hauspie in relation to the LIC loan; admits that Artesia entered into an addendum to the LIC loan agreement and refers to that document for its content; admits that Artesia granted a $20 million personal loan to Lernout, Hauspie and Willaert; admits that Artesia agreed to provide up to $50 million, as part of a credit facility from a consortium of banks, related to L&H's acquisition of Dictaphone; refers to the documents cited in this paragraph for their content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the use of funds by L&H, Lernout, Hauspie or Willaert, and as to L&H's accounting practices.

315.     Dexia denies the allegations in paragraph 315, except refers to the Artesia Banking internal documents referenced in this paragraph for their content.

316.    Dexia denies the allegations in paragraph 316, except admits that Artesia extended a loan to Bastiaens.

317.    Dexia denies the allegations in paragraph 317.

318.    Dexia denies the allegations in paragraph 318, except admits that Artesia, as a member of a banking consortium, provided up to $50 million as part of a credit facility extended to L&H in relation to L&H's acquisition of Dictaphone.

319.    Dexia denies the allegations in paragraph 319.

320.    Dexia denies the allegations in paragraph 320, except incorporates the responses set forth above.

321.    Dexia denies the allegations in paragraph 321.

322.    Dexia lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 322, except refers to the L&H financial statements and restatements referenced in this paragraph for their content.

323.    Dexia denies the allegations in paragraph 323, except admits that Artesia extended loans to entities doing business with L&H; admits that Artesia entered into credit default swaps with officers of L&H in relation to two loans to entities doing business with L&H; and admits that Artesia made a personal loan for $20 million to Lernout, Hauspie, and Willaert.

324.    Dexia denies the allegations in paragraph 324, except admits that Artesia loaned approximately $6 million to Radial; admits that Artesia entered into credit default swaps with Lernout, Hauspie, and Willaert in relation to the Radial loan; admits that Artesia loaned approximately $6 million to LIC; admits that Artesia entered into credit default swaps with Lernout and Hauspie in relation to the LIC loan; admits that Artesia entered into an addendum to the LIC loan agreement and refers to that document for its content; admits that Artesia granted a

$20 million personal loan to Lernout, Hauspie and Willaert; admits that Artesia agreed to provide up to $50 million, as part of a credit facility from a consortium of banks, related to L&H's acquisition of Dictaphone; refers to the documents cited in this paragraph for their content; and states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the use of funds by L&H, Lernout, Hauspie or Willaert, and as to L&H's accounting practices.

325.     Dexia denies the allegations in paragraph 325, except refers to the Artesia Banking internal documents referenced in this paragraph for their content.

326.     Dexia denies the allegations in paragraph 326, except admits that Artesia extended a loan to Bastiaens.

327.     Dexia denies the allegations in paragraph 327.

328.     Dexia denies the allegations in paragraph 328, except admits that Artesia, as a member of a banking consortium, provided up to $50 million as part of a credit facility extended to L&H in relation to L&H's acquisition of Dictaphone.

329.     Dexia denies the allegations in paragraph 329.

## ADDITIONAL DEFENSES

1.   Plaintiffs' claims are barred wholly or in part by the applicable statute of limitations.

2.   The Plaintiffs lack standing to maintain some or all of their claims.

3.   Plaintiffs' claims are barred wholly or in part for lack of personal jurisdiction over Dexia.

4.   Plaintiffs' claims are barred wholly or in part because Plaintiffs failed to make reasonable efforts to mitigate their injuries or damages.

5.   Plaintiffs' claims are barred wholly or in part because the decline in the market price of the L&H securities purchased by Plaintiffs resulted wholly or in part from factors other than the alleged conduct of Dexia.

6.   Plaintiffs' claims are barred wholly or in part because the alleged damages were not proximately caused by Dexia.

7.   Plaintiffs' claims are barred wholly or in part because the liability of all defendants and other responsible parties, named or unnamed, should be apportioned according to their relative degrees of fault.

8.   Any recovery for damages allegedly incurred by Plaintiffs is subject to offset in the amount of any tax benefits or other benefits actually received through their investments.

9.   Plaintiffs' claims are barred wholly or in part because Plaintiffs were expressly advised about the material facts and risks concerning their investments through meaningful cautionary statements contained in public filings of L&H.

10. Plaintiffs' claims are barred wholly or in part because of lack of subject matter jurisdiction.

11. Plaintiffs' claims are barred wholly or in part on the basis of the doctrines of laches, res judicata and collateral estoppel.

12. Plaintiffs' claims are barred wholly or in part on the basis of the doctrine of in pari delicto.

13. Plaintiffs' claims are barred wholly or in part because the Complaint fails to state a claim upon which relief can be granted.

14. Plaintiffs' claims are barred wholly or in part because the Complaint fails to allege fraud with particularity.

15. Plaintiffs' claims are barred wholly or in part because Artesia acted at all times in good faith.

16. Plaintiffs' claims are barred wholly or in part because Artesia did not directly or indirectly induce Artesia Securities, Cordius Asset Management or Pierre-Paul Verelst to issue the allegedly false and misleading analyst reports.

17. Plaintiffs' claims are barred wholly or in part because Pierre-Paul Verelst reasonably believed the opinions expressed in his analyst reports at the time they were issued.

18. Plaintiffs' claims are barred wholly or in part because Artesia Securities analyst reports and Cordius Asset Management reports were not disseminated to the public.

19. Plaintiffs' claims are barred wholly or in part because the fraud-on-the-market presumption does not apply.

20. Plaintiffs' claims are barred wholly or in part because Artesia did not have a fiduciary duty to L&H or its shareholders.

21. Plaintiffs' claims are barred wholly or in part because statements in Artesia Securities analyst reports and the Cordius Asset Management reports referenced in the First Amended Complaint are non-actionable statements of opinion or puffery.

Dated:  December 1, 2006

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO

By:  /s/  Breton Leone-Quick
   Peter M. Saparoff (BBO#441740)
   Breton Leone-Quick (BBO#655571)

One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241

CLIFFORD CHANCE US LLP
 James B. Weidner
 Thomas Teige Carroll
31 West 52nd Street
New York, NY 10019-6131
Tel: (212) 878-8000
Fax: (212) 878-8375

*Counsel for Dexia Bank Belgium*

**Certificate of Service**

I, Breton Leone-Quick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 1, 2006.

 /s/  Breton Leone-Quick         Dated:  December 1, 2006