# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br>        Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>        Defendants. | No.:  04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br>        Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>        Defendants. | No.:  04-CV-10477 (PBS) |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br>        Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>        Defendants. | No.:  04-CV-10501 (PBS) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEXIA BANK BELGIUM'S OBJECTION TO THE DECEMBER 28, 2006 ORDER REGARDING WORK PRODUCT

### PRELIMINARY STATEMENT

This motion marks the *sixth* time that Dexia has repeated the same arguments in an attempt to obtain Plaintiffs' attorney opinion work product.  On *five separate prior occasions* this Court has rejected those attempts.

*First*, in September 2005, Dexia filed a motion seeking the production of Plaintiffs' entire work product files (opinion and non-opinion) that were created during the course of Plaintiffs' investigation of potential claims against Dexia. Dexia argued that production was warranted because Plaintiffs had waived all attorney work product protection for matters related to their investigation. On December 22, 2005, this Court issued an order characterizing Dexia's request as "vastly overbroad," and limited Plaintiffs' production to Plaintiffs' *non-opinion* work product, "dated, created, sent or received before August 19, 2001." Notably, the Court rejected Dexia's request for *any* work product created after August 19, 2001.

*Second*, in March 2006 Dexia filed an identical motion seeking the production of Plaintiffs' work product after August 19, 2001. Again, Dexia argued that it had a need for all work product created by Plaintiffs after August 19, 2001. In a July 13, 2006 Order, this Court *again* rejected Dexia's request, stating that "[t]he Court adheres to the parameters it previously set respecting discovery on this issue."

*Third*, in opposition to Plaintiffs' motion to compel the return of the very same inadvertently produced documents at issue in this motion, Dexia argued that Plaintiffs had waived any protections as to those documents. At that time, as now, Dexia repeatedly urged that it had a substantial need for those documents.[1] On July 13, 2006, the Court rejected Dexia's arguments for a third time, and ordered Dexia to return the inadvertently produced documents. *See* July 13, 2005 Order.

---

[1] *See* Dexia's Memorandum Of Law In Opposition To Plaintiffs' Motion To Compel The Return Of Inadvertently Produced Documents (*Baker* Docket No. 70, *Filler* Docket 85, *Stonington* Docket No. 62), at 1 (describing the lists as "highly relevant to Dexia's statute of limitations defense" and that they "provide strong evidence that Plaintiffs did not conduct *any* investigation of potential claims against Dexia until sometime after August 2002") (emphasis in original); *Id.* at 1; *see also id.* at 6 (arguing production is "critical to Dexia's defense of this litigation."); *Id.* at 7 (arguing Dexia's entitlement to documents under a general waiver argument);.

*Fourth*, on July 27, 2006, Dexia filed objections to this Court's July 13, 2006 Order concerning the inadvertently produced documents, again arguing global waiver and substantial need. Judge Saris denied those objections in open court on July 28, 2006.

*Fifth*, despite those four failed prior attempts, on August 11, 2006, Dexia once again asserted that it had a substantial need for the documents. This Court rejected Dexia's argument, ruling that it "adheres to its prior rulings with respect to temporal limitations on discovery concerning the issue of whether the Plaintiffs conducted the necessary investigation after 'storm warnings'."

Now, in its latest repetition of the same arguments rejected five times already, Dexia seeks once again to obtain Plaintiffs' opinion work product through the production of the Coding Sheets that this Court has already ordered Dexia to return. Dexia is merely repeating word for word old arguments and – for the *sixth time* – these arguments must be rejected. Indeed, Dexia's arguments in its objection are literally copied *verbatim* from the body of its August 11, 2006 motion and are substantively indistinguishable from its arguments in the preceding four pleadings on this same issue.

As Plaintiffs have briefed already, the Coding Sheets sought by Dexia were prepared by Plaintiffs' counsel sometime after July 24, 2002. They contain a list of defendants, witnesses and issues, as well as handwritten attorney notes, all of which related to matters that, in the opinion of Plaintiffs' Counsel, were significant to the *In re L&H* litigation. In fact, those Coding Sheets were created for, and used by, attorneys conducting Plaintiffs' internal review of documents produced in the *In re L&H* litigation.[2] Thus, these Coding Sheets contain attorneys'

---

[2] *See* Declaration of Avi Josefson in Support of Plaintiff's Motion to Compel the Return of Inadvertently Produced Opinion Work Product Documents, dated March 8, 2006 ("Josefson Decl.") (*Baker* Docket No. 71, *Filler* Docket No. 82, *Stonington* Docket No. 65).

thoughts and reflections on what matters were important to the litigation, as well as particular

documents at issue in that litigation. The documents were never intended for production to

anyone, and, as this Court has previously held, Plaintiffs took adequate steps to protect against

their disclosure. The documents are therefore the epitome of an attorney's opinion work product.

In implicit recognition that counsel's opinion work product is subject to virtually absolute

protection, Dexia attempts once again to argue that the Coding Sheets are not opinion work

product, despite the obvious mental impressions of counsel reflected on those sheets. Dexia cites

no support for this proposition and it should be rejected by the Court.

Dexia also repeats its failed claim that it has a compelling need for those Coding Sheets.

As with Dexia's previous recitations of this same argument, Dexia's claim of need is based upon

both a misreading of the law of this Circuit regarding its statute of limitations defense and

unfounded inferences from the sheets themselves. Dexia claims it "needs" the Coding Sheets to

delve into "the thought processes of the lawyers involved" and to show that Plaintiffs' counsel

were, in fact, not actually investigating Dexia's role in the fraud prior to the two-year period

preceding the filing of Plaintiffs' complaint. Dexia's Objection at 9 ("Dexia Obj."). This

argument is fatally flawed for several reasons. First, the Coding Sheets show no such thing.

Rather, they merely reflect the opinion of Plaintiffs' counsel as to what issues were important to

the document review in the *In re L&H* case. Second, the Coding Sheets were created at a time

period during which this Court has already ruled that Plaintiffs' counsel's conduct is not relevant

to Dexia's statue of limitations defense. Finally, and most importantly, the entire foundation for

Dexia's claim of "necessity" rests on its alleged need for evidence to show that, subjectively,

Plaintiffs' counsel in this case allegedly ignored Dexia's role in the fraud and failed to direct its

investigation specifically towards Dexia. As demonstrated below, such evidence of the

subjective behavior and intent of Plaintiffs' counsel, particularly after August 19, 2001, is

irrelevant to the *objective* standard implicated by Dexia's statute of limitations defense.[3]  Thus,

this evidence cannot properly be the basis for Dexia's attempt to invade the attorney work

product privilege.

For the very same reasons applied by this Court on December 22, 2005, July 13, 2006,

July 28, 2006, and December 28, 2006, Dexia's objection should be denied *with prejudice*.

## ARGUMENT

**I.    THE CODING SHEETS FALL OUTSIDE OF THE SCOPE OF THIS COURT'S DECEMBER 22, 2005, JULY 13, 2006, AND DECEMBER 28, 2006 ORDERS**

Dexia's objection spends a great deal of time arguing over whether Plaintiffs' Coding

Sheets should be viewed as opinion or non-opinion work product.  As demonstrated below, the

documents at issue here are clearly opinion work product subject to the highest protection.

However, the Court need not even address that issue.  All of the Coding Sheets were created

*after* August 19, 2001.  Thus, they fall beyond the scope of this Court's December 22, 2005, July

13, 2006, and December 28, 2006 Orders, in which the Court already rejected Dexia's arguments

of purported "need" for Plaintiffs' work product during that time frame.  Dexia has offered no

new basis to disturb those rulings, except to now brazenly charge that the Court did not consider

work product protection in its December 28, 2006 Order, but instead issued an Order "only on

the basis of temporal relevance."  Dexia Obj. at 2-3.

Dexia's Objection fails because, in addition to challenging a ruling that this Court has

made on five separate occasions in this case: 1) the Coding Sheets are opinion work product that

---

[3] As shown below, Dexia's statute of limitations defense must focus on, among other things, what a reasonable investor would have done more than two years prior to Plaintiffs' filing suit.  *See generally Young v. Lepone*, 305 F.3d 1 (1ˢᵗ Cir. 2002) and discussion at pp. 8 – 9, *infra*.

is not discoverable, and 2) even if considered fact work product, the post-August 19, 2001

Coding Sheets have no bearing on whether Plaintiffs' investigation prior to August 19, 2001 was

objectively reasonable or whether an objectively reasonable investigation would have yielded the

internal documents that ultimately provided the basis for Plaintiffs' claims.

## II.    PLAINTIFFS' CODING SHEETS ARE OPINION WORK PRODUCT SUBJECT TO HEIGHTENED PROTECTION

Pursuant to Federal Rule of Civil Procedure 26(b)(3), factual work product is

discoverable if an adversary demonstrates that it "has substantial need of the materials in the

preparation of the party's case and that the party is unable without undue hardship to obtain the

substantial equivalent of the materials by other means." Even in cases where the discovery of a

party's factual work product is permitted, however, "the court shall protect against disclosure of

the mental impressions, conclusions, opinions, or legal theories of an attorney or other

representative of a party concerning the litigation." Fed. R. Civ. P.26(b)(3). This motion

implicates the latter category of attorney work product known as opinion work product. Opinion

work product is subject to virtually absolute protection regardless of an adverse party's need for

such information. *See* Class Plaintiffs' Memorandum of Law In Opposition to Dexia Bank

Belgium's Motion to Compel, dated March 22, 2006, at pp. 11-16 ("Pltfs' 3/22/06 Mem."

Attached as Exhibit A hereto) (*Quaak, et. al v. Dexia*, Civil Action No. 03-11566 (PBS), Docket

No. 197) and cases cited therein.

The Coding Sheets sought by Dexia here were prepared for internal use only by

Plaintiffs' litigation team. They reflect one iteration of the particular issues that Plaintiffs'

counsel wished document reviewers to focus upon in the *In re L&H* litigation, and thus

undeniably reflect counsel's thought processes. *See* Josefson Decl. at ¶ 6. Moreover, apart from

listing the defendants in that litigation, the other items on the Coding Sheets – including the

attorney handwritten notes – reflect issues that counsel deemed important to the case, as well as counsel's determination of which documents are relevant to those issues.

Dexia incredibly argues that because the one-page Coding Sheets list issues that could be "derived directly from the factual allegations" of plaintiffs' multi-hundred-page complaints, they are "no more revealing of attorney 'mental impressions' than the publicly-filed complaints themselves." Dexia Obj. at 6-7.[4] That argument is absurd on its face. Whether those issues listed on the confidential attorney Coding Sheets could be derived by someone else reviewing the vast information in the publicly filed complaints does not change the obvious fact that the Coding Sheets themselves reflect *Plaintiffs' counsel's* distillation of that information, based upon counsel's own conclusions and opinions. As such, they are quintessential opinion work product protected from disclosure. *See, e.g. In re Air Crash near Roselawn, Indiana on Oct. 31, 1994,* No. 95 C 4593, MDL 1070, 1997 WL 97096 (N.D. Ill, Feb 20, 1997) at Appendix, No. 58 (holding that a sheet reflecting issues for investigation is protected as attorney opinion work product because it reveals mental impressions); *In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 4 (D.D.C. 2002) ("Opinion work product contains the 'opinions, judgments, and thought processes of counsel and receives almost absolute protection from discovery" (citation omitted)); *Stone Container Corp. v. Arkwright Mut. Ins.,* No. 93 C 6626, 1995 U.S. Dist. LEXIS 2400, at *11 (N.D. Ill. Feb 22, 1995) (counsel's selection of documents for his client to review prior to a

---

[4] This assertion can hardly be taken seriously. If it were true that the Coding Sheets reveal no more than what is in Plaintiffs' complaints, Dexia would not be making repeated attempts to obtain those sheets, as Dexia already has copies of the complaints. Rather, what Dexia is really seeking is Plaintiffs' counsel's private thoughts about what issues were deemed important in the *In re L&H* litigation. This is made clear by Dexia's own statements. Dexia readily admits that it is seeking "inquiry into the *thought processes* of the people who conducted [Plaintiffs'] investigation," *i.e.* Plaintiffs' counsel. Dexia Obj. at 9 (emphasis added). Dexia also concedes that the Coding Sheet at issue here "lists 22 entities and/or issues that Plaintiffs *considered* relevant …" Dexia Obj. at 4 (emphasis added). The fact that those sheets, by Dexia's admission, reflect the considerations of Plaintiffs' counsel demonstrates their status as protected opinion work product.

deposition constituted protected opinion work product where counsel had no intention of revealing those documents, which would reveal his thought processes to his adversary).[5]

As noted in prior briefing, perhaps the leading decision concerning the discovery of opinion work product purportedly relevant to a statute of limitations defense in a securities fraud action is *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210 (D. Mass. 2000) (Wolf, J.). As Plaintiffs emphasized in connection with Dexia's previous motions to compel, *Axler* dictates that Plaintiffs' opinion work product is not discoverable here.[6]

*Axler*, like this case, involved a securities class action in which a defendant, Molten Metal, pursued a statute of limitations defense. *Id.* at 211. Molten Metal sought discovery concerning the investigation undertaken by the plaintiff's counsel. *Id.* at 212. By means of interrogatory responses, the plaintiffs stated that they had not personally conducted any investigation of the alleged fraud, but that their counsel had undertaken investigatory efforts following Molten Metal's disclosure of certain material, adverse information. *Id.* The *Axler* court recognized that the defendant was entitled to limited disclosure "from plaintiffs' counsel

---

[5] Tellingly, at no point in this briefing has Dexia cited any case holding that counsel's internal Coding Sheets reflecting the issues that counsel viewed as important to the case are unworthy of protection as opinion work product. Furthermore, *In re San Juan Dupont Plaza Hotel Fire Litig.* 859 F.2d 1007 (1st Cir. 1988), upon which Dexia relies, is entirely distinguishable. First, that case involved only an attorney's selection of deposition exhibits, not the attorney's internal description of issues deemed important to the litigation. Moreover, in *San Juan Dupont,* the Circuit affirmed the lower court's deposition exhibit identification protocol requiring parties to provide a list of exhibits five days in advance of depositions. The Circuit found that the exhibit list was non-opinion work product because the underlying documents were not privileged and the exhibits would ultimately be disclosed at the deposition anyway. By contrast, the Coding Sheets at issue here were never meant for disclosure to anyone outside of Plaintiffs' litigation team. Indeed, the *San Juan Dupont* Court viewed that distinction as critical when it distinguished other cases holding that an attorney's document selection process is highly protected opinion work product. The Court noted that in those cases "the lawyer's selection process [ ] was never designed to see the light of day; the exhibits had been selected not for use in examination of an adverse or neutral witness, but for a markedly more private purpose – preparation of the attorney's own client. We believe the distinction is a critical one." *Id.* at 1018. Similarly, here, Plaintiffs' Coding Sheets and the selection of litigation issues that they reflect were never meant to see the light of day and are therefore protected.

[6] Curiously, although Plaintiffs have repeatedly relied heavily upon *Axler* in opposing Dexia's previous motions to compel, Dexia again omits any discussion of this indistinguishable District of Massachusetts decision from its objection.

concerning what investigation they conducted, what information they received, and when they received it." *Id.* Nevertheless, the court emphasized that, because the relevant inquiry is when reasonable investors would have discovered facts necessary to establish their claims, "the opinions plaintiffs' counsel actually formed" were only tangentially relevant to Molten Metal's potential statue of limitations defense "as possible evidence of what a reasonable person would have concluded." *Id.*

As a result, the *Axler* court held that Molten Metal had failed to satisfy the exacting test required to justify the disclosure of opinion work product. *Id.* at 213 ("Rule 26(b)(3) admonishes courts ordering the discovery of work-product 'to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'") (quoting Fed. R. Civ. P. 26(b)(3)).[7] Accordingly, the court denied the defendant's motion to compel to the extent it sought the disclosure of "the analysis done or conclusions reached by plaintiffs' counsel," *i.e.* the plaintiffs' opinion work product. *Id.* at 213.[8]

---

[7] This holding, and the similar determinations reached by the decisions cited in note 8, *infra*, belie Dexia's assertion that the subjective opinions of Plaintiffs' counsel are somehow critical to Dexia's ability to prove its meritless statue of limitations defense. Parenthetically, it is worth noting again that the supposed statue of limitations "defense" will never see the light of day at trial. Dexia would be hard pressed indeed to explain to a jury the entirely inconsistent arguments that (1) Plaintiffs should have been aware of a massive fraud perpetrated by Dexia, but (2) Dexia actually engaged in no fraudulent conduct whatever.

[8] *Accord, e.g., Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 621 & 621 n.1 (N.D. Cal 2005) (citing *Martin-Marietta* with approval in ruling that waiver of attorney-client privilege and fact work product did not amount to a waiver of opinion work product where plaintiff's attorney knowledge of particular facts was relevant to defense asserted by defendant); *Aloe Vera of Am. v. United States*, No. CV 99-1794, 2003 WL 22429082, at *6 (D. Ariz. Sept 23, 2003) (citing *Axler* favorably in denying defendant discovery of plaintiffs' opinion work product purportedly relevant to statute of limitations defense because "Plaintiffs' counsel's *actual opinions* are not relevant to the essential question of what *facts* relating to the alleged disclosures Plaintiffs' counsel possessed that were not otherwise provided by Defendant, what similar counsel exercising reasonable diligence would have concluded form such facts, and when counsel arrived at a conclusion and may have communicated it to plaintiffs.") (emphasis in original); *Foley v. Juron Assoc.*, No. Civ. A. 82-0519, 1986 WL 5557, at *5 (E.D. Pa. May 13, 1986) (while defendant in securities fraud action was entitled to discovery of plaintiff's fact work product relevant to statute of limitations defense, plaintiff's opinion work product was not subject to disclosure because "Rule 26(b)(3) is explicit in its provision of a greater level of protection for portions of documents containing mental impressions,

Continued on following page

As the foregoing discussion demonstrates, *Axler* is indistinguishable from the facts presented by this motion. Here, as in *Axler*, Plaintiffs' opinion work product has, at least, an attenuated relationship to the facts relevant to Dexia's purported statute of limitations defense – those concerning what an objectively reasonable person would have investigated and discovered. *Young*, 305 F.3d at 8. As a result, Dexia cannot make any showing of substantial need, let alone the *strong* showing of "necessity and unavailability by other means" necessary to justify disclosure of Plaintiffs' counsel's opinion work product. *Axler*, 196 F.R.D. at 213 *(*quoting *Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981)).

Furthermore, none of the decisions Dexia cites contradict *Axler*. In particular, none of those decisions holds that defendants are entitled to discovery of opinion work product regarding attorneys' investigation of their clients' claims in actions where a statute of limitations begins to run wherein an *objectively* reasonable plaintiff would have discovered facts sufficient to establish its claims. In two decisions Dexia cites, defendants were permitted to discover plaintiffs' opinion work product because the relevant issue was the plaintiff's *subjective* knowledge of particular information.[9] In sharp contrast, as the *Axler* and *Young* courts recognized, the focus of the statute of limitations inquiry with respect to a § 10(b) claim is the *objective* factors of what a reasonable plaintiff would have done and when that reasonable plaintiff would have discovered

---

Continued from previous page

conclusions, opinions, or legal theories of either the attorney or the representative of the party, concerning the litigation").

[9] *See Byers v. Burleson*, 100 F.R.D. 436, 439 (D.D.C. 1983) (subjective knowledge of plaintiff and her attorney were pertinent to determining commencement of limitations period for claim of legal malpractice); *American Standard Inc v. Bendix Corp.*, 80 F.R.D. 706, 709 (W.D. Mo. 1978) (defendant was entitled to discovery of opinion work product where trigger of limitations period depended entirely upon the plaintiff's subjective knowledge and the plaintiff, in contrast to this case, had failed to provide the defendant with any meaningful discovery).

the facts necessary to establish its claims. Dexia has no need to invade Plaintiffs' highly

protected opinion work product to establish the facts relevant to those inquiries.[10]

The remaining cases which Dexia cites are also readily distinguishable. In *In re Imperial*

*Corp. of Am.,* 179 F.R.D. 286, 290 (S.D. Cal 1998), the defendant's discovery of the plaintiff's

work product was limited to nothing more than non-opinion work product reflecting: (1) when

the plaintiff's attorneys became aware of facts that would have put them on notice of a cause of

action against the defendants for legal malpractice; and (2) the specific facts that placed the

plaintiff's attorneys on notice. Those basic facts are disclosed in Plaintiffs' pleadings.

Finally, in two other opinions Dexia cites, courts found that parties could discover their

adversaries' opinion work product because they invoked "advice of counsel" defenses, thereby

putting their *subjective* knowledge directly at issue.[11] Even in those circumstances, this Court

carefully circumscribed the scope of the opinion work product to which the movant was entitled

in the *Micron Separations* case so as not to provide the movant with unfettered access to the

opinions and strategies of its opponent's counsel. *Micron Separations*, 159 F.R.D. at 365

(ordering plaintiff to produce work product that was inconsistent with a legal opinion letter on

which the plaintiff relied, but not documents that were consistent with the opinion letter).[12]

Thus, Dexia has cited no case presenting facts remotely similar to this one in which a plaintiff

---

[10] *Axler,* 196 F.R.D. at 212; *see also, e.g., Tennison*, 226 F.R.D. at 621 & 621 n.1; *Aloe Vera*, 2003 WL 22429082, at *6; *Foley*, 1986 WL 5557, at *5.

[11] *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 17 (D. Mass. 1997) (insurer's defense of reliance on advice of counsel in opposing claim of bad faith denial of coverage placed mental impressions of counsel "directly at issue"); *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 365 (D. Mass. 1995) (reliance on advice of counsel in opposing claim of willful patent infringement waived attorney opinion work product to the extent communicated to the client).

[12] *Sorenson v. H&R Block, Inc.* 197 F.R.D. 206 (D. Mass. 2000) is also inapposite. There, plaintiffs' counsel placed his attorney notes directly at issue in the case by indicating that he would be a trial witness for the plaintiff and by testifying at a deposition about the conversation and issues that were the subject of his notes. *Id.* at 209. This Court therefore held that those notes should be produced to defendant as "prior statements of a trial witness." *Id.* No such circumstances are presented here.

was forced to disclose opinion work product relevant to whether plaintiff conducted a reasonable

investigation or could have learned particular facts by a specified date.

### III.    EVEN IF, CONTRARY TO THE CIRCUMSTANCES HERE, THE CODING SHEETS WERE TRADITIONAL WORK PRODUCT, DEXIA STILL HAS NOT SHOWN A SUBSTANTIAL NEED

Dexia has failed to demonstrate a substantial need for the Coding Sheets. These sheets –

all created *after* August 19, 2001 – are simply irrelevant to Dexia's defense of this action. As

amended by the Sarbanes-Oxley Act of 2002's extended limitations period, *Young v. Lepone*,

305 F.2d 1 (1st Cir. 2002) dictates that Dexia's limitations defense can succeed only if, among

other things, Plaintiffs failed to employ reasonable diligence in investigating the L&H fraud ***and***

Plaintiffs would have discovered facts sufficient to establish § 10(b) claims against Dexia more

than two years prior to the commencement of this action (*i.e.*, before August 19, 2001) had they

employed reasonable diligence before that date. *Id.*[13]; *see* Pltfs' 3/22/06 Mem. at pp. 5-11.

Accordingly, as the Court determined in the December 2005 Order, the steps taken by Plaintiffs'

counsel post-August 19, 2001 are irrelevant to Dexia's purported statute of limitations defense.[14]

Dexia nonetheless claims it "needs" the Coding Sheets to delve into "the thought

processes of the people who conducted [Plaintiffs'] investigation" and to show that Plaintiffs'

counsel was, in fact, not actually investigating Dexia's role in the fraud prior to the two-year

period preceding the filing of Plaintiffs' complaint. Dexia Obj. at 9. However, Dexia offers no

---

[13] As in its prior memoranda, Dexia repeatedly invokes the mantra that, although Plaintiffs obtained over 1.8 million pages of documents related to the L&H fraud by criss-crossing the Atlantic to seek every imaginable source of information regarding that fraud, Plaintiffs' document production reveals that Plaintiffs did not undertake any effort to obtain information relevant to potential claims against Dexia. It is difficult to fathom that Dexia actually believes this bluster. Notably, Dexia suggests no source Plaintiffs could reasonably have been expected to obtain prior to August 19, 2001 that revealed information sufficient to establish securities fraud claims against Dexia. Dexia also omits from its analysis any discussion of its substantial affirmative efforts to conceal its fraudulent conduct. *See* First Amended Complaint at ¶¶ 14-15, 118-170, 202-205, 214-236.

[14] Far from the "head in the sand" characterization urged by Dexia, the early coding sheets demonstrated a reasonable investigation aimed at the very facet of the fraud in which Dexia participated. Thus, Plaintiffs' investigation likely would have uncovered any available documents relating to the fraudulent LDCs, including Artesia's involvement in the fraud and its scienter.

explanation how the post-August 19, 2001 Coding Sheets are relevant to the *objective* question

of whether, had Plaintiffs investigated, they would have discovered Artesia's fraudulent conduct.

Plaintiffs' counsel's subjective views and the steps Plaintiffs took after August 19, 2001 simply

have no bearing on whether their investigation prior to that date was *objectively* reasonable or

whether an *objectively* reasonable investigation would have yielded the internal Dexia

documents that ultimately provided the basis for Plaintiffs' claims.  Accordingly, as the Court

held in its December 22, 2005 Order, concerning all of Plaintiffs' post-August 2001 work-

product documents, in its July 13, 2006 Order, and again in its December 28, 2006 Order, the

Coding Sheets are also irrelevant to Dexia's statute of limitations defense and, therefore, not

discoverable.  *See* December 2005 Order at 1-2.[15]

Despite six rounds of repeating and re-hashing the same argument, Dexia has yet to

locate a single case decided in the long annals of securities litigation (or any other type of

litigation) where a court ordered the disclosure of work product related to an investigation

undertaken by a plaintiff's counsel, unless that investigation was undertaken before the relevant

anniversary of the limitations period applicable to the plaintiff's claims.  Here, that relevant

anniversary date is August 19, 2001.  As decided in the December 2006 Order, therefore, Dexia

is not entitled to the production of the Coding Sheet because they were created long after August

2001.

## CONCLUSION

---

[15] *Accord, e.g., Aloe Vera of Am.*, 2003 WL 22429082 (D. Arizona September 23, 2003), at *3 (where defendant asserted statute of limitations defense with respect to a claim that the plaintiff could assert "at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure," only evidence concerning the investigation undertaken more than two years prior to the commencement of the plaintiffs' action was relevant and, therefore, discoverable) (emphasis and citation omitted); *United States v. Urban Health Network, Inc.*, No. Civ. 91-5976, 1993 WL 12811, at *3 (E.D. Pa. Jan. 19, 1993) (recognizing that only documents created by the government prior to the three-year limiations period applicable to its claims could be relevant to the defendants' purported status of limitations defense).

For the foregoing reasons, Dexia's objection should be denied in full and *with prejudice*.

Dated:  January 26, 2007

Respectfully submitted,

**Bernstein Litowitz Berger & Grossmann LLP**

    /s/ Avi Josefson
Max W. Berger
Steven B. Singer
Avi Josefson
(avi@blbglaw.com)
1285 Avenue of the Americas
New York, NY  10019
Telephone:  (212) 554-1400

**Looney & Grossman LLP**
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA  02110
Telephone:  (617) 951-2800

***Counsel to Plaintiffs Stonington Partners, Inc.,***
***Stonington Capital Appreciation 1994 Fund L.P.***
***and Stonington Holdings L.L.C.***

**Gregory P. Joseph Law Offices LLC**

/s/ Susan M. Davies
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
805 Third Avenue, 31st Floor
New York, NY  10022
Telephone:  (212) 407-1200

**Kotin, Crabtree & Strong**
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA  02114
Telephone:  (617) 227-7031

***Counsel to Plaintiffs Gary B. Filler and Lawrence***
***Perlman, Trustees of the TRA Rights Trust***

**Patridge, Ankner & Horstman LLP**

/s/ Terence K. Ankner
Terence K. Ankner, BBO #552469
(TKA@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA  02116
Telephone:  (617) 859-9999

**Boies Schiller & Flexner**
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida 32801
Telephone:  (407) 425-7118

**Reed Smith LLP**
Alan K. Cotler
Joan A. Yue
Steven T. Voigt
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
Telephone:  (215) 851-8100

***Counsel to Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBaker LLC***